FORREST BOOTH (SBN 74166)
forrest.booth@kennedyslaw.com
SHAIN A. WASSER (SBN 293706)
shain.wasser@kennedyslaw.com
KENNEDYS CMK LLP
101 California Street, Suite 1225
San Francisco, CA 94111
Telephone:    415-323-4460
Facsimile:    415-323-4445

CHRISTOPHER R. CARROLL (*pro hac vice forthcoming*)
christopher.carroll@kennedyslaw.com
TARA E. MCCORMACK (*pro hac vice forthcoming*)
tara.mccormack@kennedyslaw.com
KENNEDYS CMK LLP
120 Mountainview Blvd.
P.O. Box 650
Basking Ridge, NJ 07920
Telephone:    908-848-1220
Facsimile:    908-647-8390

Attorneys for Plaintiff
STARR INDEMNITY & LIABILITY COMPANY

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STARR INDEMNITY & LIABILITY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CHART INDUSTRIES, INC.,<br><br>Defendant. | CASE NO.  3:22-cv-3484<br><br>**COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT** |

Plaintiff, STARR INDEMNITY & LIABILITY COMPANY ("STARR"), by and through its undersigned counsel, files this Complaint for Declaratory Judgment against Defendant, CHART INDUSTRIES, INC. ("Chart"), and alleges as follows:

**INTRODUCTION**

1. This is an action for declaratory judgment pursuant to Rule 57 of the Federal Rules

of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, for a determination of what obligation, if any, STARR has to indemnify Chart in connection with various state and federal court actions arising out of the alleged failure of a liquid nitrogen tank, manufactured by Chart, that took place at the Pacific Fertility Center ("PFC") in San Francisco, California on March 4, 2018 (the "Incident").

2. An actual and justiciable controversy has arisen and now exists relating to the parties' respective rights, duties, and obligations under the STARR Policy.

3. STARR and Chart have an actual, present, adverse, and antagonistic interest in the subject matter of this action.

4. All parties necessary for this declaration are properly before this Court.

5. All conditions precedent to this action (if any) have been satisfied, were waived, or have occurred.

6. STARR brings this action to obtain a judicial declaration that Excess Liability Policy No. 1000040617181 issued by STARR to Chart for the policy period of January 1, 2018 to January 1, 2019 (the "STARR Policy") does not afford coverage to Chart on the grounds identified below. A true and correct copy of the Policy is attached as Exhibit A.

## JURISDICTIONAL STATEMENT

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and because the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00 in light of the damages claimed in the underlying action.

## VENUE

8. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this claim took place within this District, and multiple underlying actions giving rise to this coverage dispute are venued in the District Court for the Northern District of California and the Superior Court of California, County of San Francisco.

## JURISDICTIONAL ASSIGNMENT

9. Pursuant to Northern District of California Local Rules 3-2(c) and 3-2(d), this case is appropriate for assignment to the San Francisco Division or the Oakland Division because a substantial part of the events or omissions giving rise to this coverage dispute arose in San Francisco County.

## PARTIES

10. At the time of the commencement of this action, and all times material hereto, STARR was and is an insurance corporation organized and existing under the laws of the State of Texas with a principal place of business in New York, New York.

11. At the time of the commencement of this action and at all times material hereto, Chart Industries, Inc. was and is a corporation organized and existing under the laws of the State of Delaware with a principal place of business in Ball Ground, Georgia.

## GENERAL ALLEGATIONS

A.   The Underlying Actions

12. In or about March 2018, a lawsuit was first filed against Chart in the Superior Court of California, County of San Francisco in connection with the Incident. To date, more than ninety (90) complaints have been filed against Chart, and other defendants, in the Superior Court of California, County of San Francisco, in connection with the Incident. These state court cases are currently coordinated in *Pacific Fertility Cases*, under docket number CJC-19-005021, filed in the Superior Court of California, County of San Francisco, (the "State Court Action"), and have been certified to the Court of Appeal.

13. Beginning in or about May 2018, various plaintiffs also filed lawsuits against Chart, and other defendants, in the United States District Court for the Northern District of California. To date, approximately 148 federal court cases have named Chart as a defendant in connection with the Incident. These federal court cases are currently coordinated in *In re Pacific Fertility Center Litigation*, under case number 3:18-cv-01586, pending in the United States District Court for the Northern District of California, (the "Federal Court Action").

14. The State Court Action and Federal Court Action (collectively, the "Underlying

Actions") generally allege that the underlying plaintiffs had undergone fertility treatment at PFC and utilized long-term freezer storage services at PFC's San Francisco location to store their eggs and/or embryos.

15. The Underlying Actions allege that the underlying plaintiffs' eggs and/or embryos were stored in a cryopreservation freezer tank, model MVE 808AF-GB, which was manufactured by Chart and distributed and maintained by Praxair, Inc. and/or Praxair Distribution, Inc (collectively, "Praxair").

16. The freezer tank was equipped with an electronic controller, which was supposed to maintain levels of liquid nitrogen in the freezer and electronically monitor, track, and respond to temperature and liquid nitrogen level fluctuations in the freezer tank.

17. The freezer tank, along with the controller, operated as a tank system.

18. The tank system at issue in the Underlying Actions is known as "Tank 4."

19. The controller on Tank 4 was allegedly manufactured by Extron Company and sold, distributed, and/or maintained by Chart and Praxair.

20. The Underlying Actions allege that on or about March 4, 2018, the nitrogen levels in Tank 4 dropped to an unsafe level, destroying or jeopardizing the underlying plaintiffs' eggs and/or embryos.

21. It is alleged that there was a defective weld at the nitrogen fill tube at the bottom of Tank 4 and, when the defective weld cracked, Tank 4 lost its vacuum insulation and was no longer able to maintain a safe temperature for the eggs and/or embryos.

22. It is also alleged that when the weld cracked, liquid nitrogen was drawn into the vacuum space and triggered an implosion of Tank 4's inner vessel walls.

23. The Underlying Actions allege that years prior to the incident, Chart discovered that the controllers incorporated in its tank systems were defective.

24. It is alleged that despite Chart's knowledge of these defects, it failed to warn its customers of the defect, to repair the defect, or recall or retrofit the tank systems.

25. It is further alleged that that controller on Tank 4 had failed weeks prior to the Incident and Prelude Fertility, Inc. ("Prelude"), the company responsible for operating egg and

embryo storage at PFC, failed to transfer the eggs and embryos to a working tank system or replace the defective tank system with operational equipment.

26. As against Chart, the Underlying Actions assert causes of action for Negligent Failure to Recall; Strict Products Liability – Failure to Warn; Strict Products Liability – Manufacturing Defect; Strict Products Liability – Design Defect – Consumer Expectation; Strict Products Liability – Design Defect – Risk-Benefit; Negligence and/or Gross Negligence; and Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.

27. In the Underlying Actions, the underlying plaintiffs seek to recover economic damages that are intended to compensate the underlying plaintiffs for the value of their damaged or destroyed eggs and/or embryos, as well as non-economic damages that are intended to compensate the underlying plaintiffs for their emotional distress associated with the damage to or loss of their property (*i.e.,* eggs and/or embryos).

28. In the Federal Court Action, five (5) plaintiffs proceeded to trial, which resulted in a jury verdict on June 10, 2021.

29. The jury found, among other things, the following:
   a. Tank 4 contained a manufacturing defect;
   b. Tank 4 failed to perform as safely as an ordinary user of cryogenic storage tanks would have expected when used or misused in an intended or reasonably foreseeable way;
   c. The benefits of the tank's design did not outweigh the risks of the design;
   d. Chart knew or reasonably should have known that Tank 4's controller was dangerous or likely to be dangerous when used in a reasonably foreseeable manner;
   e. Chart failed to recall or retrofit the controller; and
   f. These defects and Chart's failures to act were all substantial factors in causing harm to the underlying plaintiffs.

30. The jury awarded a total of $475,000 in economic damages and $14,500,000 in non-economic damages to the five (5) underlying plaintiffs.

31. The jury allocated 90% fault to Chart and 10% fault to PFC.

32. Chart has appealed the entry of the jury verdict to the United States Court of Appeals for the Ninth Circuit, Case No. 21-17016.

33. By way of letter dated December 10, 2021, STARR reserved all rights to disclaim coverage to Chart on various bases including, that the damages in the Underlying Action are not "because of" "bodily injury" or "property damage"; that any alleged "bodily injury" or "property damage" was not caused by an "occurrence"; that any alleged "bodily injury" or "property damage" was expected or intended by Chart; and that there is no evidence of exhaustion of underlying insurance.

34. STARR has advised Chart that any payment made by STARR toward any resolution or settlement of the Underlying Actions will be made subject to a reservation of rights to seek and obtain reimbursement from Chart or any third party, jointly or severally, of any and all amounts STARR pays toward resolution or settlement up to, and subject to, its remaining limit of liability.

35. In the event that STARR contributes toward any resolution or settlement of the Underlying Actions on behalf of Chart, STARR will be doing so under a reservation of rights to seek reimbursement from Chart, and will request such relief from this Court.

**B.     The Insurance Policies**

    **i.     The STARR Policy**

36. STARR issued an Excess Liability Policy to Chart, policy number 1000040617181, effective January 1, 2018 to January 1, 2019, with limits of $50,000,000 each occurrence and in the aggregate excess of $100,000,000, which is in turn excess of $2,000,000 in primary coverage.

37. The STARR Policy contains an insuring agreement which states, in pertinent part, as follows:

> **SECTION I.  COVERAGE**
>
> **A.** We will pay on behalf of the Insured, the "Ultimate Net Loss" in excess of the "Underlying Insurance" as shown in **ITEM 5.** of the Declarations, that the Insured becomes legally obligated to pay for loss or damage to which this insurance applies and that takes place in the Coverage Territory.  Except for the terms, definitions, conditions and exclusions of this Policy, the

coverage provided by this Policy shall follow the terms, definitions, conditions and exclusions of the applicable First Underlying Insurance Policy(ies) shown in **ITEM 5.A.** of the Declarations.

\* \* \*

**B.** Regardless of any other warranties, terms, conditions, exclusions or limitations of this Policy, if any applicable Underlying Insurance Policy(ies) does not cover "Ultimate Net Loss" for reasons other than exhaustion of its limit of liability by payment of claims or suits, then this Policy will not cover such "Ultimate Net Loss."

**C.** The amount we will pay for the "Ultimate Net Loss" is limited as described in **SECTION II. LIMITS OF INSURANCE**.

\* \* \*

38. The STARR Policy contains the following potentially relevant definition:

**A.** "Ultimate Net Loss"

"Ultimate Net Loss" means the total sum, after reduction for all recoveries including other valid and collectible insurance, excepting only the "Underlying Insurance" scheduled under **ITEM 5.** of the Declarations, actually paid or payable due to a claim or suit for which you or an insured are liable either by a settlement to which we agreed or a final judgment.

The term "Ultimate Net Loss" shall also include defense costs when such defense costs are included within the limits of insurance of any applicable "Underlying Insurance."

\* \* \*

39. The STARR Policy contains the following potentially relevant conditions:

**SECTION IV.  CONDITIONS**

\* \* \*

**F. Defense**

We have no duty to defend any claim or suit and will not be obligated to assume charge of the investigation, settlement or defense of any claim, suit or proceeding instituted against you or any insured for loss or damages to which this insurance may apply. We will have the right and opportunity to participate or associate in the investigation, settlement or defense of any claim, suit or proceeding against you or an Insured for loss or damage to which this insurance may apply. If we exercise such right, which is at our sole discretion, we will do so at our own expense.

**G. Maintenance of "Underlying Insurance"**

> You agree to maintain all "Underlying Insurance" in full force and effect during our Policy Period stated in **ITEM 2.** of the Declarations, except for the reduction of the aggregate limits of the "Underlying Insurance" due to payment of claim(s) or suit(s) for loss or damage to which this insurance may apply. If you fail to comply with this condition precedent, then the insurance provided by this Policy shall only apply as though such "Underlying Insurance" had been in full force and effect by you.

\* \* \*

> **M. When "Ultimate Net Loss" Is Payable**
>
> Coverage under this Policy will not apply unless and until the Insured or the Insured's "Underlying Insurance" has paid or is obligated to pay the full amount of the limits of the "Underlying Insurance" scheduled in **ITEM 5.** of the Declarations. If other insurance applies, coverage under this Policy will not apply under the other insurance has paid or is obligated to pay the full amount of its limit of insurance.
>
> When the "Ultimate Net Loss" is determined, we will pay on behalf of the Insured the amount of "Ultimate Net Loss" to which this insurance applies.

\* \* \*

### ii. The Allianz Policy

40. The STARR Policy, except as otherwise provided therein, follows the terms, definitions, conditions, and exclusions of the applicable "First Underlying Insurance Policy(ies)" shown in ITEM 5.A. of the Declarations, which is a Commercial Umbrella Liability Policy issued by Allianz Global Risks US Insurance Company ("Allianz") to Chart, policy number ULA 2011124, effective January 1, 2018 to January 1, 2019, with limits of $25,000,000 each occurrence and in the aggregate excess of $25,000,000, which is in turn, excess of $2,000,000 in primary coverage (the "Allianz Policy").

41. The Allianz Policy contains, in relevant part, the following Insuring Agreement:

> **SECTION I – COVERAGE**
>
> **A.** We will pay on behalf of the "insured" those sums in excess of the "Retained Limit" that the "insured" becomes legally obligated to pay as damages by reason of liability imposed by law or assumed by the "insured" under an "insured contract" because of "bodily injury," "property damage," "personal injury," or "advertising injury" to which this insurance applies.

\* \* \*

    **B.**  This policy applies to "bodily injury" or "property damage" only if:

        **1.**  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place anywhere in the world;

        **2.**  The "bodily injury" or "property damage" occurs during the "policy period" . . . .

        \* \* \*

42.    The Allianz Policy contains, in pertinent part, the following definitions:

**SECTION IV – DEFINITIONS**

        \* \* \*

    **D.**  "Bodily injury" means bodily injury, sickness, disability or disease sustained by a person, including death resulting from any of these at any time.

        "Bodily injury" includes humiliation, shock, mental anguish or other mental injury resulting from "bodily injury."

        \* \* \*

    **N.**  "Occurrence":

        **1.**  With respect to "bodily injury" and "property damage," "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general conditions shall be considered as arising out of one "occurrence."

        \* \* \*

    **S.**  "Property damage" means:

        **1.**  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

        **2.**  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

        \* \* \*

43.    The Allianz Policy also includes the following potentially relevant exclusion:

**SECTION V – EXCLUSIONS**

\* \* \*

P. **Expected or Intended Injury or Damage**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured." This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

\* \* \*

### FIRST CLAIM FOR DECLARATORY RELIEF

**(Non-Economic Damages)**

44. STARR realleges each and every allegation contained in the preceding paragraphs 1 through 43 and incorporates them by reference as though fully set forth herein.

45. Unless otherwise stated, the STARR Policy follows form to the same terms, definitions, conditions, and exclusions as the Allianz Policy.

46. The Allianz Policy provides coverage for "those sums . . . that the 'insured' becomes legally obligated to pay as damages . . . because of 'bodily injury' or 'property damage'" that is caused by an "occurrence" during the "policy period."

47. Therefore, in order for there to be coverage under the STARR Policy, it is Chart's burden to prove, at a minimum, that the underlying plaintiffs have sustained damages "because of" "bodily injury" or "property damage" (as those terms are defined in the Allianz Policy), and Chart must be found liable for such damages.

48. The plaintiffs in the Underlying Actions seek, and the jury in the Federal Court Action has awarded, economic damages for the value of underlying plaintiffs' lost or damaged property (*i.e.*, eggs and/or embryos), as well as non-economic damages for emotional distress.

49. Non-economic damages for emotional distress are not damages "because of" "bodily injury" or "property damage." The definition of "bodily injury" requires a physical injury to be compensable under the STARR Policy.

50. "Bodily injury" means "bodily injury, sickness, disability or disease sustained by a person, including death resulting from any of these at any time" and includes "humiliation, shock,

mental anguish or other mental injury resulting from "bodily injury."

51. Therefore, the only mental injuries that constitute "bodily injury" under the STARR Policy are those that are accompanied by a physical injury.

52. The only "property damage" at issue is recovery for the loss of or damage to eggs and/or embryos.

53. The Underlying Actions do not allege, and the trial did not produce evidence, that the underlying plaintiffs sustained any physical injury to their bodies and, therefore, the non-economic damages alleged in the Underlying Actions do not constitute damages "because of" "bodily injury."

54. The definition of "property damage" does not provide coverage for emotional distress.

55. Applicable law does not afford recovery for emotional distress for "property damage."

56. The Underlying Actions do not seek damages against Chart "because of" "bodily injury" or "property damage" and, therefore, do not satisfy the requirements of the insuring agreement of STARR Policy.

57. STARR seeks a judicial declaration that it owes no duty under the STARR Policy to indemnify Chart for non-economic damages sought by the plaintiffs in the Underlying Actions. A declaration is necessary at this time so that the parties' dispute may be resolved, and that the parties may be made aware of their respective rights and duties under the STARR Policy.

## SECOND CLAIM FOR DECLARATORY RELIEF

**(Economic Damages)**

58. STARR realleges each and every allegation contained in the preceding paragraphs 1 through 57 and incorporates them by reference as though fully set forth herein.

59. In order to for there to be coverage under the STARR Policy, it is Chart's burden to prove, at a minimum, that the underlying plaintiffs have sustained damages "because of" "bodily injury" or "property damage" (as those terms are defined in the Allianz Policy), and Chart must be found liable for such damages.

60. The plaintiffs in the Underlying Actions also seek, and the jury in the Federal Court Action has awarded, economic damages for injuries to underlying plaintiffs' property (*i.e.*, eggs and/or embryos).

61. The underlying plaintiffs also seek economic damages for past and future expenses, including fertility and reproductive expenses and costs, and past and future lost earnings and benefits.

62. "Property damage" is defined as a "physical injury to tangible property, including all resulting loss of use of that property" and "loss of use of tangible property that is not physically injured."

63. In the Underlying Actions, the plaintiffs allege damage to their eggs and/or embryos as a result of the Incident.

64. To the extent that the damage to the underlying plaintiffs' eggs and/or embryos constitutes "property damge," the STARR Policy may indemnify the underlying plaintiffs for any economic losses that are "because of" such "property damge."

65. Any alleged economic damage that is not "because of" "property damage," including but not limited to past and future expenses and costs, and past and future lost earnings and benefits, does not satisfy the insuring agreement of the STARR Policy.

66. STARR seeks a judicial declaration that it owes no duty to indemnify Chart for any economic damages that are not "because of" "property damage."

## THIRD CLAIM FOR DECLARATORY RELIEF

### (No Occurrence)

67. STARR realleges each and every allegation contained in the preceding paragraphs 1 through 66 and incorporates them by reference as though fully set forth herein.

68. The STARR Policy provides coverage for damages "because of" "bodily injury" or "property damage" that is caused by an "occurrence" during the "policy period."

69. The STARR Policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

70. The Underlying Actions allege that Chart has been aware of issues with the

controllers in its tank systems for several years, yet failed to warn its customers, failed to recall the tank system, and failed to remedy the issue prior to the Incident.

71. In the Federal Court Action, the jury found that Chart knew, or reasonably should have known, that Tank 4's controller was dangerous when used in a reasonably foreseeable manner.

72. The Underlying Actions do not seek damages against Chart "because of" "bodily injury" or "property damage" caused by an "occurrence" and do not satisfy the requirements of the insuring agreement of the STARR Policy.

73. STARR seeks a judicial determination that it owes no duty to indemnify Chart in connection with the claims asserted against Chart in the in the Underlying Actions because such damages are not caused by an "occurrence".

## FOURTH CLAIM FOR DECLARATORY RELIEF

**(Expected or Intended Injury or Damage Exclusion)**

74. STARR realleges each and every allegation contained in the preceding paragraphs 1 through 73 and incorporates them by reference as though fully set forth herein.

75. The STARR Policy contains an Expected or Intended Injury or Damge exclusion (the "Expected or Intended Exclusion"), which bars coverage for "bodily injury" or "property damage" expected or intended from the standpoint of the insured.

76. The Underlying Actions allege that Chart was aware that the controllers on its tank systems had failed years prior to the Incident.

77. The Underlying Actions also allege that Chart failed to warn its customers of these known defects, failed to recall the tank system, and failed to fix the defect.

78. STARR seeks a judicial declaration that it owes no duty to indemnify Chart in connection with the claims asserted against Chart in the Underlying Actions to the extent that the damages at issue were either expected or intended, as set forth in the Expected or Intended Exclusion.

## FIFTH CLAIM FOR DECLARATORY RELIEF

**(No Exhaustion of Underlying Insurance)**

79. STARR realleges each and every allegation contained in the preceding paragraphs 1 through 78 and incorporates them by reference as though fully set forth herein.

80. The STARR Policy provides coverage for "Ultimate Net Loss" in excess of "Underlying Insurance" that the insured becomes legally obligated to pay for loss or damage to which this insurance applies.

81. "Ultimate Net Loss" is defined as the total sum payable due to a claim or suit for which an insured is liable either by settlement or final judgment.

82. The STARR Policy does not apply unless and until there has been proper exhaustion of all underlying insurance through the payment of covered claims.

83. Chart has not provided any evidence establishing exhaustion of underlying insurance by payment of covered claims.

84. STARR seeks a judicial declaration that it owes no present obligation to indemnify Chart in connection with the claims asserted against it in the Underlying Actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, STARR, prays for judgment against Defendant, Chart as follows:

a. Declaring that STARR owes no obligation under the STARR Policy to indemnify Chart for non-economic damages sought by the plaintiffs in the Underlying Actions;

b. Declaring that STARR has no obligation under the STARR Policy to indemnify Chart for economic damages sought by the plaintiffs in the Underlying Actions that are not "because of" "property damage";

c. Declaring that STARR has no obligation under the STARR Policy to indemnify Chart for alleged damages sought by the plaintiffs in the Underlying Actions because such damages are not caused by an "occurrence";

d. Declaring that STARR has no obligation to indemnify Chart in connection with the Underlying Actions to the extent that the alleged damages were expected or intended by Chart;

e.  Declaring that STARR has no obligation to indemnify Chart in connection with the Underlying Actions unless and until all underlying insurance has been properly exhausted by the payment of covered claims;

f.  Declaring that the STARR Policy does not provide coverage to Chart for the claims asserted against Chart in the Underlying Actions;

g.  Declaring that STARR does not owe a duty under the STARR Policy to indemnify Chart in connection with the claims asserted against Chart in the Underlying Actions;

h.  In the event that STARR contributes to any resolution or settlement of the Underlying Actions on behalf of Chart, seeking an order requiring Chart to reimburse STARR for any amounts paid that are determined to not be covered in accordance herewith.

i.  Awarding STARR attorneys' fees and costs pursuant to law; and

j.  Awarding such other and further relief as it deems just, proper and equitable.

DATED: June 13, 2022                         KENNEDYS CMK LLP

                                             By: /s/ *Shain A. Wasser*
                                                 Forrest Booth
                                                 Shain A. Wasser

                                             Attorneys for Plaintiff
                                             STARR INDEMNITY & LIABILITY COMPANY