1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MORGAN, LEWIS & BOCKIUS LLP
David S. Cox, Bar No. 181232
david.cox@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel:    +1.213.612.2500
Fax:    +1.213.612.2501

Attorneys for Defendant
CHART INDUSTRIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STARR INDEMNITY & LIABILITY COMPANY,<br><br>                    Plaintiff,<br><br>          vs.<br><br>CHART INDUSTRIES, INC.,<br><br>                    Defendant. | Case No. 4:22-cv-03484-HSG<br><br>**DEFENDANT CHART INDUSTRIES, INC.'S MOTION TO DISMISS, STAY, OR, ALTERNATIVELY, TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF GEORGIA AND INCORPORATED MEMORANDUM OF LAW**<br><br>Date:         January 5, 2023<br>Time:        2:00 p.m.<br>Judge:       Haywood S. Gilliam, Jr.<br><br>Trial Date: None set |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  THE STARR COMPLAINT ............................................................................... 3

    A.  THE UNDERLYING PFC LITIGATION ............................................... 3

    B.  THE STARR POLICY ............................................................................ 3

    C.  STARR'S CLAIMS FOR RELIEF .......................................................... 5

III.  ARGUMENT ...................................................................................................... 6

    A.  Starr's Complaint Must Be Dismissed Under Fed. R. Civ. P. 12(b)(1) ................. 6

    B.  Even If It Has Subject Matter Jurisdiction, the Court Should Exercise Its Discretion to Dismiss or Stay Starr's Complaint ................................................... 10

    C.  Alternatively, the Court Should Transfer This Action to the Northern District of Georgia ................................................................................. 16

        1.  This Action "Might Have Been Brought" in the Northern District of Georgia ..................................................................................... 16

        2.  The Convenience Factors Favor Transfer ................................................. 17

IV.  CONCLUSION .................................................................................................. 24

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

-i-

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abbott Labs. v. Gardner*
387 U.S. 136 (1967)...................................................................................................... 7

*Admiral Ins. Co. v. Shah & Assocs.*
No. 13cv44-WQH-JMA, 2013 WL 3831331 (S.D. Cal. July 23, 2013)............................... 13

*Allied Prop. & Cas. Ins. Co. v. Roberts*
No. 2:11-cv-00740-MCE-KJN, 2011 WL 2495691 (E.D. Cal. June 21, 2011)..................... 13

*Allstate Ins. Co. v. Harris*
445 F. Supp. 847 (N.D. Cal. 1978) .................................................................................. 15

*Am. States Ins. Co. v. Kearns*
15 F.3d 142 (9th Cir. 1994)............................................................................................. 8

*Arch Ins. Co. v. Fontana Union Water Co.*
No. 16-1790-VAP, 2016 WL 11525899 (C.D. Cal. Dec. 9, 2016)......................................... 13

*Ascento Capital, LLC v. MinervaWorks, LLC*
No. 20 CIV. 6195 (NRB), 2021 WL 2206487 (S.D.N.Y. June 1, 2021) ................................ 23

*Atain Specialty Ins. Co. v. Zenisco, Inc.*
Case No. 19-cv-05198-HSG, 2020 WL 3640011 (N.D. Cal. July 6, 2020) .......................... 16

*Brillhart v. Excess Ins. Co. of Am.*
316 U.S. 491 (1942).................................................................................................. 11, 13

*Burns v. Svenson*
No. 19-cv-01209-HSG, 2019 WL 3554404 (N.D. Cal. Aug. 5, 2019).................................. 18

*Cambridge Filter Corp. v. Int'l Filter Co.*
548 F. Supp. 1308 (D. Nev. 1982) .................................................................................. 20

*Carolina Cas. Ins. Co. v. Helsley*
No. 1:10-cv-916-LJO-MJS, 2011 WL 121576 (E.D. Cal. Jan. 13, 2011) ............................ 13

*Chandler v. State Farm Mut. Auto. Ins. Co.*
598 F.3d 1115 (9th Cir. 2010)......................................................................................... 6, 14

*Charter Oak Fire Ins. Co. v. New York Marine & Gen. Ins. Co.*
559 F. Supp. 3d 244 (S.D.N.Y. 2021)............................................................................... 7

*Cincinnati Specialty Underwriters Ins. Co. v. Red Rock Hounds*
511 F. Supp. 3d 1105 (D. Nev. 2021) .............................................................................. 9

*Clinton v. Acequia, Inc.*
94 F.3d 568 (9th Cir. 1996)............................................................................................. 1

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

*CMAX, Inc. v. Hall*
   300 F.2d 265 (9th Cir. 1962)................................................................................. 15

*Continental Cas. Co. v. Robsac Indus.*
   947 F.2d 1367 (9th Cir. 1991)............................................................................... 11

*Decker Coal Co. v. Commonwealth Edison Co.*
   805 F.2d 834 (9th Cir. 1986)................................................................................. 18

*DeWitt Constr. Inc. v. Charter Oak Fire Ins. Co.*
   307 F.3d 1127 (9th Cir. 2002)................................................................................. 4

*First Mercury Ins. Co. v. Great Divide Ins. Co.*
   203 F. Supp. 3d 1043 (N.D. Cal. 2016) ............................................................. 2, 9

*Game, L.L.C. v. Lloyd Sales Co., Inc.*
   No. 1:07-CV-2498-CAP, 2008 WL 11407207 (N.D. Ga. June 2, 2008)............................... 17

*Gov't Employees Ins. Co. v. Dizol*
   133 F.3d 1220 (9th Cir. 1998)........................................................................... 11, 12

*Great Am. Assurance Co. v. Discover Prop. & Cas. Ins. Co.*
   779 F. Supp. 2d 1158 (D. Mont. 2011) ................................................................. 11

*Gribin v. Hammer Galleries, a Div. of Hammer Holdings, Inc.*
   793 F. Supp. 233 (C.D. Cal. 1992) ....................................................................... 12

*Hartford Cas. Ins. Co. v. Sany Am., Inc.*
   991 F. Supp. 2d 1303 (N.D. Ga. 2014) ................................................................. 17

*Hartford Fire Ins. Co. v. Tempur-Sealy Int'l, Inc.*
   No. 14-cv-01661-HSG, 2016 WL 2851577 (N.D. Cal. May 16, 2016) ............................ 9

*Heredia v. Sunrise Senior Living*
   No. 18-cv-00616-HSG, 2018 WL 5734617 (N.D. Cal. Oct. 31, 2018) ............................ 24

*In re Nintendo Co.*
   589 F.3d 1194 (Fed. Cir. 2009)........................................................................... 21, 22

*Jackson v. City & County of San Francisco*
   829 F. Supp. 2d 867 (N.D. Cal. 2011) ..................................................................... 1

*Landis v. N. Am. Co.*
   299 U.S. 248 (1936)............................................................................................ 15

*Lapachet v. Cal. Forensic Med. Group, Inc.*
   No. 16-cv-06959-HSG, 2017 WL 3917209 (N.D. Cal. Sept. 7, 2017)............................... 18

*Lear Corp. v. Johnson Elec. Holdings Ltd.*
   353 F.3d 580 (7th Cir. 2003)............................................................................ 2, 7, 10

*Leyva v. Certified Grocers of Cal., Ltd.*
   593 F.2d 857 (9th Cir. 1979)................................................................................. 13

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

-iii-

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

*Liberty Ins. Underwriters, Inc. v. O & S Holdings, LLC*
    No. 2:18-cv-03176-JAK-SK, 2018 WL 4027014 (C.D. Cal. Aug. 15, 2018) ....................... 20

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*
    89 F.R.D. 497 (C.D. Cal. 1981), aff'd, 726 F.2d 1381 (9th Cir. 1984) ................................. 17

*Lujan v. Defs. of Wildlife*
    504 U.S. 555 (1992) .......................................................................................................... 1, 7

*Midkiff v. Prudential Ins. Co. of Am.*
    No. 19-CV-01656-JSW, 2019 WL 12469793 (N.D. Cal. Dec. 6, 2019) .............................. 18

*Molex Inc. v. Wyler*
    334 F. Supp. 2d 1083 (N.D. Ill. 2004) ................................................................................ 11

*Mount Vernon Fire Ins. Co. v. Creative Housing Ltd.*
    70 F.3d 720 (2d Cir. 1995)................................................................................................... 23

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Rudolph & Sletten, Inc.*
    No. 20-cv-00810-HSG, 2020 WL 4039370 (N.D. Cal. July 17, 2020) ................................ 13

*Northfield Ins. Co. v. Civic Center Hotel, LLC*
    239 F. Supp. 3d 1163 (N.D. Cal. 2017) ................................................................................. 9

*OneBeacon Ins. Co. v. Parker, Kern, Nard & Wenzel*
    No. 1:09-CV-00257, 2009 WL 2914203 (E.D. Cal. Sept. 9, 2009)...................................... 13

*Peerless Ins. Co. v. Innovative Textiles, Inc.*
    No. 1-19-CV-362, 2020 WL 137303 (M.D.N.C. Jan. 13, 2020) .......................................... 11

*Principal Life Ins. Co. v. Robinson*
    394 F.3d 665 (9th Cir. 2005)............................................................................................... 10

*Pub. Affairs Assocs. v. Rickover*
    369 U.S. 111 (1962) ............................................................................................................... 2

*Qurio Holdings, Inc. v. Dish Network Corp.*
    No. 15-cv-00930-HSG, 2015 WL 4148962 (N.D. Cal. July 9, 2015) .................................. 22

*R.R. Street & Co. v. Transp. Ins. Co.*
    656 F.3d 966 (9th Cir. 2011)............................................................................................... 11

*Reese v. CNH Am. LLC*
    574 F.3d 315 (6th Cir. 2009)............................................................................................... 23

*Reiffin v. Microsoft Corp.*
    104 F. Supp. 2d 48 (D.D.C. 2000) ....................................................................................... 18

*RLI Ins. Co. v. Ceradyne, Inc.*
    No. SACV2001997JVSKESX, 2020 WL 12948060 (C.D. Cal. Dec. 28, 2020)................... 19

*Rubio v. Monsanto Co.*
    181 F. Supp. 3d 746 (C.D. Cal. 2016).................................................................................. 20

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

-iv-

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

*Saleh v. Titan Corp.*
361 F. Supp. 2d 1152 (S.D. Cal. 2005) ................................................................. 20

*Sallyport Global Servs., Ltd v. Arkel Int'l, LLC*
78 F. Supp. 3d 369 (D.D.C. 2015) ........................................................................ 22

*Smith v. McCullough*
270 U.S. 456 (1926) ................................................................................................ 7

*State Farm Fire & Cas. Co. v. B.T.B., Inc.*
No. CV-F-10-1990 LJO DLB, 2011 WL 284974 (E.D. Cal. Jan. 26, 2011) ......................... 13

*Stewart Org. v. Ricoh Corp.*
487 U.S. 22 (1988) ................................................................................................ 16

*Stock West, Inc. v. Confederated Tribes of the Colville Reservation*
873 F.2d 1221 (9th Cir. 1989) ............................................................................... 6

*Susan B. Anthony List v. Driehaus*
573 U.S. 149 (2014) ................................................................................................ 7

*Texas v. United States*
523 U.S. 296 (1998) ................................................................................................ 7

*Thomas v. Anchorage Equal Rights Comm'n*
220 F.3d 1134 (9th Cir. 2000) (en banc) ............................................................. 10

*Ticor Title Ins. Co. v. Am. Resources, Ltd.*
859 F.2d 772 (9th Cir. 1988) ................................................................................. 8

*Trustgard Ins. Co. v. Collins*
942 F.3d 195 (4th Cir. 2020) ........................................................................ 7, 8, 10

*Van Dusen v. Barrack*
376 U.S. 612 (1964) ........................................................................................ 16, 22

*W. Int'l Syndication Corp. v. Gulf Ins. Co.*
No. CV 04-2349-RGK, 2004 WL 5573919 (C.D. Cal. Dec. 20, 2004) ..................... 8

*W. World Ins. Co. v. County of Haw.*
No. 05–00742 DAE/LEK, 2008 WL 2073494 (D. Haw. May 15, 2008) ............... 9, 14

*Williams v. Bowman*
157 F. Supp. 2d 1103 (N.D. Cal. 2001) .............................................................. 19

*Wilton v. Seven Falls Co.*
515 U.S. 277 (1995) ......................................................................................... 2, 10

*Zimpelman v. Progressive N. Ins. Co.*
No. C-09-03306 RMW, 2010 WL 135325 (N.D. Cal. Jan. 8, 2010) ............... 16, 22, 23

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

-v-

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

**CALIFORNIA CASES**

*Aerojet–General Corp. v. Transp. Indem. Co.*
    17 Cal. 4th 38 (1997) ................................................................................... 15

*Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.*
    45 Cal. App. 4th 1 (1996).......................................................................... 1, 7

*Certain Underwriters at Lloyd's of London v. Superior Court*
    24 Cal. 4th 945 (2001) ............................................................................. 8, 9

*Montrose Chem. Corp. v. Superior Court*
    25 Cal. App. 4th 902 (1994)................................................................. 14, 15

*Montrose Chem. Corp. v. Superior Court*
    6 Cal. 4th 287 (1993) .......................................................................... 2, 13, 14

**OTHER CASES**

*Bates v. Guar. Nat'l Ins. Co.*
    476 S.E.2d 797 (Ga. Ct. App. 1996) .......................................................... 5

**FEDERAL STATUTES**

28 U.S.C. § 1332(a) ...................................................................................... 17

28 U.S.C. § 1391(a)(2) .................................................................................. 17

28 U.S.C. § 1404 ........................................................................................... 16

28 U.S.C. § 1404(a) ............................................................................... passim

**OTHER AUTHORITIES**

Comprehensive General Liability Policy, 68 Minn. L. Rev. 795 (1984)....................................... 4

Fed. R. Civ. P. 12(b)(1).......................................................................... 1, 2, 6

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

-vi-

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2      **PLEASE TAKE NOTICE** that on January 5, 2023, at 2:00 p.m., before the Honorable

3   Haywood S. Gilliam, Jr., at the United States District Court, Oakland Courthouse, Courtroom 2 –

4   4th Floor, 1301 Clay Street, Oakland, California, 94612, Defendant Chart Industries, Inc.

5   ("Chart") will, and hereby does, move to dismiss or stay the Complaint of Starr Indemnity &

6   Liability Company ("Starr").  Alternatively, Chart will, and hereby does, move the Court to

7   transfer this proceeding to the United States District Court for the Northern District of Georgia.

8      Chart's motion is based on this notice of motion and motion, the memorandum of points

9   and authorities set forth below, the contents of the Court's files and such other matters that may

10  appropriately be subject to judicial notice.  Chart's alternative motion to transfer is also based on

11  the Declaration of Laura Ashby submitted in support of that request for relief.

12

## STATEMENT OF ISSUES (CIV. L.R. 7-4(a)(3))

13      1.      Whether Starr's Complaint should be dismissed because it fails to plead

14  sufficiently the necessary elements of standing and ripeness to confer the Court with subject

15  matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).

16      2.      If the Court determines that it has subject matter jurisdiction or declines to reach

17  the issue, whether Starr's Complaint should nevertheless be dismissed or stayed pursuant to the

18  discretion conferred upon the Court under the Declaratory Judgment Act.

19      3.      Alternatively, whether the Court should transfer this Action to the United States

20  District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a).

21

22  Dated: August 3, 2022                          MORGAN, LEWIS & BOCKIUS LLP

23

24                                          By  /s/ David S. Cox
                                                David S. Cox
25                                              Attorneys for Defendant
                                                CHART INDUSTRIES, INC.

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Starr, Chart's fifth-layer excess liability insurer, filed this "action for declaratory judgment" against Chart on June 13, 2022 to seek "a determination of what obligation, if any, [Starr] has to indemnify Chart in connection with various state and federal court actions" (collectively, "the PFC Litigation") arising from a March 2018 accident at the Pacific Fertility Center. Dkt. No. 1 at ¶ 1.  At this point, the PFC Litigation is being actively defended.  No judgment has been entered against Chart.[1]  There is nothing for Starr to "indemnify" now and there may never be if Chart (and Chart Inc.) successfully defend the PFC Litigation or if any liability eventually imposed does not exceed the $100,000,000 in policy limits afforded by four layers of excess coverage beneath the Starr excess policy ("the Starr Policy").

A "federal court normally ought not resolve issues involving contingent future events that may not occur as anticipated, or indeed may not occur at all." *Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th Cir. 1996) (quotations omitted).  The "question whether an insurer has a duty to indemnify the insured on a particular claim is ripe for consideration only if the insured has already incurred liability in the underlying action." *Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.*, 45 Cal. App. 4th 1, 108 (1996).  Chart has not "incurred liability" in the PFC Litigation, which means that Starr has not alleged a concrete injury that is "actual or imminent, not conjectural or hypothetical," and thus lacks the "irreducible constitutional minimum of standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  Starr's failure to allege a ripe claim involving "actual or imminent" injury requires dismissal of its Complaint because the pleading does not confer subject matter jurisdiction on this Court.  *See Jackson v. City & County of San Francisco*, 829 F. Supp. 2d 867, 870 (N.D. Cal. 2011) ("The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring, among other things,

---

[1] Judgment has been entered against Chart's *subsidiary*, Chart Inc., which also is insured under the applicable Starr insurance policy, but that judgment is on appeal.  Starr mistakenly alleges that judgment was entered against Chart but correctly acknowledges that the judgment has been appealed.  *See* Dkt. No. 1 at ¶¶ 28-32.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

1  that plaintiffs have standing and that claims be 'ripe' for adjudication," deficiencies that are

2  "properly raised in a Rule 12(b)(1) motion to dismiss.").

3       Even if the Court concludes that Starr has sufficiently pleaded an actual case or

4  controversy, it should nonetheless dismiss or stay Starr's Complaint under the discretion afforded

5  it by the Declaratory Judgment Act, which gives "the federal courts competence to make a

6  declaration of rights" but "d[oes] not impose a duty to do so." *Pub. Affairs Assocs. v. Rickover*,

7  369 U.S. 111, 112 (1962).  "In the declaratory judgment context, the normal principle that federal

8  courts should adjudicate claims within their jurisdiction yields to considerations of practicality

9  and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

10      Here, these considerations militate compellingly in favor of a stay or dismissal of Starr's

11 Complaint.  Because of the contingencies embedded in Starr's Complaint, any opinion rendered

12 by the Court would "ha[ve] an advisory quality" and even if the Court's determination "would not

13 strictly be an advisory opinion (anathema under Article III) it could be a mistake, because it

14 would consume judicial time in order to produce a decision that may turn out to be irrelevant."

15 *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003).

16      Just as importantly, Starr's coverage proceeding should be deferred to allow the PFC

17 Litigation to proceed and crystallize the questions of liability upon which Starr's indemnity

18 obligations will turn: "'[a] stay or dismissal is favored if the claim for declaratory judgment is

19 duplicative of the issues being litigated in the underlying liability action.'" *First Mercury Ins.*

20 *Co. v. Great Divide Ins. Co.*, 203 F. Supp. 3d 1043, 1054 (N.D. Cal. 2016) (quoting *Hanover Ins.*

21 *Co. v. Paul M. Zagaris, Inc.*, No. C 16–01099 WHA, 2016 WL 3443387, at *3 (N.D. Cal. June

22 23, 2016)).  At a minimum, a *stay* of Starr's claim is necessary here because "the coverage

23 question turns on facts to be litigated in the underlying action." *Montrose Chem. Corp. v.*

24 *Superior Court*, 6 Cal. 4th 287, 301 (1993).  In particular, Starr's assertion that Chart "expected

25 or intended" to injure the plaintiffs in the PFC Litigation presents "the classic situation in which

26 the declaratory relief action should be stayed" because "the potential that the insurer's proof will

27 prejudice its insured in the underlying litigation is obvious." *Id.* at 301-302.

28

-2-

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

Finally, and alternatively, Chart asks this Court to transfer this action to the Northern District of Georgia for "the convenience of parties and witness" and "in the interest of justice." 28 U.S.C. § 1404(a). Starr has no ascertainable connection to California. The Starr Policy is governed by Georgia law, and Chart's witnesses - including, importantly, non-party witnesses - are located in Georgia. A related coverage dispute has already been pending in the Northern District of Georgia for more than two years. These considerations of convenience, fairness and judicial economy all support transfer to the Northern District of Georgia if Starr's case is to proceed at all.

## II.     THE STARR COMPLAINT

### A.     THE UNDERLYING PFC LITIGATION

Starr's Complaint summarizes the allegations against Chart[2] arising from an accident in March 2018 at Pacific Fertility Center in San Francisco in which the alleged failure of a liquid nitrogen tank manufactured by Chart caused the rapid thawing of embryos and eggs stored there by Pacific Fertility Center's clients, damaging or destroying these reproductive materials. Dkt. No. 1 at ¶¶ 1, 14-25. The accident led to "various state and federal court actions" through which the underlying plaintiffs have asserted various causes of action in tort against Chart and in which:

> [T]he underlying plaintiffs seek to recover economic damages that are intended to compensate the underlying plaintiffs for the value of their damaged or destroyed eggs and/or embryos as well as non-economic damages that are intended to compensate the underlying plaintiffs for their emotional distress associated with the damage to or loss of their property (*i.e.*, eggs and/or embryos).

*Id.* at ¶¶ 26-27. One federal suit, involving five of the underlying plaintiffs, proceeded to trial last year and Chart was found to be 90% at fault for more than $15,000,000 in damages awarded because of the accidental damage and destruction of the plaintiffs' reproductive materials stored by Pacific Fertility Center. *Id.* at ¶¶ 29-31. The judgment is now on appeal. *Id.* at ¶ 32.

### B.     THE STARR POLICY

The Starr Policy is an excess liability policy that provides $50,000,000 of coverage "each occurrence" for losses exceeding the $100,000,000 in "Underlying Insurance'" scheduled in

---

[2] Actually, Chart Inc. *See fn.* 1.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

-3-

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

1   Endorsement No. 1 to the policy. Dkt. No. 1-1 at 2, 14-15. The policy provides that it "is

2   governed by the laws of the state where it was delivered" and "bec[a]me effective . . . at the

3   address of the Named Insured," which is listed as 3055 Torrington Drive in Ball Ground,

4   Georgia. *Id.* at 2, 4. Claims arising under the policy "can be reported to: Starr Adjustment

5   Services, Inc." in Atlanta. *Id.* at 3. At Endorsement Nos. 2 and 3, the Starr Policy enumerates a

6   number of specific "Georgia Changes" to its policy form. *Id.* at 16-19.

7   Per Endorsement No. 9, the "Following Form Coverage Endorsement," the Starr Policy –

8   with limited exceptions that do not appear to be relevant here – conforms itself to the "same

9   Insuring Agreements, Exclusions, Definitions and Conditions" as those found in an underlying

10  policy, Allianz Global Risks US Insurance Company Policy No. ULA 2011124 ("the Allianz

11  Policy"). *Id.* at 30.[3] According to Starr, the Allianz Policy's animating insuring agreement

12  promises to "pay on behalf of the 'insured' those sums in excess of the 'Retained Limit' that the

13  'insured' becomes legally obligated to pay as damages by reason of liability imposed by law . . .

14  ***because of*** 'bodily injury' [or] 'property damage'" that is caused by an "occurrence."[4] Dkt. No. 1

15  at ¶ 41 (emphasis added). This "because of" language "renders coverage highly elastic"[5] to

16  conform to the insured's liability in tort: if the insured is held liable for either bodily injury or

17  property damage, coverage extends to "'any and all damages flowing therefrom and not expressly

18  excluded from the policy. . . .'" *DeWitt Constr. Inc. v. Charter Oak Fire Ins. Co.*, 307 F.3d 1127,

19  1136 (9th Cir. 2002) (quoting *Gen. Ins. Co. of Am. v. Gauger*, 538 P.2d 563, 566 (Wash. Ct. App.

20  1975)); *see also* 3 Allan D. Windt, INSURANCE CLAIMS AND DISPUTES, § 11:1 at 11–19

21  (6th ed. 2013) ("Liability policies cover not only damages for property damage, but damages

22  *because of*, *on account of*, or *by reason of* property damage. Accordingly, once covered property

23  damage exists, all consequential damages are covered.") (emphasis in original).

24

25  [3] Although Starr's Complaint quotes at some length from what it describes as its policy's
    "insuring agreement," one of its "definition[s]" and one of its "condition[s]," each of the quoted
26  provisions appears to be superseded by Endorsement No. 9. *See* Dkt. No. 1 at ¶¶ 37-39.
    [4] Starr alleges that an "occurrence" is defined as "an accident, including continuous exposure to
27  substantially the same general harmful conditions." Dkt. No. 1 at ¶ 42.
    [5] Laurie Vasichek, Note, Liability Coverage for "Damages Because of Property Damage" Under
28  the Comprehensive General Liability Policy, 68 Minn. L. Rev. 795, 818 (1984).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

-4-

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

Starr maintains that the Allianz Policy contains a single "potentially relevant exclusion," for "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the 'insured.'" Dkt. No. 1 at ¶ 43.  This policy language "contemplates a subjective test as to the insured's intention," and unless Starr can establish a "specific intent to injure, there will be coverage." *Bates v. Guar. Nat'l Ins. Co.*, 476 S.E.2d 797, 799 (Ga. Ct. App. 1996).

## C.   STARR'S CLAIMS FOR RELIEF

Other than the federal court judgment now on appeal, Starr does not allege that any judgments for damages have been awarded against Chart in the PFC Litigation.  It does not allege that Chart or its insurers have settled any of the underlying claims.  It does not allege that the exhaustion of the $100,000,000 in coverage beneath it is imminent or that Chart has asserted that Starr's obligations are, or even soon will be, due and owing.  Nevertheless, Starr asserts that "[a]n actual and justiciable controversy has arisen and now exists relating to the parties' respective rights, duties, and obligations under the Starr Policy" and seeks "a determination of what obligation, if any, [it] has to indemnify Chart in connection with" the PFC Litigation.  *Id.* at ¶¶ 1-2.  From this "controversy," Starr distills five discrete claims for "declaratory relief."

Starr's first two claims for relief attempt to erase its promise to cover Chart for consequential damages arising from a covered loss that triggers coverage, *i.e.* the grant of coverage for damages awarded "because of" property damage.  In its First Claim for Declaratory Relief, despite recognizing that the underlying plaintiffs seek damages for their "emotional distress associated with the damage to or loss of their property (*i.e.* eggs and/or embryos)," Starr asks the Court to declare that such "non-economic damages" are not "because of property damage." *Id.* at ¶¶ 44-57.  The Second Claim for Declaratory Relief is somewhat convoluted, since it asks the Court to declare what its policy already says – that Starr "owes no duty to indemnify Chart for any economic damages that are not 'because of' 'property damage.'" *Id.* at ¶¶ 58-66.  However, it appears that Starr is again asking the Court to take an unduly restrictive reading of the grant of coverage for "damages because of property damage" and read out any coverage for consequential damages that flow from covered property damage. *Id.* at ¶¶ 60-65.

1    Starr's third and fourth claims for relief attempt to establish that damage for which Chart

2    may eventually be held liable was not accidental.  In its Third Claim for Declaratory Relief, Starr

3    asks the Court to declare that the underlying claims against Chart are not covered because they do

4    not arise from an "occurrence," that is "an accident, including continuous or repeated exposure to

5    substantially the same harmful conditions." *Id.* at ¶¶ 67-73.  Starr's Fourth Claim for Declaratory

6    Relief builds on its assertion that the injuries alleged by the underlying plaintiffs were not

7    accidentally caused, asking the Court to declare that the Expected or Intended Injury or Damage

8    Exclusion applies to bar coverage. *Id.* at ¶¶ 74-78.

9    Finally, Starr's Fifth Claim for Declaratory Relief alleges that "Chart has not provided any

10   evidence establishing exhaustion of underlying insurance by payment of covered claims" and

11   seeks a "judicial declaration that [Starr] owes no present obligation to indemnify Chart in

12   connection with the claims asserted against it in the Underlying Actions." *Id.* at ¶¶ 79-84.  This

13   "controversy" is a strawman: Chart does not contend that underlying insurance has been

14   exhausted such that Starr owes a "present obligation to indemnify Chart."  Far from it.  Indeed,

15   that Chart does *not* contend that Starr has a "present obligation to indemnify" is precisely why

16   Starr's action is not ripe and why its Complaint must be dismissed.

17   **III.   ARGUMENT**

18   **A.   Starr's Complaint Must Be Dismissed Under Fed. R. Civ. P. 12(b)(1)**

19   Federal courts have limited jurisdiction and may only consider cases that satisfy the "case

20   or controversy" clause in Article III of the Constitution. *Chandler v. State Farm Mut. Auto. Ins.*

21   *Co.*, 598 F.3d 1115 (9th Cir. 2010).  Among the requirements for a justiciable "case or

22   controversy" is that the party seeking relief have standing to assert a claim that is ripe.  When

23   subject matter jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(1), the

24   plaintiff has the burden of proving jurisdiction in order to survive the motion. *See Stock West,*

25   *Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989).

26   "[A] plaintiff, suing in a federal court, must show in his pleading, affirmatively and distinctly, the

27   existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

-6-

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

1  having the defect called to its attention or on discovering the same, must dismiss the case, unless

2  the defect be corrected by amendment." *Smith v. McCullough*, 270 U.S. 456, 459 (1926).

3      The concepts of standing and ripeness are closely related.[6]  A party has standing to sue if

4  it can allege an injury that is "actual or imminent, not conjectural or hypothetical." *Lujan*, 504

5  U.S. at 560 (quotation omitted).  Similarly, "[a] claim is not ripe for adjudication if it rests upon

6  contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas*

7  *v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*,

8  473 U.S. 568, 580-81 (1985) (internal quotation marks omitted)).  The requirement that a claim

9  be ripe "is to prevent the courts, through avoidance of premature adjudication, from entangling

10  themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136 (1967), *abrogated*

11  *on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).  A federal court should instead

12  "wait until the case has 'taken on fixed and final shape so that we can see what legal issues we are

13  deciding, and what effect our decision will have on the adversaries.'" *Trustgard Ins. Co. v.*

14  *Collins*, 942 F.3d 195, 200 (4th Cir. 2020) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*,

15  344 U.S. 237, 244 (1952)).

16      Here, Starr asks for a determination "of what obligation, if any" it has "*to indemnify* Chart

17  in connection with [the PFC Litigation]."  Dkt. No. 1 at ¶ 1 (emphasis added).  Its alleged

18  "injury" – that it *might* one day have to indemnify Chart if Chart becomes liable to pay more than

19  $100,000,000 in damages – "is of a hypothetical and contingent nature: the injury may or may not

20  occur depending on the outcome of the [PFC Litigation]." *Trustgard*, 942 F.3d at 200.  The

21  "question whether an insurer has a duty to indemnify the insured on a particular claim is ripe for

22  consideration only if the insured has already incurred liability in the underlying action."

23  *Armstrong*, 45 Cal. App. 4th at 108.  Consequently, federal courts "regularly say that decisions

24  about indemnity should be postponed until the underlying liability has been established." *Lear*

25  *Corp.*, 353 F.3d at 583-585; *see also Charter Oak Fire Ins. Co. v. New York Marine & Gen. Ins.*

26

---

27  [6] *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014) (noting that the "doctrines

28  of standing and ripeness 'originate' from the same Article III limitation" and may "boil down to the same question").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

-7-

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

1   *Co.*, 559 F. Supp. 3d 244, 253 n.6 (S.D.N.Y. 2021) ("'Generally, [c]laims concerning

2   indemnification obligations . . . are not ripe for adjudication until liability has been imposed upon

3   the party to be indemnified.'") (quoting *Brotherhood Mut. Ins. Co. v. Ludwigsen*, No. 16 Civ.

4   6369 (CS), 2018 WL 4211319, at *17 (S.D.N.Y. Sept. 4, 2018)).

5        In accordance with this general rule, the Ninth Circuit Court of Appeals has suggested that

6   a pure "duty to indemnify" declaratory relief claim[7] is not justiciable until the insured's liability

7   in the underlying action is established:

8        We note that none of the pending actions has yet determined
         whether and to what extent American Resources is liable to Thrift;
9        *it is therefore doubtful that there exists an actual controversy
         concerning Ticor Title's obligation to indemnify its insured.  See
10       Societe de Conditionnement v. Hunter Engineering*, 655 F.2d 938,
         943 (9th Cir. 1981).  In such instances, *courts normally dismiss
11       declaratory judgment actions, especially where the federal relief
         sought may hinge upon the outcome of state court actions.  See,
12       e.g., Swedlow, Inc. v. Rohm & Haas Co.*, 455 F.2d 884, 886 (9th
         Cir. 1972) (per curiam); *State Farm Mutual Insurance Co. v.
13       Walker*, 382 F.2d 548, 551 (7th Cir. 1967).

14  *Ticor Title Ins. Co. v. Am. Resources, Ltd.*, 859 F.2d 772, 777 n.7 (9th Cir. 1988) (emphasis

15  added).  Trial courts within the Ninth Circuit typically have followed *Ticor Title's* cue and

16  dismissed insurer "duty to indemnify" declaratory relief claims brought before the insured has

17  been found liable in the underlying proceedings.  *See, e.g., W. Int'l Syndication Corp. v. Gulf Ins.*

18

19  ───────────────
    [7] In contrast, declaratory relief claims involving the duty to defend (or the duty to defend *and*
20  indemnify) typically are found to be at least partially justiciable.  *See, e.g., Am. States Ins. Co. v.
    Kearns*, 15 F.3d 142, 144 (9th Cir. 1994) ("[T]here was a case or controversy when American
21  States brought its declaratory judgment action to establish whether it had a *duty to defend and to
    indemnify* Tahoe Boat") (emphasis added).  However, these cases are distinguishable.  *Trustgard*,
22  942 F.3d at 200 (noting distinction).  An insurer's duty to defend hinges on the allegations in the
    underlying complaint, while the duty to indemnify turns on the facts adjudicated, and judgment
23  entered, in that underlying proceeding.  *See Certain Underwriters at Lloyd's of London v.
    Superior Court*, 24 Cal. 4th 945, 958 (2001) ("[T]he duty to defend has as its purpose 'to avoid or
24  at least minimize liability ... *before* liability is established' and the duty to indemnify has as *its*
    purpose 'to resolve liability ... *after* liability is established' . . . .  They differ in their triggering:
25  Whereas the duty to indemnify can arise only after damages are fixed in their amount, the duty to
    defend may arise as soon as damages are sought in some amount.") (citations omitted, emphasis
26  in original).  Accordingly, a declaratory relief claim involving the *duty to defend* is ripe for
    adjudication before the underlying action is resolved while a claim pertaining to the *duty to
27  indemnify* is not unless the insurer prevails on the duty to defend issue and, *a fortiori*, the duty to
    indemnify issue as well.  *Id.* ("[W]here there is no duty to defend, there *cannot be* a duty to
28  indemnify.") (emphasis in original).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

-8-

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

1   *Co.*, No. CV 04-2349-RGK (JWJx), 2004 WL 5573919, at *3 (C.D. Cal. Dec. 20, 2004)

2   (dismissing declaratory relief claim *sua sponte*: "Without a determination of liability, this Court

3   simply cannot make determinations as to Defendant's duty to indemnify. . . .  As such, this Court

4   finds that the remaining portion of the Declaratory Relief: Duty to Indemnify claim is not a

5   justiciable and ripe controversy.  Therefore, this Court lacks jurisdiction to hear the matter."); *W.*

6   *World Ins. Co. v. County of Haw.*, No. 05–00742 DAE/LEK, 2008 WL 2073494, at *2 (D. Haw.

7   May 15, 2008) (dismissing declaratory relief claim as to duty to indemnify because "it is clear

8   that the indemnification issue is not ripe at this time"); *First Mercury Ins. Co.*, 203 F. Supp. 3d

9   at 1053-1054 ("[P]rior to resolution of the underlying state court action, the Court is 'unable to

10  determine the amount of the insurer's indemnity obligation.'  Any declaration from this Court

11  about Defendant's indemnity obligations would be purely speculative.  As such, the Court finds

12  that Plaintiff's request for a declaratory judgment regarding indemnity is not ripe."); *Hartford*

13  *Fire Ins. Co. v. Tempur-Sealy Int'l, Inc.*, No. 14-cv-01661-HSG, 2016 WL 2851577, at *2 (N.D.

14  Cal. May 16, 2016) (discussing "unripe issue" of insurer's duty to indemnify: "The duty to

15  indemnify only arises after damages in the Underlying Action are fixed.  *See Certain*

16  *Underwriters at Lloyd's of London v. Superior Court*, 24 Cal. 4th 945, 958 (2001).  The

17  Underlying Action is still proceeding before Judge Tigar, and thus the Court could not, and still

18  cannot, determine whether Plaintiff possesses a duty to indemnify."); *Cincinnati Specialty*

19  *Underwriters Ins. Co.  v. Red Rock Hounds*, 511 F. Supp. 3d 1105, 1117 (D. Nev. 2021) (insurer

20  "claim requesting declaratory judgment that i[t] has no duty to indemnify for potential future

21  punitive damages is dismissed as the claim will not be ripe until judgment is entered in"

22  underlying action).[8]

23          Starr's complaint is devoid of any allegation that the "damages in the Underlying

24  Action[s] are fixed."  *Certain Underwriters*, 24 Cal. 4th at 958.  To the contrary, not only are

25  "damages" not "fixed," but Chart continues to dispute whether it has *any* liability at all.  Whether

26  liability will be imposed, in what amount, and on what theory, or theories, of liability all remain

27

28  _____

[8] *But see Northfield Ins. Co. v. Civic Center Hotel, LLC*, 239 F. Supp. 3d 1163, 1174 (N.D. Cal. 2017) (declining to dismiss, but instead staying, "duty to indemnify" declaratory relief claim).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

-9-

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

1   open questions that necessarily are the subject of speculation that cannot be answered in this

2   proceeding.  In asking this Court to make "a determination of what obligation, if any, Starr has to

3   indemnify Chart in connection with" the PFC Litigation (Dkt. No. 1 at ¶ 1), Starr requests an

4   advisory opinion on hypothetical facts that are contingent on the outcome of that litigation.

5   Under Article III of the Constitution, this Court lacks jurisdiction to entertain such a request.  *See,*

6   *e.g.*, *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc)

7   ("Our role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to

8   adjudicate live cases or controversies consistent with the powers granted the judiciary in Article

9   III of the Constitution.").  Starr's complaint must be dismissed.

10      **B.**      **Even If It Has Subject Matter Jurisdiction, the Court Should Exercise Its**
                    **Discretion to Dismiss or Stay Starr's Complaint**

11

12         The Court can also dismiss Starr's Complaint pursuant to the discretion afforded it by the

13   Declaratory Judgment Act without the need to grapple with the question of its subject matter

14   jurisdiction.  *See Trustgard*, 942 F.3d at 201 ("We may thus look to whether jurisdiction *should*

15   have been exercised in this declaratory judgment action without first addressing whether Article

16   III jurisdiction exists.") (emphasis in original).  As the Supreme Court noted in *Wilton*, "[i]n the

17   declaratory judgment context, the normal principle that federal courts should adjudicate claims

18   within their jurisdiction yields to considerations of practicality and wise judicial administration."

19   515 U.S. at 288.

20         In evaluating these "considerations of practicality and wise judicial administration," the

21   Ninth Circuit has stressed that "the district court must balance concerns of judicial administration,

22   comity, and fairness to the litigants."  *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th

23   Cir. 2005) (internal quotation marks omitted).  Among these considerations are (i) whether

24   "exercis[ing] . . . discretionary jurisdiction . . . would raise serious questions about Article III

25   jurisdiction" and (ii) whether the declaration would "consume judicial time in order to produce a

26   decision that may turn out to be irrelevant."  *See Trustgard*, 942 F.3d at 201-02; *Lear Corp.*, 353

27   F.3d at 583.  As discussed above, these factors militate in favor of dismissal, whether due to a

28   lack of subject matter jurisdiction or as a matter of discretion, because "a declaration regarding

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

the duty to indemnify may have no real-world impact if no liability arises in the underlying litigation." *Molex Inc. v. Wyler*, 334 F. Supp. 2d 1083, 1087 (N.D. Ill. 2004); *see also Peerless Ins. Co. v. Innovative Textiles, Inc.*, No. 1-19-CV-362, 2020 WL 137303, at *2 (M.D.N.C. Jan. 13, 2020) ("[H]earing Plaintiffs' duty to indemnify claim at this time could unnecessarily consume the resources of the Court and the litigants as it is entirely possible that Innovative could be determined not liable to Carhartt in the underlying litigation.  Further, hearing this claim would raise serious questions about Article III jurisdiction as it is not clear that Plaintiffs have standing or a ripe claim.").

Moreover, in weighing "considerations of practicality and wise judicial administration," a district court should "avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998).  Each of these "*Brillhart* factors"[9] further favors the dismissal or stay of Starr's action.

First, "insurance coverage questions . . . are strictly the province of state law." *Great Am. Assurance Co. v. Discover Prop. & Cas. Ins. Co.*, 779 F. Supp. 2d 1158, 1163 (D. Mont. 2011).  Where, as here, "the sole basis of jurisdiction is diversity of citizenship, the federal interest is at its nadir.  Thus, the . . . policy of avoiding unnecessary declarations of state law is especially strong[.]" *Continental Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1371 (9th Cir. 1991) (overruled in part by *Dizol* on other grounds).  Starr's declaratory relief action would require this Court to ascertain and apply only state law – *Georgia* state law at that – a factor that, by itself, is sufficient to support dismissal.  *R.R. Street & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011) ("There is no question that retaining jurisdiction over the Removed Action would have required the district court to decide basic issues of state law.  In prior cases, we have recognized that needless determination of state law issues alone may support remand.") (citing *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 802-04 (9th Cir. 2002)).

---

[9] After *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

-11-

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

1       Second, that Starr asserts a transparently unripe declaratory relief claim in this jurisdiction

2   is indicative of forum shopping.  Starr does not allege it has any connection to California.  *See*

3   Dkt. No. 1 at ¶ 10.  Chart is a Delaware Corporation headquartered in Georgia.  *Id.* at ¶ 11.  The

4   Starr Policy "is governed by the laws of the state where it was delivered," *i.e.*, *Georgia*.  Dkt.

5   No. 1-1 at 2, 4.  There is no rhyme or reason for Starr to have brought this action here and at this

6   time; rather it has "artfully filed this action as a preemptive maneuver in anticipation of [its]

7   defense and in order to seize a California forum."  *Gribin v. Hammer Galleries, a Div. of*

8   *Hammer Holdings, Inc.*, 793 F. Supp. 233, 237 (C.D. Cal. 1992) (dismissing declaratory relief

9   action).  If and when Starr denies a ripe claim for indemnification from Chart, then Chart will be

10  the "aggrieved party" that is "entitled to choose the time and place for suit."  *Id.*

11      Finally, and most importantly, the issues presented by Starr's coverage action overlap

12  with those that will be resolved in the PFC Litigation and, if allowed to proceed, would "result in

13  entanglement between the federal and state court systems" and severely prejudice Chart's ability

14  to defend itself in those underlying actions while also preserving its right to insurance coverage.

15  *Dizol*, 133 F.3d at 1225 n.5.[10]  Here, Starr's duty to indemnify Chart is dependent on the outcome

16  of the underlying PFC Litigation and deciding the issue prematurely could interfere with those

17  underlying proceedings.  As one district court explained, these circumstances require, at a

18  minimum, a stay of the declaratory relief coverage action:

19          [T]he Court cannot adjudicate these claims at this time because the
            factual issues therein overlap with those to be resolved in the
20          underlying litigation. In other words, whether Plaintiff has a duty to
            indemnify Defendants will depend upon what the state court
21          determines in the underlying litigation. Indeed, short of
            impermissibly litigating the issues already before the state court, the
22          Court has no way of determining precisely what alleged actions by
            Defendants, if any, gave rise to the injury alleged in the underlying
23          litigation. As this Court cannot determine whether Defendants took
            any wrongful actions, it cannot determine whether these alleged

24

―――――――――――――――

25  [10] The only issue presented in Starr's Complaint that is *not* intertwined with the facts to be

26  litigated in the underlying PFC Litigation is with respect to Starr's Fifth Claim for Declaratory
    Relief which purports to seek a declaration that, because the coverage beneath the Starr Policy
    has not exhausted, Starr "owes no present obligation to indemnify Chart in connection with the

27  claims asserted against it in the [PFC Litigation]."  Dkt. No. 1 at ¶¶ 83-84.  As noted, however,
    this is not an actual controversy, because Chart does not contend that the coverage beneath the

28  Starr Policy is exhausted.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

-12-

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

actions fit into the definitions of "property damage" or "personal injury" as stated in the policy, any of the actions constitute an "occurrence," or any of the actions fell within any of the Policies' coverage periods. Thus, since "factual issues to be resolved in the declaratory relief action overlap with issues to be resolved in the underlying litigation," this Court must stay Plaintiff's duty to indemnify claims pending the resolution of the underlying litigation. [Citation] Further, *if the Court were to attempt to determine Plaintiff's indemnity obligations before knowing the precise facts which will establish the underlying liability, the Court would find itself at a loss—because whether indemnity is triggered under the Policies can only be determined by examining the facts giving rise to the underlying liability.* Further, both judicial economy, the policy against issuing advisory opinions, and practical considerations weigh against ruling on indemnity obligations based on hypothetical facts set forth by the parties.

*Arch Ins. Co. v. Fontana Union Water Co*., No. 16-1790-VAP (KKx), 2016 WL 11525899, at *6 (C.D. Cal. Dec. 9, 2016) (staying "duty to indemnify" declaratory relief claim) (emphasis added).

The California Supreme Court's decision in *Montrose* further elucidates the rationale for at least a stay of Starr's action pending resolution of the PFC Litigation.[11]

To eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action. [Citation] *For example, when the third party seeks damages on account of the insured's negligence, and the insurer seeks to avoid providing a defense by arguing that its insured harmed the third party by intentional conduct, the potential that the insurer's proof will prejudice its insured in the underlying litigation is*

---

[11] In addition to the discretion expressly afforded by the Declaratory Relief Act, this Court has the inherent ability to stay matters before it where "it is efficient for its own docket and the fairest course for the parties . . . pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd*., 593 F.2d 857, 863-64 (9th Cir. 1979). Because the issue is one of procedure, the Court is not bound by *Montrose*, but as the Court previously has observed, "the *Brillhart* factors mirror California law's mandate of a stay 'when the coverage question turns on facts to be litigated in the underlying action.'" *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Rudolph & Sletten, Inc.*, No. 20-cv-00810-HSG, 2020 WL 4039370, at *3 n.2 (N.D. Cal. July 17, 2020) (citing *Brillhar*t, 316 U.S. at 495 and *Montrose*, 6 Cal. 4th at 301). As a result, "[f]ederal courts in California have followed the *Montrose* rule [requiring a stay]." *Admiral Ins. Co. v. Shah & Assocs.*, No. 13cv44-WQH-JMA, 2013 WL 3831331, at *5-7 (S.D. Cal. July 23, 2013); *see, e.g., State Farm Fire & Cas. Co. v. B.T.B., Inc.*, No. CV-F-10-1990 LJO DLB, 2011 WL 284974, at *6-8 (E.D. Cal. Jan. 26, 2011); *OneBeacon Ins. Co. v. Parker, Kern, Nard & Wenzel*, No. 1:09-CV-00257, 2009 WL 2914203, at *3-5 (E.D. Cal. Sept. 9, 2009); *Allied Prop. & Cas. Ins. Co. v. Roberts*, No. 2:11-cv-00740-MCE-KJN, 2011 WL 2495691, at *2-3 (E.D. Cal. June 21, 2011); *Carolina Cas. Ins. Co. v. Helsley*, No. 1:10-cv-916-LJO-MJS, 2011 WL 121576, at *6 (E.D. Cal. Jan. 13, 2011).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

-13-

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

*obvious. This is the classic situation in which the declaratory relief action should be stayed.*

*Montrose*, 6 Cal. 4th at 301-302.  At a later stage in the same proceeding, the California Court of Appeal amplified these concerns, noting that "[i]f the declaratory relief action is tried before the underlying litigation is concluded, the insured may be collaterally estopped from relitigating any adverse factual findings in the third party action, notwithstanding that any fact found in the insured's favor could not be used to its advantage." *Montrose Chem. Corp. v. Superior Court*, 25 Cal. App. 4th 902, 910 (1994) ("*Montrose Chemical*").

Starr's Complaint squarely presents these issues, offering *Montrose's* "classic situation in which the declaratory relief action should be stayed" by asserting that the injury suffered by the PFC plaintiffs was not accidental and that, instead, Chart affirmatively expected and intended to harm the PFC plaintiffs.  Dkt. No. 1 at ¶¶ 67-78.  In *State Farm Fire and Casualty Company v. McIntosh*, the district court noted that when the issue of whether the insured acted "willfully" is common to both the coverage litigation and the underlying tort litigation, the prospect that "the parties may be collaterally estopped from litigating the issue further in the underlying state action" calls for the dismissal – not merely a stay – of the declaratory relief action:  "This disrupts the orderly adjudication of the underlying state case, since it forecloses the examination of some parts of the case while leaving other parts in need of resolution. [Citation] This disruption not only affects the parties, but also adversely impacts the 'interest in promoting comity between the federal and state courts.' [Citation] Accordingly, the exercise of federal jurisdiction over State Farm's action would be inappropriate."  837 F. Supp. 315, 316 (N.D. Cal. 1993) (citing *Mitcheson v. Harris*, 955 F.2d 235, 239 (4th Cir. 1992)).[12]

---

[12] As noted, the *State Farm* court dismissed, while other courts have stayed, declaratory relief claims that overlapped with issues to be determined in the underlying litigation.  While Chart seeks either remedy, it respectfully submits that dismissal of Starr's complaint without prejudice is preferable, particularly in light of the jurisdictional issues it has raised.  *See also W. World*, 2008 WL 2073494, at *3 ("First, the interests of comity between state and federal courts weigh in favor of this result because a premature decision by this Court on the indemnification issue would negatively impact the State court's ability to properly preside over the Underlying Actions. Second, dismissing the instant action without prejudice would contribute to the efficient allocation of judicial resources because the instant action would not sit unresolved on this Court's docket for what could be a number of years while the Underlying Actions run their course.  Third, dismissal of the declaratory action, with the option for the Insurer to later re-file, would prove fair

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

-14-

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

Allowing Starr's declaratory relief claim to proceed at this time on a parallel track with the underlying PFC Litigation would also place Chart in the untenable position of having to wage a "two-front war, doing battle with the plaintiffs in the third party litigation while at the same time devoting its money and its human resources to litigating coverage issues with its carriers." *Montrose Chemical*, 25 Cal. App. 4th at 910.  With Starr essentially "join[ing] forces with the plaintiffs in the underlying actions as a means to defeat coverage" it cannot be allowed to proceed with its coverage action at this time. *Id.* at 909-10; *cf. Allstate Ins. Co. v. Harris*, 445 F. Supp. 847, 851 (N.D. Cal. 1978) ("[T]he insured could not possibly have anticipated that the very resources for which he bargained would be turned against him and used to establish his liability whenever intentional tort was alleged.").

At a minimum, all of these factors warrant the imposition of a stay pursuant to the Court's inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Under *Landis*, courts must weigh competing interests in deciding whether to grant a stay: "possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55).  The collateral estoppel risks described above as well as the prospect of a "two-front war" make the possible damage and hardship to Chart palpable; Starr can speak to no comparable harm if it is made to wait until the resolution of the PFC Litigation.  And waiting for the PFC Litigation to be resolved, through judgments or compromise, would also narrow the issues, proof and questions of law with which the Court would be confronted.  An insurer's duty to indemnify "runs to claims that are actually covered, in light of the facts proved.  It arises only after liability is established and as a result thereof." *Aerojet–General Corp. v. Transp. Indem.*

---

to both parties because County Defendants would not be subject to an unresolved federal lawsuit for an indeterminate amount of time and the Insurer still has available to it the initial remedy that it sought, *i.e.* a declaratory judgment that it is not obligated to indemnify County Defendant.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

-15-

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

*Co.*, 17 Cal. 4th 38, 56 (1997) (citations omitted).  In other words, the results of the PFC Litigation are apt to define the issues that ultimately will bear on Starr's duty to indemnify.  As this Court previously has held, a stay under these circumstances would be "the most efficient and fairest course" since there are "'independent proceedings which bear upon the case." *Atain Specialty Ins. Co. v. Zenisco, Inc.*, Case No. 19-cv-05198-HSG, 2020 WL 3640011, at *2 (N.D. Cal. July 6, 2020) (citing *Leyva*, 593 F.2d at 863 (9th Cir. 1979)).

### C.   Alternatively, the Court Should Transfer This Action to the Northern District of Georgia

Alternatively, Chart asks the Court to transfer this action to the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1404, which provides in pertinent part: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  A motion to transfer venue is committed to the discretion of the trial court, which must weigh several case-specific factors affecting convenience and fairness. *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).  The transfer statute exists "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citation omitted).  As set forth below, these factors support transfer of this action to Georgia, which furnishes the governing law for the Starr Policy and is where Chart's important witnesses and proof are likely to be located.

### 1.   This Action "Might Have Been Brought" in the Northern District of Georgia

At the threshold, the Court must determine whether this action "might have been brought" in the proposed transferee district.  28 U.S.C. § 1404(a).  "Since transfer is limited to courts where the action might have been brought, the transferee court must: (1) be able to exercise personal jurisdiction over the defendant, (2) have subject matter jurisdiction over the claim, and (3) be a proper venue." *Zimpelman v. Progressive N. Ins. Co.*, No. C-09-03306 RMW, 2010 WL 135325, at *1 (N.D. Cal. Jan. 8, 2010).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

-16-

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

Here, Starr transacts business in Georgia and issued an insurance policy to Chart, a Georgia resident. Thus, the court in the Northern District of Georgia has personal jurisdiction over Starr. *See Game, L.L.C. v. Lloyd Sales Co., Inc.*, No. 1:07-CV-2498-CAP, 2008 WL 11407207, at *2 (N.D. Ga. June 2, 2008). Assuming *arguendo* that *this* Court has subject matter jurisdiction, then so too does the Northern District of Georgia for the same reasons under 28 U.S.C. § 1332(a); Dkt. No. 1 at ¶ 7 (alleging diversity of citizenship and amount in controversy exceeding $75,000). And venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. § 1391(a)(2) because the Starr Policy was delivered to Chart and became effective at Chart's principal place of business in Georgia. *See Hartford Cas. Ins. Co. v. Sany Am., Inc.*, 991 F. Supp. 2d 1303, 1306 (N.D. Ga. 2014) (noting in insurance coverage dispute that venue was proper in Northern District of Georgia in part because it was where the policies were delivered). Thus, the Northern District of Georgia is a jurisdiction in which Starr's action "might have been brought."

### 2. The Convenience Factors Favor Transfer

Once the Court determines that the transferee court is a suitable alternative forum, it must determine whether transfer would allow the case to proceed more conveniently and better serve the interests of justice. *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 497, 499 (C.D. Cal. 1981), aff'd, 726 F.2d 1381 (9th Cir. 1984). The *Los Angeles Memorial Coliseum Commission* court summarized the statutory factors set forth in § 1404(a) and their interplay with traditional common law considerations of forum *non conveniens*:

> In ruling on a transfer motion, a district court must consider each of the issues listed in section 1404(a): (1) the convenience of parties; (2) the convenience of witnesses; and (3) the interests of justice. Moreover, since section 1404(a) was "designed as an attempt to statutorily embody and modify the doctrine of forum non conveniens," the factors weighed by courts under the old common law doctrine of forum non conveniens should also be considered. This remains true even though the court's discretion under section 1404(a) is broader than it was under the doctrine of forum non conveniens. Some of those factors, discussed by the *Court in Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 508-09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947), are as follows: the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

-17-

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive....[The Court will weigh] relative advantages and obstacles to fair trial.

*Id.* (citations omitted).

In exercising its discretion, the Court may also consider "'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.'" *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). In this district, these factors have been distilled to "the following factors: (1) plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time to trial in each forum." *Lapachet v. Cal. Forensic Med. Group, Inc.*, No. 16-cv-06959-HSG, 2017 WL 3917209, at *2 (N.D. Cal. Sept. 7, 2017). Because section 1404(a) contemplates transfer rather than dismissal, transfer is available "upon a lesser showing of inconvenience" than required for a non-statutory forum non conveniens dismissal, giving the Court broader discretion in deciding a section 1404(a) motion to transfer. *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 50-51 (D.D.C. 2000). Application of these principles favors transfer.[13]

### a. Plaintiffs' Choice of Forum

A plaintiffs' choice of forum is entitled to deference on a motion to transfer if it is a resident of its chosen forum, but "where the plaintiff does not reside in a forum and [the] forum lacks a significant connection to the activities alleged in the complaint, a court's deference to a plaintiff's chosen venue substantially reduces." *Midkiff v. Prudential Ins. Co. of Am.*, No. 19-CV-

---

[13] Because the "relative court congestion and time to trial" appear to be comparable in each district and difficult to measure with any precision, Chart does not address this neutral factor. *See* https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2022/03/31-3; *Burns v. Svenson*, No. 19-cv-01209-HSG, 2019 WL 3554404, at *2 n.3 (N.D. Cal. Aug. 5, 2019).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

-18-

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

01656-JSW, 2019 WL 12469793, at *3 (N.D. Cal. Dec. 6, 2019).  This rule "is predicated on the assumption that when a plaintiff selects a forum other than one in which they reside, he may have engaged in forum-shopping." *RLI Ins. Co. v. Ceradyne, Inc.*, No. SACV2001997JVSKESX, 2020 WL 12948060, at *3 (C.D. Cal. Dec. 28, 2020).  "If there is any indication that plaintiff's choice of forum is the result of forum shopping, plaintiff's choice will be accorded little deference." *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001).

Additionally, "declaratory relief actions should not be used to deprive the [natural] plaintiff of his traditional choice of forum and timing, . . . provoking a disorderly race to the courthouse." *RLI Ins. Co.*, 2020 WL 12948060 at *4 (internal quotation marks and citations omitted).  In insurance coverage disputes, courts recognize that the insured, rather than the insurer, is the "aggrieved party" or "natural plaintiff."  *Id.* at *8 (giving the insured's choice of forum deference over the insurer's because the insured is the "aggrieved party").  In the wake of Starr's preemptive filing in this district, Chart filed its own protective declaratory relief action against Starr in the Northern District of Georgia to preserve its choice of forum in the event the coverage dispute with Starr should be appropriately litigated at this time.  Declaration of Laura Ashby ("Ashby Decl."), ¶ 5.  *That* choice of forum, by the natural plaintiff, the "aggrieved party" in this dispute, is entitled to deference.  *RLI Ins. Co.*, 2020 WL 12948060 at *4 (giving the insured's choice of forum on motion to transfer deference over the insurer's: "Given that RLI and Liberty seek only declaratory relief, they do not reside within the forum, and both this forum and others have significant connections to the facts giving rise to the suit, the Court is not inclined to afford RLI and Liberty's choice of forum deference.").

All of these considerations compel the conclusion that Starr's choice of forum is entitled to minimal, if any, deference, and is, at best, a neutral factor in assessing the proper venue.  Starr does not reside in or allege any significant connection to California.  Rather, as noted above, Starr is incorporated in Texas and has its principal place of business in New York.  Dkt. No. 1 at ¶ 10.  Nor does California have a significant connection to this coverage dispute.  This coverage dispute turns on the interpretation of the Policy, which was issued to Chart in Georgia and is governed by

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

-19-

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

1   Georgia law.  Chart's principal place of business where the Policy was delivered is more

2   significantly connected to this coverage dispute than the location of the PFC Litigation.  *See*

3   *Liberty Ins. Underwriters, Inc. v. O & S Holdings, LLC*, No. 2:18-cv-03176-JAK-SK, 2018 WL

4   4027014, at *2 (C.D. Cal. Aug. 15, 2018) (noting that the parties' contacts were more significant

5   with Florida in relation to the present suit than with California because "[a]lthough California is

6   the location of an underlying lawsuit for which [the defendant insured] seeks coverage under the

7   Policy, the disputed factual and legal issues in this suit . . . primarily concern the scope of

8   coverage under the Policy" which was made in Florida).

9           *b.*     *Convenience of the Parties, Witnesses and Access to Evidence*

10       "The convenience of witnesses is often the most important factor in determining whether a

11   [Section] 1404 transfer is appropriate."  *Rubio v. Monsanto Co*., 181 F. Supp. 3d 746, 762 (C.D.

12   Cal. 2016) (collecting cases).  And, "[i]mportantly, '[w]hile the convenience of party witnesses is

13   a factor to be considered, the convenience of non-party witnesses is the more important factor.'"

14   *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005) (quoting *Aquatic Amusement*

15   *Assocs., Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990)).  Closely tied to

16   this consideration of "convenience of non-party witnesses" is the recognition that "the availability

17   of compulsory process to compel the attendance of unwilling witnesses is an important factor"

18   because "depositions are a poor substitute for live testimony, especially where vital issues of fact

19   may hinge on credibility."  *Cambridge Filter Corp. v. Int'l Filter Co.*, 548 F. Supp. 1308, 1311

20   (D. Nev. 1982) (granting motion to transfer to Northern District of California, noting "attendance

21   of witnesses from throughout California could be compelled through subpoenas issued by the

22   proposed transferee court").

23       Here, it is premature to anticipate all of the potential witnesses in this action if and when it

24   proceeds, but it is likely that Chart-affiliated witnesses are, and will be, located in Georgia.  *See O*

25   *& S Holdings, LLC*, 2018 WL 4027014 at *2 ("[B]ecause [the defendant insured's] principal

26   place of business is in Tampa, Florida, witnesses and sources of proof for this matter are more

27   likely to be found in Florida than California.").  More significantly, it appears that at least several

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

-20-

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

important *non-party* witnesses are also located in Georgia and, thus, subject to the subpoena powers of a Georgia court, but not this court.  As discussed above, Starr has asserted that damage to the PFC Litigation plaintiffs was not "accidental" and that Chart "expected or intended" the damage to the plaintiffs' reproductive materials.  Chart anticipates that to defend itself against Starr's claim, it likely will need to offer testimony from former employees about the design and components of the MVE 808 cryogenic tank at issue in the PFC Litigation.  Ashby Decl., ¶¶ 6-7.  Such witnesses would potentially include:

- Jeff Brooks, an engineer formerly with Chart Inc., who is knowledgeable about the development and design of the MVE 808 tank;
- Buster Ingram, a welder formerly with Chart Inc., who is knowledgeable about the manufacturing and welds in MVE 808 tanks; and
- Seth Adams, Operations Manager formerly with Chart Inc., who is knowledgeable about the manufacturing of MVE 808 tanks.

*Id.* at ¶ 7.  All of these potential witnesses worked for Chart Inc. in Georgia before Chart divested its MVE cryo-biological products business to Cryoport, Inc. ("Cryoport") in October 2020.  *Id.* at ¶¶ 2, 8.  It is believed that each has continued to work for Cryoport in Georgia since that divestiture.  *Id.* at ¶ 8.

The potential prejudice to Chart's defense if it is forced to proceed to trial in a jurisdiction in which the attendance of important witnesses cannot be compelled is obvious.  And, notably, even if these, and similar, Georgia-based witnesses were willing to travel to California to testify at trial, "[t]he convenience and cost of attendance for witnesses" remains "an important factor in the transfer calculus."  *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).  As the *Nintendo* Court explained:

> "Additional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." Because inconvenience for witnesses increases with distance from home, the Fifth Circuit established the "100–mile" guideline. Under this tenet, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

> § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."

*Id.* at 1199 (citations omitted).[14]

To reiterate, the convenience of witnesses, particularly non-party witnesses, is commonly considered the "'most important factor considered by the court when deciding a motion to transfer for convenience.'" *Qurio Holdings, Inc. v. Dish Network Corp.*, No. 15-cv-00930-HSG, 2015 WL 4148962, at *5 (N.D. Cal. July 9, 2015) (quoting *Kannar v. Alticor, Inc.*, No. 08–cv–05505–MMC, 2009 WL 975426, at *2 (N.D. Cal. Apr. 9, 2009)). These factors weigh decisively in favor of transfer here.

### c.    *Familiarity With Applicable Law*

The Starr Policy provides that it is governed "by the law of the state where it was delivered" and Starr has "recogniz[ed] that Georgia law applies to policy interpretation." Dkt. No. 1-1 at 4; Ashby Decl., ¶ 5; *id.*, Exh. C at 13 n.3. This factor "tips the scale heavily in favor of" transfer. *Sallyport Global Servs., Ltd v. Arkel Int'l, LLC*, 78 F. Supp. 3d 369, 375 (D.D.C. 2015). As the Supreme Court observed, "it has long been recognized that: 'There is an appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself[.]'" *Van Dusen*, 376 U.S. at 645 (quoting *Gulf Oil Corp.*, 330 U.S. at 509); *see also Zimpelman v. Progressive N. Ins. Co.*, No. C-09-03306 RMW, 2010 WL 135325, at *4 (N.D. Cal. Jan. 8, 2010) ("A district court in Minnesota would be more familiar with Minnesota law than a district court in California. This factor weighs in favor of transfer."). Here, a district court in Georgia would be more familiar with Georgia law than a district court in California. This factor, too, strongly supports transfer.

---

[14] Under the "100-mile" guideline, the Northern District of Georgia is presumptively more convenient for *Starr's* witnesses also, who presumably are located either in New York or Texas. Atlanta is 2,000 miles closer to New York than San Francisco. It is about 1,000 miles closer to Dallas.

1

     *d.*  *Judicial Economy*

2

   Considerations of judicial economy also favor transfer.  Chart already has a pending

3

coverage lawsuit against another one of its general liability carriers, Navigators Specialty

4

Insurance Company ("Navigators"), in the Northern District of Georgia over insurance coverage

5

(namely, payment of claims expenses) arising from the PFC Litigation.  Ashby Decl., ¶ 4.  The

6

Navigators action has been pending before the Honorable Leigh Martin May for more than two

7

years, during which time Judge May has ruled that Georgia law governs the Navigators policy

8

and has developed at least some degree of familiarity with the PFC Litigation and the insurance

9

coverage issues that have arisen from it.  *Id.*, ¶¶ 4-5, Exhs. A.-B.[15]  Chart submits that this

10

experience and familiarity give Judge May and the Northern District of Georgia "a leg up on the

11

legal and factual issues presented" and that "the objectives of trying the case expeditiously and

12

inexpensively would benefit from a [Georgia] forum."  *See Reese v. CNH Am. LLC*, 574 F.3d

13

315, 320 (6th Cir. 2009) (finding that district court did not abuse its discretion in denying motion

14

to transfer based on these considerations of judicial economy even though "[t]he locus of the

15

dispute, the key parties and the location of most of the evidence" otherwise favored transfer).

16

     *e.*  *Local Interest in Controversy*

17

   Georgia, like all states, has "an interest in properly enforcing contracts made within [its]

18

jurisdiction and in ensuring that its residents obtain convenient and effective relief."  *Ascento*

19

*Capital, LLC v. MinervaWorks, LLC*, No. 20 CIV. 6195 (NRB), 2021 WL 2206487, at *7

20

(S.D.N.Y. June 1, 2021); *see also Mount Vernon Fire Ins. Co. v. Creative Housing Ltd*., 70 F.3d

21

720 (2d Cir. 1995) ("The State has a significant interest in the interpretation and enforcement of

22

insurance contracts executed within its borders").  On the other hand, California has little interest

23

in this coverage dispute compared to Georgia.  *See Zimpelman*, 2010 WL 135325, at *3

24

(recognizing that "California does not have a strong interest in a breach of contract action brought

25

by a Minnesota resident against a Wisconsin [insurer]," even though the coverage dispute arose

26

---

27

[15] Chart does not mean to suggest the issues are identical.  Navigators, unlike Starr, issued

28

*primary* coverage to Chart and the parties' dispute was ripe when the Navigator's action commenced.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

-23-

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG

1  from an underlying automobile accident in California).  Accordingly, the local interest factor

2  indicates that Georgia is the more appropriate forum for this action.

3    None of the factors enumerated by this Court favors retention of this case in the Northern

4  District of California.  Instead they are either neutral or tilt decidedly toward transfer to Georgia.

5  In particular, the location of potentially critical non-party witnesses, the convenience of all

6  witness and the application of Georgia law to the interpretation of the Starr policy all impel this

7  Court to transfer this action to the Northern District of Georgia, if it does not first dismiss it.[16]

8  **IV.** **CONCLUSION**

9    For all the foregoing reasons, Starr's action should be dismissed or stayed.  Alternatively,

10  this action should be transferred to the Northern District of Georgia.

11

12  Dated: August 3, 2022      MORGAN, LEWIS & BOCKIUS LLP

13

14              By  /s/ David S. Cox

15               David S. Cox
             Attorneys for Defendant

16               CHART INDUSTRIES, INC.

17

18

19

20

21

22

23

24

25

26

---

[16] The Court may also first address the motion to transfer and defer ruling on the motion to

27  dismiss or stay "so that it may be considered by the transferee court."  *Heredia v. Sunrise Senior Living*, No. 18-cv-00616-HSG, 2018 WL 5734617, at *8 (N.D. Cal. Oct. 31, 2018).

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

-24-

CHART INDUSTRIES, INC.'S MOTION TO
DISMISS, STAY, OR TRANSFER
4:22-CV-03484-HSG