Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHART INDUSTRIES INC., <br><br> Plaintiff, <br><br> v. <br><br> STARR INDEMNITY & LIABILITY COMPANY, <br><br> Defendants. | CASE NO. |

## COMPLAINT FOR DECLARATORY JUDGMENT AND DEMAND FOR JURY TRIAL

Pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, Plaintiff Chart Industries, Inc. ("Chart") files this Complaint for declaratory judgment and demand for jury trial against Defendant Starr Indemnity & Liability Company ("Starr") and alleges as follows:

### INTRODUCTION

1. In this insurance coverage dispute, Chart seeks a declaratory judgment that Starr has a duty to indemnify Chart in connection with several state and federal court actions filed against Chart (the "Underlying Actions").

1

2. The Underlying Actions arise from the alleged failure of a liquid nitrogen tank manufactured by a Chart subsidiary that took place at the Pacific Fertility Center ("PFC") in San Francisco, California on March 4, 2018 (the "Incident").

3. During the time period relevant to the Incident, Chart maintained a Commercial Excess Liability Policy, Policy No. 1000040617181, with Starr (the "Starr Policy"). A true and correct copy of the Starr Policy is attached hereto as **Exhibit A**.

4. An actual and justiciable controversy exists between Chart and Starr regarding Starr's duty to indemnify Chart in connection with the Underlying Lawsuits pursuant to the Starr Policy.

5. All parties necessary for this declaration are properly before the Court.

6. Chart seeks a declaration that Starr has a duty to indemnify Chart in connection with the Underlying Litigation.

7. Chart also seeks a declaration that Starr is not entitled to recoupment of any monies that Starr may contribute to a settlement in connection with the Underlying lawsuits.

## PARTIES, JURISDICTION, AND VENUE

8. Chart is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Ball Ground, Georgia. Chart is a citizen of Delaware and Georgia.

9. Starr is an insurance corporation organized and existing under the laws of the State of Texas with its principal place of business in New York, New York. Starr is a citizen of Texas and New York.

10. Jurisdiction is proper in this Court because Defendants transact business in Georgia and Plaintiff maintains its principal place of business in Ball Ground, Cherokee County, Georgia.

11. The amount in controversy exceeds $75,000.

12. The Court has diversity jurisdiction of this case under 28 U.S.C. § 1332.

13. A substantial part of the events or omissions giving rise to the claims in this action occurred in this district and this division.

14. Defendant is subject to personal jurisdiction in this district and this division.

15. Venue is proper in this district and this division pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

### I. THE UNDERLYING INCIDENT

16. Chart, through its subsidiaries, among other things, designs and manufactures cryogenic equipment.

17. Pacific Fertility Center ("PFC") is a private, unincorporated entity located in San Francisco engaged in the business of providing fertility treatment and services to men and women, including egg and embryo freezing, and in vitro fertilization.

18. Prelude Fertility, Inc. ("Prelude") operates a national network of egg and embryo long-term freezer storage facilities. In September 2017, Prelude added PFC to its national network of fertility clinics and storage facilities and, at the same time, formed Pacific MSO, LLC ("Pacific MSO"), a wholly owned subsidiary. This Complaint will refer to PFC, Prelude, and Pacific MSO collectively as "PFC."

19. PFC uses cryogenic equipment to freeze, store, and preserve the eggs and embryos.

20. One of the pieces of cryogenic equipment used by PFC is a Chart cryo-storage tank known as Tank No. 4.

21. Liquid nitrogen is used to keep the eggs and embryos frozen inside Tank No. 4.

22. On or about March 4, 2018, the liquid nitrogen level in Tank No. 4 allegedly dropped to an unsafe level, potentially damaging some of the eggs and embryos stored therein (the "Incident").

23. As a result of the Incident, numerous lawsuits were filed against several entities, including Chart and PFC (the "Underlying Lawsuits").

## II. THE UNDERLYING LAWSUITS

24. On May 30, 2018, combined plaintiffs from several proposed class actions filed a Consolidated Amended Class Action in the United States District Court for the Northern District of California, *In re Pacific Fertility Litigation*, 3:18-cv-01586-JSC.

25. The Underlying Plaintiffs allege that Incident resulted from a failure of Tank 4's vacuum seal.

26. Plaintiffs' claims against Chart include claims for negligence and strict products liability.

27. There are several additional actions, similar to the federal court consolidated class action discussed above, pending against Chart in the Superior Court of California, County of San Francisco.

### III. THE STARR POLICY

#### A. STARR POLICY PROVISIONS

28. The Starr Policy provides that it shall pay "Ultimate Net Loss" meaning the total sum actually paid or payable due to a claim or suit for which Chart is liable either by settlement to which it agreed or a final judgment. The term "Ultimate Net Loss" shall also include defense costs when such defense costs are included within the limits of insurance of any applicable "Underlying Insurance."

29. By the terms of the Starr Policy, the Ultimate Net Loss is payable when the insured or the insureds "Underlying Insurance" is obligated to pay the full amounts of the "Underlying Insurance" scheduled in the declarations. If other insurance applied, coverage under the Starr Policy "will not apply under the other insurance as paid or as obligated to pay the full amount of its limit of insurance." (Starr Policy Sec. IV.M.)

30. Other than the provisions above, the Starr Policy follows form to the underlying Allianz Policy.

#### B. THE ALLIANZ POLICY

31. Allianz issued Commercial Umbrella Liability Policy, Policy No. ULA2011124, to Chart for the policy period January 1, 2018 to January 1, 2019 (the

6

"Allianz Policy"). A true and correct copy of the Allianz Policy, is attached hereto

as **Exhibit B**.

    32. The Allianz Policy provides the following regarding Coverage:

> We will pay on behalf of the "insured" those sums in excess of the "Retained Limit" that the "insured becomes legally obligated to pay as damages by reason of liability imposed by law or assumed by the "insured" under an "insured contract" because of "bodily injury", "property damage", "personal injury" or advertising injury" to which this insurance applies.

Exhibit B, at 8.

    33. The Allianz Policy provides the following regarding Allianz's duty to defend Chart:

> We will have the right and duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies . . .
>
> a. When all applicable limits of "scheduled underlying insurance" have been exhausted by payment of damages to which this insurance applies; or
>
> b. When damages sought for "bodily injury", "property damage", "personal injury" or "advertising injury" are covered by this policy but are not covered by any "scheduled underlying insurance"
>
> . . .

7

> Our duty to defend ends when we have used up the applicable Limits of Insurance in the payment of judgments or settlements.

Exhibit B, at 9.

34. The Allianz Policy also contains a Defense Expenses Within Limits-Follow Form. Exhibit B, at 45.

35. The Defense Expenses Within Limits- Follow Form provides that the "applicable Limits of Insurance will be reduced by any payment of defense expenses [Allianz] make[s] in the same manner as the limits of insurance of the 'scheduled underlying insurance' were reduced by payment of defense expense or any supplementary payments." Exhibit B, at 45.

36. The Allianz Policy Schedule of Underlying Insurance includes the Navigators Policy and the Lloyd's Policy. Exhibit B, at 28.

37. The Allianz Policy defines "Retained Limit" to mean "The total applicable limits of 'scheduled underlying insurance' and any applicable 'Other Insurance' providing coverage to the 'Insured.'" Exhibit B, at 16.

38. The Allianz Policy defines "bodily injury" to mean "bodily injury, sickness, disability or disease sustained by a person, including death resulting from any of these at any time." Exhibit B, at 11.

8

39. "Bodily injury" also "includes humiliation, shock, mental anguish or other mental injury resulting from 'bodily injury.'" Exhibit B, at 11.

40. The Allianz Policy defines "property damage" as:

> Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Exhibit B, at 15.

41. The Allianz Policy also contain certain exclusions for the following:

**Expected or Intended Injury**

> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**Damage to Property**

> "Property damage" to:
>
> . . .
>
> (4) Personal property in the care, custody or control of the insured.
>
> . . .

9

> **Damage To Impaired Property Or Property Not Physically Injured**
>
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> 1. A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
> 2. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Exhibit B, at 17-18, 20.

42. The Policy defines "Your product" to mean:

    > Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
    >
    > (a) You;
    >
    > (b) Others trading under your name; or
    >
    > (c) A person or organization whose business or assets you have acquired; and
    >
    > Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

Exhibit B, at 16.

10

43. The Policy provides the following definition of "Impaired property":

"Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

Exhibit B, at 11.

### IV. THE STARR POLICY PROVIDES COVERAGE FOR THE UNDERLYING ACTIONS

44. The Underlying Actions allege claims for damages for "bodily injury" and "property damage" as those terms are defined in the Starr Policy.

45. Despite claims of bodily injury and/or property damage triggering the entire Chart Tower of insurance (including the Starr and Allianz Policies), Starr has filed a Complaint for Declaratory Relief and Reimbursement in the United States District Court for the Northern District of California, Matter No. 3:22-cv-03484, filed on June 13, 2022.

11

46. That action is a classic insurance company preemptive strike declaratory judgment action and is a blatant attempt at forum shopping. The insuring agreement between Starr and Chart has no connection to California and is based entirely in Georgia where Chart is headquartered and where the Policy was negotiated and delivered.

47. Starr has now breached the Policy by refusing to pay its limits to resolve the Underlying Actions despite a prior demand for same pursuant to O.C.G.A. § 33-4-6. Starr's refusal to pay its limits, as well as its expansion of the claim by filing a preemptive strike declaratory judgment strike in an inappropriate forum in California all constitutes bad faith failure to pay pursuant to O.C.G.A. § 33-4-6.

## COUNT I: DECLARATORY JUDGMENT THAT STARR HAS A DUTY TO INDEMNIFY CHART

48. Chart repeats and realleges the allegations set forth in paragraphs 1 through 47 of this Complaint as if fully restated herein.

49. An actual controversy of a justiciable nature presently exists between the Insurers and Chart regarding the Insurers' obligation to defend and indemnify Chart against the Underlying Lawsuits.

50. Chart seeks a declaratory judgment pursuant to O.C.G.A. § 9-4-1 *et seq.* to resolve the controversy.

51. Chart seeks a declaratory judgment that the Insurers are required to defend and indemnify Chart with regards to the PFC Litigation.

52. The issuance of a declaratory judgment by this Court will terminate the existing controversy between the parties.

## COUNT II: DECLARATORY JUDGMENT THAT STARR IS NOT ENTITLED TO RECOUPMENT

53. Chart repeats and realleges the allegations set forth in paragraphs 1 through 52 of this Complaint as if fully restated herein.

54. In its preemptive strike declaratory judgment action filed in California, Starr alleges a right to recoupment of money it pays in settlement of the Underlying Actions. There is no good faith basis under Georgia law to assert such a recoupment right because none exists in the Policy or at law. Chart seeks a declaratory judgment pursuant to O.C.G.A. § 9-4-1, et seq. to resolve the controversy. Chart seeks a declaratory judgment that Starr is not entitled to recoupment of any amounts it pays in settlement of the Underlying Actions.

## COUNT III: BREACH OF CONTRACT

55. Chart repeats and realleges the allegations set forth in paragraphs 1 through 54 of this Complaint as if fully restated herein.

56. Starr has breached the insurance policy provisions by failing and refusing to tender its full policy limit toward the settlement of the Underlying Actions. Such breach has proximately caused damages to Chart in an amount to be proven at trial of this matter.

## DEMAND FOR JURY TRIAL

Chart hereby demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Chart prays for relief as follows:

a. Chart requests a declaration that Starr must defend and indemnify Chart with regard to the Underlying Actions;

b. Chart requests that this Court enter judgment in favor of Chart that Starr is not entitled to recoupment of amounts paid under its Policy pursuant to Count II herein;

c. Chart requests that this Court enter judgment in favor of Chart and against Starr awarding damages for breach of contract in an amount to be proven at trial; and

d. Chart requests its attorneys' fees under O.C.G.A. § 13-6-11 for Starr being stubbornly litigious and causing Chart unnecessary trouble and expense;

e. Chart requests such other and further relief as this Court deems just and proper, including costs, expenses and attorney's fees as provided by law.

Respectfully submitted, this 14th day of June 2022.

/s/*D. Austin Bersinger*
D. Austin Bersinger
Georgia Bar No. 144792
BARNES & THORNBURG LLP
3475 Piedmont Road N.E., Suite 1700
Atlanta, Georgia 30305
Tel. (404) 264-4082
Fax (404) 264-4033
Email: austin.bersinger@btlaw.com

*Attorneys for Plaintiff*