Exhibit C

# EXHIBIT A

Allianz Global Corporate & Specialty®

# Insurance policy

**Commercial Lines Policy**



SILC000001

**Allianz ⑪**

Allianz Global Risks US Insurance Company
225 West Washington Street, Suite 1800, Chicago, IL 60606-3484

**THIS POLICY CONSISTS OF:**
- **DECLARATIONS**
- **ONE OR MORE COVERAGE PARTS.**

**A COVERAGE PART CONSISTS OF:**
- **ONE OR MORE COVERAGE FORMS**
- **APPLICABLE FORMS AND ENDORSEMENTS**

**In Witness Whereof**, we have caused this policy to be executed and attested, and if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Secretary                              President and Chief Executive Officer

*Julie A. Gann*                        *William Scaldafer*

**AGR-DS 1003 (08-16)**                                              **Page 1 of 1**

SILC000002

# Allianz Global Risks US Insurance Company

(Hereinafter called the Company)
225 W. Washington St., Suite 1800
Chicago, IL 60606

# Commercial Umbrella Liability Declarations

Policy NO.   ULA 2011124

**Item 1.**
**NAMED INSURED AND MAILING ADDRESS**

Chart Industries, Inc.

3055 Torrington Drive

Ball Ground, GA 30107

**Producer**

Aon Risk Services Central, Inc.
200 E Randolph St
Chicago, IL 60601

**Item 2.**   Policy Period  : From   January  01, 2018   To   January  01, 2019   At
12:01 A.M. Standard Time at the Address of the Named Insured shown above.

**Item 3.**   Limits of Insurance:
The Limits of Insurance, subject to all the terms of this policy, are:

A.   $   25,000,000   Each Occurrence

B.   $   25,000,000   General Aggregate (in accordance with Section III, Limits of Insurance.)

C.   $   25,000,000   Products Completed Operations Aggregate
(in accordance with Section III, Limits of Insurance.)

D.   $   25,000   Self Insured Retention

**Item 4.**   Premium Computation

| Estimated Exposure | Rate/ Per | Advance Premium | Minimum Premium |
|---|---|---|---|
| Not Applicable | FLAT | $760,000 | $760,000 |

**Item 5.**  Endorsements:  Forms and Endorsements applying to this coverage and made a part of this policy at time of issue.

Per Forms and Endorsement List

Countersigned by:

_____         _____
Authorized Representative                                    Date

AGR-CU 1001 (01-04)                         **INSURED**

SILC000003

# Allianz Global Risks US Insurance Company

**NAMED INSURED: POLICY NUMBER:**   Chart Industries, Inc.
ULA 2011124
1/1/2018

**The following policy forms and endorsements have been attached to and made a part of the policy at inception.**

| FORM NAME | FORM NUMBER | EDITION |
|---|---|---|
| Policyholder Notice - OFAC | AGR-IL 8003 (01-05) | 01/2005 |
| Commercial Umbrella Liability Policy | AGR-CU 2001 (07-11) | 07/2011 |
| Corrected Schedule of Underlying | AGR-CU 1501 | 02/2013 |
| Policyholder Notice - All States | AGR-IL 8001 (07-14) | 07/2014 |
| Exclusion - Intercompany Products Suits | AGR-CU 5003 (01-04) | 01/2004 |
| Exclusion - Directors and Officers Liability | AGR-CU 5005 (01-04) | 01/2004 |
| Exclusion - Professional Liability | AGR-CU 5010 (01-04) | 01/2004 |
| Exclusion -  Occupational Disease | AGR-CU 5018 (01-04) | 01/2004 |
| Exclusion - Fungi or Bacteria | AGR-CU 5031 (01-04) | 01/2004 |
| Exclusion - Lead | AGR-CU 5036 (01-04) | 01/2004 |
| Silica or Silica Related Dust Exclusion | AGR-CU 5038 (07-11) | 07/2011 |
| Schedule of Approved Crisis Management Firms | AGRL-CU 1601 (07-17)r | 07/2017 |
| Crisis Management Response Cost and Crisis Management Loss Cost Coverage Extension Endt. | AGRL-CU 2002 (01-13) | 01/2013 |
| Defense Expenses Within Limits - Follow Form | AGRL-CU 3003 (07-11) | 07/2011 |
| Employee Benefits Liability Following - Form Endorsement (C-M Version) | AGR-CU 4001 (07-11) | 07/2011 |
| Joint Venture Endorsement Named Insureds Interest Under Contract or Statute | AGRL-CU 4002 (07-11) | 07/2011 |
| Amendment Other Insurance Provision (primary and non-contributory if required by contract) | AGRL-CU 4003 (02-13) | 02/2013 |
| Named Peril and Time Element Pollution Endorsement | AGR-CU 4501 (07-11) | 07/2011 |
| Foreign Liability Limitation Endorsement (with Terrorism Exclusion Applicable to Specified Countries) | AGRL-CU 5003 (11-15) | 11/2015 |
| Punitive Damages - Most Favorable Jurisdiction Limitation Endorsement | AGRL-CU 5008 (07-11) | 07/2011 |
| Employers' Liability / Stop Gap Limitation Endorsement | AGRL-CU 5010 (07-11) | 07/2011 |
| Following Form - Incidental Medical Malpractice | AGRL-CU 5011 (07-11) | 07/2011 |
| Access or Disclosure of Confidential or Personal Information and Data-Related Liability (Self Insured Retention) | AGRL-CU 5026 (09-15) | 09/2015 |
| Amended Condition - Duties in the Event of Occurrence, Claim or Suit | AGRL-CU 8001 (07-11) | 07/2011 |
| Definition of Scheduled Underlying Insurance Amendment | AGRL-CU 8003 (07-11) | 07/2011 |
| Business Continuity Endorsement | AGRL-IL 5100 (02-16) | 02/2016 |
| Georgia Changes - Cancellation and Nonrenewal | AGRL-CU GA01 (02-15) | 02/2015 |

**AGR-DS 1002 (11-03)**

SILC000004

**Allianz Global Risks US Insurance Company**

**NAMED INSURED: POLICY NUMBER:**

Chart Industries, Inc.
ULA 2011124
1/1/2018

**The following policy forms and endorsements have been attached to and made a part   of the policy at inception.**

| FORM NAME | FORM NUMBER | EDITION |
|---|---|---|
| Amendatory Endorsement-Newly Acquired Organizations | AGR-IL M001 (11-03) | 11/2003 |
| Manuscript Endorsement- Hazardous Materials Exclusion | AGR-IL M001 (11-03) | 11/2003 |
| Manuscript endt-Real Estate Managers Exclusion | AGR-IL M001 (11-03) | 11/2003 |
| Forms and Endorsement List | AGR-DS 1002 | |

**AGR-DS 1002 (11-03)**

SILC000005



# POLICYHOLDER NOTICE - ALL STATES

Allianz Global Risks US Insurance Company
24 Hour Emergency Claims Service

**TO OBTAIN INFORMATION, FILE A CLAIM OR TO MAKE A COMPLAINT:**

You may call Allianz Global Risks US Insurance Company's toll free number at:

**Phone:**      **1 (800) 558 1606 [or 1 (314) 513 1353 from outside the United States]**
**Fax:**          **1 (888) 323 6450 [or 1 (314) 513 1345 from outside the United States]**

**To report a claim via e-mail:      NewLoss@agcs.allianz.com**

You may also write to:

Allianz Global Corporate & Specialty
Attn: FNOL Claims Unit
One Progress Point Parkway
3rd Floor
O'Fallon, MO 63368

**ATTACH THIS NOTICE TO YOUR POLICY:**
This notice is for information only and does not become a part or condition of the attached document.

SILC000006



# POLICYHOLDER NOTICE - OFAC

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- o   Foreign agents;
- o   Front organizations;
- o   Terrorists;
- o   Terrorist organizations; and
- o   Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

SILC000007



# COMMERCIAL UMBRELLA LIABILITY POLICY

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the "named insured" shown in the Declarations, and any other person or organization qualifying as a "named insured" under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **IV** – Definitions.

In consideration of the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

## SECTION I – COVERAGE

**A.** We will pay on behalf of the "insured" those sums in excess of the "Retained Limit" that the "insured" becomes legally obligated to pay as damages by reason of liability imposed by law or assumed by the "insured" under an "insured contract" because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies.

However:

**1.** The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

**2.** No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Section II **-** Defense.

**B.** This policy applies to "bodily injury" or "property damage" only if:

**1.** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place anywhere in the world;

**2.** The "bodily injury" or "property damage" occurs during the "policy period"; and

**3.** Prior to the "policy period", no "insured" listed under Paragraph 2. of the definition of "insured" and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed "insured" or authorized "employee" knew, prior to the "policy period", that the "bodily injury" or "property damage" occurred; then any continuation, change, or resumption of such "bodily injury" or "property damage" during or after the "policy period" will be deemed to have been known prior to the "policy period".

**C.** This policy applies to "personal injury" or "advertising injury" only if:

**1.** The "personal injury" or "advertising injury" is caused by an offense arising out of your business;  and

**2.** The "personal injury" or "advertising injury" is committed during the policy period and takes place anywhere in the world.

**D.** "Bodily injury" or "property damage" which occurs during the "policy period" and was not, prior to the "policy period", known to have occurred by any "insured" listed under Paragraph 2. of the definition of "insured" or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "policy period".

**E.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any "insured" listed under Paragraph 2. of the definition of "insured" or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:



1.   Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

2.   Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

3.   Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

F.   Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

G.   If we are prevented by law, or otherwise, from paying such sums on the "insured's" behalf, we will reimburse the "insured" for such sums that we would otherwise have been obligated to pay.


## SECTION II – DEFENSE

### A.   Duty to Defend

1.   We will have the right and duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies even if the "suit" is groundless, false or fraudulent:

a.   When all applicable limits of "scheduled underlying insurance" have been exhausted by payment of damages to which this insurance applies; or

b.   When damages sought for "bodily injury", "property damage", "personal injury" or "advertising injury" are covered by this policy but are not covered by any "scheduled underlying insurance".

2.   When we have the duty to defend, we will have the right to investigate the "occurrence" and settle any resultant claim or "suit".

3.   In the event of bankruptcy or insolvency of an insurer of the "scheduled underlying insurance", our defense obligations will apply as if such insurance were in full effect.

4.   If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

5.   Our duty to defend ends when we have used up the applicable Limits of Insurance in the payment of judgments or settlements.

6.   We will have no duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance does not apply.

7.   When we have no duty to defend we will have the right to participate in the defense of the "insured" against any "suit" seeking damages to which this insurance may apply.

8.   When we have no duty to defend the "insured" but elect to participate in the defense, we will pay our own expenses. However, we will not contribute to the payment of expenses of the "insured" or an insurer of "scheduled underlying insurance" nor contribute to **Supplementary Payments** items 1.b. through 1.g. below.

### B.   Supplementary Payments

1.   If we assume the defense of any "suit" against an "insured" that seeks damages covered by this policy, we will pay in addition to the applicable Limits of Insurance:

a.   All expenses we incur.

b.   The cost of bonds to release attachments, but only for bond amounts within the applicable Limits of Insurance.  We do not have to furnish these bonds.

c.   The cost of appeal bonds required by law to appeal a judgment in any "suit" we defend but only for bond amounts within the applicable Limits of Insurance.  We do not have to furnish these bonds.

d.   All reasonable expenses incurred by the "insured" at our request to assist us in the investigation or defense of the claim or "suit".



**e.** All costs taxed against the "insured" in the "suit".

**f.** Prejudgment interest awarded against the "insured" on that part of the judgment we pay. If we make an offer to pay the applicable Limits of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on our portion of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limits of Insurance.

These payments will not reduce the Limits of Insurance.

**2.** We will not contribute to the expenses of an insurer of "scheduled underlying insurance".

## SECTION III – LIMITS OF INSURANCE

**A.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**1.** "Insureds";

**2.** Claims made, "suits" brought, or number of vehicles involved;

**3.** Persons or organizations making claims or bringing "suits"; or

**4.** Coverages provided under this policy.

**B.** The General Aggregate Limit is the most we will pay for the sum of all damages to which this insurance applies except:

**1.** Damages because of "bodily injury" or "property damage":

**a.** Included in the "products-completed operations hazard"; or

**b.** Arising out of the ownership, maintenance or use of a "covered auto"; or

**2.** Damages covered by valid "scheduled underlying insurance" to which no aggregate limit of insurance applies; or

**3.** Damages that would have been covered with no aggregate limit of insurance by "scheduled underlying insurance" but for the exhaustion of applicable limits of insurance.

**C.** The Products-Completed Operations Aggregate Limit is the most we will pay for the sum of all damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**D.** Subject to **B.** or **C.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of all damages under this insurance because of all "bodily injury", "property damage", "personal injury" and "advertising injury" arising out of any one "occurrence".

**E.** The Aggregate Limits of this policy, as described in Paragraphs **B.** and **C.** above, apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the "policy period" shown in the Declarations, unless the "policy period" is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**F.** If the applicable limits of insurance of the "scheduled underlying insurance" are reduced or exhausted by payment of damages for "occurrences" to which this insurance applies, we will:

**1.** In the event of reduction, pay in excess of the reduced underlying limits of insurance; or

**2.** In the event of exhaustion, continue in force as the applicable policy of "scheduled underlying insurance", subject to the terms and conditions of this policy.

**G.** We will be liable only for that portion of damages in excess of the "Retained Limit".



**SECTION IV – DEFINITIONS**

**A.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    **1.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    **2.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**B.** "Advertising injury" means injury, other than "bodily injury" or "personal injury", arising solely out of your advertising activities as a result of one or more of the following offenses:

    **1.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **2.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **3.** The use of another's advertising idea in your "advertisement"; or

    **4.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**C.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.  But "auto" does not include "mobile equipment".

**D.** "Bodily injury" means bodily injury, sickness, disability or disease sustained by a person, including death resulting from any of these at any time.

"Bodily injury" includes humiliation, shock, mental anguish or other mental injury resulting from "bodily injury".

**E.** "Covered auto" means only those "autos" to which "scheduled underlying insurance" applies.

**F.** "Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devises or any other media which are used with electronically controlled equipment.

**G.** "Employee" means a person working for you for remuneration. "Employee" includes a Leased Worker, but "employee" does not include a Temporary Worker.

For the purposes of this insurance:

    **1.** A Leased Worker is a person, other than a Temporary Worker, leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business; and

    **2.** A Temporary Worker is a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**H.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**I.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    **1.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **2.** You have failed to fulfill the terms of a contract or agreement;

If such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work", or your fulfilling the terms of the contract or agreement.



**J.** "Insured" means:

   **1.** The "Named Insured";

   **2.** If you are:

      **a.** An individual, you and your spouse are "insureds", but only with respect to the conduct of a business of which you are the sole owner;

      **b.** A partnership or joint venture, you are an "insured". Your members, your partners,  and  their spouses are also "insureds", but only with respect to the conduct of your business;

      **c.** A limited liability company, you are an "insured". Your members are also "insureds", but only with respect to the conduct of your business. Your managers are "insureds", but only with respect to their duties as your managers;

      **d.** An organization other than a partnership, joint venture or limited liability company, you are an "insured". Your "executive officers" and directors are "insureds", but only with respect to their duties as your officers or directors. Your stockholders are also "insureds", but only with respect to their liability as stockholders;

      **e.** A trust, you are an "insured". Your trustees are also "insureds", but only with respect to their duties as trustees;

   **3.** Each of the following:

      **a.** Your "volunteer workers", but only while performing duties related to the conduct of your business; and

      **b.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business;

      However, none of these "volunteer workers" or "employees" are "insureds" for "bodily injury" or "personal injury":

        **(1)** To you, to your partners or members (if you are a partnership or joint venture) or to your members (if you are a limited liability company); or

        **(2)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (a) immediately preceding;

      **c.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager;

      **d.** Any person or organization having proper temporary custody of your property if you die, but only:

        **(1)** With respect to liability arising out of the maintenance or use of that property; and

        **(2)** Until your legal representative has been appointed;

      **e.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy;

   **4.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an "insured", but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability;

   **5.** Any person or organization, other than a "Named Insured", included as an additional insured in any "scheduled underlying insurance" however:

      **a.** Coverage provided by this insurance will not be broader than coverage provided to such person or organization by the "scheduled underlying insurance"; and



    **b.** If coverage is required by contract or agreement the most we will pay on behalf of the additional insured is the amount of insurance required by the contract less any amounts payable by any "scheduled underlying insurance", not to exceed the available limits afforded by Section III - Limits of Insurance.

**6.** Notwithstanding any of the above:

    **a.** No person or organization is an "insured" with respect to the conduct of any current, past or newly formed partnership, joint venture or limited liability company that is not designated as a "named insured" in Item 1 of the Declarations; and

    **b.** No person or organization is an "insured" under this policy who is not an Insured under applicable "Scheduled Underlying Insurance". This provision shall not apply to any organization set forth in the definition of "Named Insured" in Paragraph M. 3.

**K.** "Insured Contract" means that part of any contract or agreement under which you assume the tort liability of another party to pay for "bodily injury", "property damage", "personal injury" or "advertising injury" to a third person or organization, provided the contract or agreement:

**1.** Pertains to your business; and

**2.** Is executed prior to the "occurrence" causing the injury or damage.

Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

"Insured Contract" does not include any contract or statement:

**1.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**2.** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **a.** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    **b.** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**3.** Under which the "insured", if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the "insured's" rendering or failure to render professional services, including those shown in subparagraph 2. above or supervisory, inspection, architectural or engineering activities.

**L.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**2.** Vehicles maintained for use solely on or next to premises you own or rent;

**3.** Vehicles that travel on crawler treads;

**4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    **a.** Power cranes, shovels, loaders, diggers or drills; or

    **b.** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**5.** Vehicles not described in 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **b.** Cherry pickers and similar devices used to raise or lower workers;

SILC000013



6. Vehicles not described in 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**a.** Equipment designed primarily for:

**(1)** Snow removal;

**(2)** Road maintenance, but not construction or resurfacing; or

**(3)** Street Cleaning;

**b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**M.** "Named insured" means:

**1.** The first person or organization designated in Item **1.** of the Declarations (the "first named insured");

**2.** Any other person or organization designated in Item **1.** of the Declarations; and

**3.** Each of the following with respect to any person or organization designated in Item **1.** of the Declarations:

**a.** Any organization that is a subsidiary as of the effective date of this policy;

**b.** Any organization over which ownership or majority interest is maintained as of the effective date of this policy; and

**c.** Any organization that is newly acquired or formed during the policy period, other than a partnership, joint venture or limited liability company, and over which ownership or majority interest is maintained.

However:

**(1)** This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" that occurred before the organization was acquired or formed;

**(2)** The "first named insured" agrees to give us prompt notice that the organization has been acquired or formed; and

**(3)** We may charge an additional premium for insuring the organization.

You agree that any organization to which paragraph 3. above applies, will be required to be included as an "insured" under applicable "scheduled underlying insurance". If you fail to comply with this requirement, coverage under this policy will apply as though the organization was included as an "insured" under the highest applicable limit of "scheduled underlying insurance".

**N.** "Occurrence":

**1.** With respect to "bodily injury" and "property damage", "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general conditions shall be considered as arising out of one "occurrence".

**2.** With respect to "personal injury", "occurrence" means a covered offense that arises out of your business. All injury that arises from the same or related material or offense shall be considered as arising out of



one "occurrence", regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

3.  With respect to "advertising injury", "occurrence" means a covered offense committed in the course of advertising your goods, products or services. All injury that arises from the same or related material or offense shall be considered as arising out of one "occurrence", regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

O.  "Other insurance" means a valid and collectible policy of insurance providing coverage for damages covered in whole or in part by this policy.

However, "other insurance" does not include "scheduled underlying insurance" or any policy of insurance specifically purchased to be excess of this policy affording coverage this policy also affords.

P.  "Personal injury" means injury, other than "advertising injury" or "bodily injury", arising out of one or more of the following offenses:

1.  False arrest, detention or imprisonment;

2.  Malicious prosecution;

3.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5.  Oral or written publication, in any manner, of material that violates a person's right of privacy.

Q.  "Policy period" means the period of time from the inception date of this policy shown in the Declarations and the expiration date shown in the Declarations or the effective date of termination of this policy.

R.  "Products-completed operations hazard":

1.  Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    a.  Products that are still in your physical possession; or

    b.  Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        (1)  When all of the work called for in your contract has been completed.

        (2)  When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        (3)  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

             Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

2.  Does not include "bodily injury" or "property damage" arising out of:

    a.  The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the loading or unloading of that vehicle by any "insured"; or

    b.  The existence of tools, uninstalled equipment or abandoned or unused materials.

S.  "Property damage" means:

1.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

SILC000015



For the purposes of this insurance, "Electronic Data" is not tangible property.

**T.**   "Retained limit" means:

    **1.**   The total applicable limits of "scheduled underlying insurance" and any applicable "Other Insurance" providing coverage to the "Insured"; or

    **2.**   The dollar amount listed in the Declarations as Self Insured Retention, which applies separately to each "occurrence" that results in damages not covered by any "scheduled underlying insurance".

**U.**   "Scheduled underlying insurance" means an insurance policy or self insured retentions listed in the Schedule of Underlying Insurance forming a part of this policy, including any renewals or replacements thereof.

**V.**   "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged.  "Suit" includes:

    **1.**   An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

    **2.**   Any other alternative dispute resolution proceedings in which such damages are claimed and to which the "insured" submits with our consent.

**W.**   "Volunteer worker" means a person who:

    **1.**   Is not your "employee";

    **2.**   Donates his or her work;

    **3.**   Acts at the direction of and within the scope of duties determined by you; and

    **4.**   Is not paid a fee, salary or other compensation by you or anyone else for his or her work performed for you.

**X.**   "Your product":

    **1.**   Means:

        **a.**   Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(1)**   You;

            **(2)**   Others trading under your name; or

            **(3)**   A person or organization whose business or assets you have acquired; and

        **b.**   Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **2.**   Includes:

        **a.**   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        **b.**   The providing of or failure to provide warnings or instructions.

    **3.**   Does not include vending machines or other property rented to or located for the use of others but not sold.

**Y.**   "Your work":

    **1.**   Means:

        **a.**   Work or operations performed by you or on your behalf; and

        **b.**   Materials, parts or equipment furnished in connection with such work or operations.

    **2.**   Includes:

        **a.**   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

SILC000016



**b.** The providing of or failure to provide warnings or instructions.

## SECTION V – EXCLUSIONS

This insurance does not apply to:

**A. Workers' Compensation and Similar Laws**

**1.** Any obligation of the "insured" under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**B. E.R.I.S.A.**

**1.** Any obligation of the "insured" under the Employees' Retirement Income Security Act (E.R.I.S.A.), and any amendments thereto or any similar law.

**C. Auto Coverages**

**1.** "Bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" that is not a "covered auto"; or

**2.** Any loss, cost or expense payable under or resulting from any first party physical damage coverage; no-fault law; personal injury protection or auto medical payments coverage; uninsured or underinsured motorist law; or any similar law.

**D. Damage to Property**

"Property damage" to:

**1.** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of  such property for any reason, including prevention of injury to a person or damage to another's property;

**2.** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**3.** Property loaned to you;

**4.** Personal property in the care, custody or control of the "insured";

**5.** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**6.** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs 1., 3. and 4. of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer days.

Paragraph 2. of this exclusion does not apply if the premises are "your work" and were never occupied or rented or held for rental by you.

Paragraphs 3., 4., 5. and 6. of this exclusion do not apply to liability assumed under a side-track agreement.

Paragraph 6. of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**E. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**1.** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**2.** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.



This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**F.  Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**G.  Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**H.  Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**1.**  "Your product";

**2.**  "Your work"; or

**3.**  "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**I.  Liability of Employees and Volunteer Workers**

Liability of:

**1.**  Any of your "employees" with respect to "bodily injury" or "personal injury" to:

  **a.**  A co-"employee" while in the course of his or her employment; or

  **b.**  A co-"employee" or any of your "volunteer workers" while performing duties related to the conduct of your business;

**2.**  Any of your "volunteer workers" with respect to "bodily injury" or "personal injury" to:

  **a.**  Any of your "employees" while in the course of his or her employment; or

  **b.**  Any of your "employees" or other "volunteer workers" while performing duties related to the conduct of your business.

This exclusion applies to:

**1.**  "Bodily injury" or "personal injury" to the spouse, child, parent, brother or sister of that "employee" or "volunteer worker" as a consequence of Paragraphs **I.**1. or **I.**2.above; and

**2.**  Any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to the extent that valid "scheduled underlying insurance" for the employee and volunteer workers liability risks described above exists or would have existed but for the exhaustion of applicable limits of insurance.

**J.  Aircraft or Watercraft**

**1.**  "Bodily injury" or property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented to or loaned to any "insured". Use of an aircraft or watercraft includes operation and loading or unloading.

This exclusion applies even if the claims against any "insured" allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that "insured", if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance use of



entrustment to others of any watercraft or any aircraft that is owned or operated by or rented to or loaned to any "insured".

**2.** This exclusion does not apply to "bodily injury" or "property damage" arising from:

**a.** An aircraft that you do not own that is chartered by, loaned to, or hired by you with a crew; or

**b.** A  watercraft while ashore on premises you own or rent; or

**c.** A watercraft you do not own that is less than 26 feet long and not being used to carry persons or property for a charge; or

**d.** Other aircraft or watercraft owned by, operated by, maintained by, used by, rented to, loaned to or otherwise entrusted to any "insured" to the extent that valid "scheduled underlying insurance" for such risks exists or would have existed but for the exhaustion of applicable limits of insurance.

**K. Electronic Chatrooms, Bulletin Boards or Electronic Data**

**1.** "Personal Injury" or "advertising injury" arising out of an electronic chatroom or bulletin board  the "insured" hosts, owns or over which the "insured" exercises control.

**2.** Damages arising out of the loss of use of, damage to, corruption of, inability to access or inability to manipulate "electronic data".

**L. Insureds in Media and Internet Type Businesses**

"Personal injury" or "advertising injury" committed by an "insured" whose business is:

**1.** Advertising, broadcasting, publishing or telecasting;

**2.** Designing or determining content of web-sites for others; or

**3.** An Internet search, access, content or service provider.

This exclusion does not apply to Paragraphs 1., 2. and 3. of the definition of "personal injury".

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**M. Personal Injury and Advertising Injury Exclusions**

"Personal Injury or "Advertising injury":

**1.** Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement"; or

**2.** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement"; or

**3.** Arising out of the wrong description of the price of goods, products or services stated in your "advertisement"; or

**4.** Caused by or at the direction of the "insured with the knowledge that the act would violate the rights or another and would inflict "personal injury" or "advertising injury"; or

**5.** Arising out of oral or written publication of material, if done by or at the direction of the "insured" with knowledge or its falsity; or

**6.** Arising out of the oral or written publication of material whose first publication took place before the beginning of the "policy period"; or

**7.** Arising out of a criminal act committed by or at the direction of the "insured".

**N. Pollution**

**1.** "Bodily injury", "property damage" or "personal injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of Pollutants at any time anywhere in the world.

SILC000019



2. Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of Pollutants; or

3. Any loss, cost or expense arising out of any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, Pollutants.

This exclusion does not apply to "bodily injury", "property damage" or "personal injury":

1. Arising out of heat, smoke or fumes from a Hostile Fire;

2. Arising out of the upset, overturn or collision of "mobile equipment" or a "covered auto"; or

3. Included in the "products-completed operations hazard"

to the extent that valid "scheduled underlying insurance" for the pollution liability risks described above exists or would have existed but for the exhaustion of applicable limits of insurance.

As used in this exclusion:

1. A Hostile Fire means one which becomes uncontrollable or breaks out from where it was intended to be; and

2. Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and Waste. Waste includes materials to  be  recycled, reconditioned or reclaimed.

## O. War

"Bodily injury", "property damage", "personal injury" or "advertising injury", however caused, arising, directly or indirectly, out of:

1. War, including undeclared or civil war; or

2. Warlike action by a military force, including action in hindering or defending against an actual  or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## P. Expected or Intended Injury or Damage

"Bodily injury" or "property damage" expected or intended from the standpoint of the  "insured".  This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

## Q. Asbestos

1. "Bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

2. Any obligation of the "insured" to indemnify any party because of damages arising out of such "bodily injury", "property damage", "personal injury" or "advertising injury" as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

3. Any obligation to defend any "suit" or claim against the "insured" alleging "bodily injury", "property damage", "personal injury" or "advertising injury" and seeking damages, if such "suit" or claim arises from "bodily injury", "property damage", "personal injury" or "advertising injury" as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

## R. Employment-Related Practices

"Bodily injury" or "personal injury" to:



1. A person arising out of any:

   a. Refusal to employ that person;

   b. Termination of that person's employment; or

   c. Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

2. The spouse, child, parent, brother or sister of that person as a consequence of injury to that person at whom any of the employment-related practices described in Paragraphs a., b., or c. above is directed.

This exclusion applies whether the "insured" may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.


**S. Securities and Financial Instruments**

"Bodily injury", "property damage", "personal injury" or "advertising injury" arising out of or by reason of:

1. The purchase, sale, offer of sale, or solicitation of any security, debt, insurance policy, bank deposit or financial interest or instrument;

2. Any representations made at any time in relation to the price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument; or

3. Any depreciation or decline in price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument.

**T. Liquor Liability**

"Bodily injury" or "property damage" for which any "insured" may be held liable by reason of:

1. Causing or contributing to the intoxication of any person;

2. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3. Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion does not apply to the extent that valid "scheduled underlying insurance" for the liquor liability risks described above exists or would have existed but for the exhaustion of applicable limits of insurance.

**U. Aircraft Products and Grounding**

"Bodily injury" or "property damage" arising out of Aircraft Products or Grounding.

As used in this exclusion:

1. Aircraft Products means any aircraft (including missiles, spacecraft, satellites and any ground control or support equipment intended for use in connection therewith) and any other goods, products or services specifically intended for use in the manufacture, repair, service, operation or maintenance of any aircraft; and

2. Grounding means the withdrawal of any aircraft from service or the imposition of any restrictions on the use of any aircraft arising out of Aircraft Products.

**V. Nuclear Energy Liability**

1. "Bodily injury" or "property damage":

   a. With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or



b.  Resulting from the Hazardous Properties of Nuclear Material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2.  "Bodily injury" or "property damage" resulting from Hazardous Properties of Nuclear Material, if:

a.  The Nuclear Material (1) is at any Nuclear Facility owned by, or operated by or on behalf of, an "insured" or (2) has been discharged or dispersed therefrom;

b.  The Nuclear Material is contained in Spent Fuel or Waste at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

c.  The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any Nuclear Facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion (c) applies only to "property damage" to such Nuclear Facility and any property thereat.

3.  As used in this exclusion:

a.  Hazardous Properties includes radioactive, toxic or explosive properties.

b.  Nuclear Material means Source Material, Special Nuclear Material or By-Product Material.

c.  Source Material, Special Nuclear Material, and By-Product Material have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

d.  Spent Fuel means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a Nuclear Reactor.

e.  Waste means any waste material (1) containing By-Product Material other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its Source Material content, and (2) resulting from the operation by any person or organization of any Nuclear Facility included under the first two paragraphs of the definition of Nuclear Facility.

f.  Nuclear Facility means:

(1)  Any Nuclear Reactor;

(2)  Any equipment or device designed or used for (a) separating the isotopes of uranium or plutonium, (b) processing or utilizing Spent Fuel, or (c) handling, processing or packaging Waste;

(3)  Any equipment or device used for the processing, fabricating or alloying of Special Nuclear Material if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(4)  Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of Waste;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

g.  Nuclear Reactor means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

h.  "Property damage" includes all forms of radioactive contamination of property.

**W.  Contractual Liability**

1.  "Bodily injury" or "property damage" for which the "insured" is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:



    **a.** That the "insured" would have in the absence of the contract or agreement; or

    **b.** Assumed in a contract that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than the "insured" are deemed to be damages because of "bodily injury" or "property damage" and included within the Limits of Insurance of this policy, provided:

        **(1)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

        **(2)** Such attorney fees and litigation expenses are for the defense of that party against a civil proceeding or an alternative dispute resolution proceeding alleging damages to which this policy applies.

**2.** "Personal injury" or "advertising injury" for which the "insured" has assumed liability in a contract or agreement.  This exclusion does not apply for damages:

    **a.** That the "insured" would have in the absence of the contract or agreement; or

    **b.** Assumed in a contract or agreement that is an "insured contract", provided the "personal injury" and/or "advertising injury" tales place subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than the "insured" are deemed to be damages because of "bodily injury" or "property damage" and included within the Limits of Insurance of this policy, provided:

        **(1)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

        **(2)** Such attorney fees and litigation expenses are for the defense of that party against a civil proceeding or an alternative dispute resolution proceeding alleging damages to which this policy applies.

**X.  Violation of Statutes Governing Communications or Information**

"Bodily injury", "property damage", "personal injury" or "advertising injury" arising out of any action  or omission that violates any statute, ordinance or regulation or any federal, state, province, or local or other governmental body, including any amendments or additions to such laws, that prohibits or limits the sending, disposal, collecting, recording, transmitting, communicating or distribution of material or information.

**Y.  Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal injury" or "advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**Z.  Unauthorized Use of Another's Name or Product**

"Personal Injury" or "advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**SECTION VI - CONDITIONS**

**A.  Appeals**

    1. If the "insured" or the "insured's" insurer elects not to appeal a judgment in excess of the Retained Limit, as defined in Section IV – Definitions, we may do so at our own expense. We will be liable for taxable costs, pre-judgment and postjudgment interest and disbursements.

**B.  Bankruptcy**

    **1.  Bankruptcy or Insolvency of Insured**



Bankruptcy or insolvency of the "insured" or of the "insured's" estate will not relieve us of our obligations under this policy.

**2. Bankruptcy or Insolvency of Insurers**

Bankruptcy or insolvency of any insurer will not relieve us of our obligations under this policy.

However, this insurance will not replace any "scheduled underlying insurance" in the event of bankruptcy or insolvency of the insurer. This insurance will apply as if the "scheduled underlying insurance" were in full effect.

**C. Cancellation**

1. The "first named insured" may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the "first named insured" written notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **b.** 90 days before the effective date of cancellation if we cancel for any other reason.

   If this policy is in effect for more than 60 days our reasons for cancellation, other than cancellation for nonpayment of premium, will be limited to those reasons permitted by the laws or statutes of the jurisdiction governing the cancellation of this policy.

3. We will mail or deliver our notice to the "first named insured's" mailing address shown in Item 1 of the Declarations.  If notice is mailed, proof of mailing will be sufficient proof of notice.

4. Notice of cancellation will state the effective date and time of cancellation.  The "policy period" will end on that date and time.

5. If this policy is cancelled, we will send the "first named insured" any premium refund due. If we cancel, the refund will be pro rata.  If the "first named insured" cancels, the refund may be less than pro rata.

6. Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund due. Our check or our representative's check, mailed and delivered, will be sufficient tender of any refund due you.

7. This condition is amended, where necessary, to comply with the applicable state law regarding Cancellation.

**D. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The "first named insured" is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**E. Duties in the Event of Occurrence, Claim or Suit**

1. You must see to it that we are notified as soon as practicable of an "occurrence", regardless of the amount, which may result in a claim under this policy.  To the extent possible, notice should include:

   **a.** How, when and where the "occurrence" took place;

   **b.** The names and addresses of any injured persons and witnesses; and

   **c.** The nature and location of any injury or damage arising out of the "occurrence".

2. If a claim is made or "suit" is brought against any "insured" that is reasonably likely to involve this policy, you must:

   **a.** Record the specifics of the claim or "suit" and the date received; and

   **b.** See to it that we receive written notice of the claim or "suit" as soon as practicable, including other materials and information in your possession pertinent and relevant to the claim or "suit".

3. You and any other involved "insured" must:



    **a.**  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    **b.**  Authorize us to obtain records and other information;

    **c.**  Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    **d.**  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this insurance may also apply.

4.  No "insured" will, except at that "insured's" own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**F.  Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this policy at any time during the "policy period" and up to three years afterward.

**G.  Headings**

The descriptions in the headings of this policy are solely for convenience and form no part of the terms and conditions of insurance.

**H.  Inspections and Surveys**

1.  We have the right to:

    **a.**  Make inspections and surveys at any time;

    **b.**  Give you reports on the conditions we find; and

    **c.**  Recommend changes.

2.  We are not obligated to make any inspections, surveys, reports or recommendations, and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public.  And we do not warrant that conditions:

    **a.**  Are safe or healthful; or

    **b.**  Comply with laws, regulations, codes or standards.

3.  Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**I.  Legal Action Against Us**

No person or organization has a right under this policy:

1.  To join us as a party or otherwise bring us into a "suit" asking for damages from an "insured"; or

2.  To sue us on this policy unless all of its terms have been fully complied with.

**J.  Loss Payable**

1.  Liability under this policy shall not apply unless and until the "insured" or the "insured's" insurer has become obligated to pay the "Retained Limit", as defined in Section IV – Definitions.

2.  When the amount of damages has been finally determined, we will promptly pay the amount of damages falling within the terms of this policy.

3.  We may pay all or part of the dollar amount listed in the Declarations as Self Insured Retention to effect settlement of any claim or "suit". Upon notification of the action taken, you shall promptly reimburse us for such payment.

**K.  Maintenance of Underlying Insurance**

1.  During the period of this policy, you agree that:

SILC000025



    **a.**  The "scheduled underlying insurance" will be maintained in full effect except for any renewal or replacement policies that provide equivalent coverage;

    **b.**  The terms and conditions of the "scheduled underlying insurance" will not materially change; and

    **c.**  The limits of insurance of the "scheduled underlying insurance" will not change except for any reduction or exhaustion of aggregate limits due to payments for "occurrences" to which this insurance applies.

    Failure to comply with these requirements will not invalidate this insurance. However, this insurance will apply to the same extent it would have applied had there been full compliance with these requirements.

2.  You agree to notify us as soon as practicable when:

    **a.**  Any insurance policy listed in the Schedule of Underlying Insurance is no longer in effect; or

    **b.**  The terms of any such policy change.

**L.  Other Insurance**

If valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply as excess of the "other insurance" and will not contribute with the "other insurance". However, this provision will not apply if the "other insurance" is specifically written to be excess of this policy.

**M.  Premiums and Audit**

1.  The "first named insured":

    **a.**  Is responsible for the payment of all premiums; and

    **b.**  Will be the payee for any return premiums we pay.

2.  We will compute all premiums for this policy in accordance with our rules and rates.

3.  Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the "first named insured". The due date for audit premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the "first named insured", subject to any applicable minimum premium.

4.  The "first named insured" must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**N.  Representations or Fraud**

By accepting this policy, you agree:

1.  The statements in the Declarations are accurate and complete;

2.  Those statements are based upon representations you made to us;

3.  We have issued this policy in reliance upon your representations; and

4.  This policy is void in any case of fraud by you as it relates to this policy or any claim under this policy.

**O.  Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the "first named insured", this insurance applies:

1.  As if each "named insured" were the only "named insured"; and

2.  Separately to each "insured" against whom claim is made or "suit" is brought.

**P.  Transfer of Rights of Recovery Against Others to Us**

SILC000026



1. If the "insured" has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The "insured" must do nothing after loss to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

2. Any amount recovered will be apportioned in the inverse order of payment of "loss" to the extent of actual payment. The expenses of all such recovery proceedings will be apportioned in the ratio of respective recoveries.

3. If prior to the time of an "occurrence", you waive any right of recovery against a specific person or organization for injury or damage as required under an "insured contract", we will also waive any rights we may have against such person or organization.

**Q. Transfer of Your Rights and Duties Under This policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual "named insured".

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**R. Unintentional Failure to Disclose**

If you unintentionally fail to disclose all hazards existing at the inception date of this policy, we will not deny coverage because of such failure. However, this does not affect our right to collect additional premium or to exercise our right of cancellation or non-renewal.

**S. Violation of Economic or Trade Sanctions**

If coverage for a claim or "suit" under this policy is in violation of any United States of America economic or trade sanctions, including but not limited to sanctions administered and enforced by the United States Treasury Department's Office of Foreign Assets Control (OFAC), then coverage for that claim or "suit" will be null and void.

**T. When We Do Not Renew**

If we decide not to renew this policy, we will mail or deliver to the "first named insured" written notice of the nonrenewal not less than 60 days before the expiration date. If notice is mailed, proof of mailing will be sufficient proof of notice.

This condition is amended, where necessary, to comply with the applicable state law regarding nonrenewal.



# SCHEDULE OF UNDERLYING INSURANCE

It is agreed that this policy is excess over all insurance policies or self insured retentions, including and any renewal or replacements thereof, as scheduled below.

| Insurer, Policy Number, Policy Period | Coverages | Limits |
|---|---|---|
| Co: Navigators Specialty Insurance Company<br>Policy #: IS17CGL121117IC<br>Policy Period: 01/01/2018 to 01/01/2019 | Commercial General Liability including Products-Completed Operations | Each Occurrence Limit<br>$1,000,000<br>Personal and Advertising Injury Limit<br>$1,000,000<br>General Aggregate Limit<br>$2,000,000<br>Products-Completed Operations Aggregate Limit<br>$2,000,000 |
| | Self Insured Retention for Oxygen Concentrators | $250,000 Each Occurrence Allocated Loss Expense is included in the Retention |
| | Self Insured Retention LAX Contract | $50,000 Each Occurrence Allocated Loss Expense is included within the retention |
| | Self Insured Retention All Other Claims | $150,000 Each Occurrence Allocated Loss Expense is included within the Retention |
| | Employee Benefits Liability Retroactive Date 12/01/2011 | Each Employee<br>$1,000,000<br>Aggregate<br>$1,000,0000 |
| Co: Lloyd's of London<br>Policy #: B0595XR5514018<br>Policy Period: 01/01/2018 to 01/01/2019 | Commercial General Liability | Each Occurrence Limit<br>$1,000,000<br>General Aggregate Limit<br>$2,000,000<br>$2,000,000 Products/Completed Operations Aggregate Limit<br>Excess of the Navigators Specialty Insurance Company policy |
| Co: New Hampshire Insurance Company<br>Policy #: WC 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<br>Policy Period: 01/01/2018 to 01/01/2019 | Employers Liability – CA | Coverage B – Employers' Liability<br>Bodily Injury By Accident<br>$1,000,000      Each Accident<br>Bodily Injury By Disease<br>$1,000,000      Each Employee<br>$1,000,000      Policy Limit |
| Co: New Hampshire Insurance Company<br>Policy #: WC  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<br>Policy Period: 01/01/2018 to 01/01/2019 | Employers Liability – MA, WI | Coverage B – Employers' Liability<br>Bodily Injury By Accident<br>$1,000,000      Each Accident<br>Bodily Injury By Disease<br>$1,000,000      Each Employee<br>$1,000,000      Policy Limit |

SILC000028


**Allianz** ⑪
Global Risks

| Insurer, Policy Number, Policy Period | Coverages | Limits |
|---|---|---|
| Co: New Hampshire Insurance Company<br>Policy #: WC 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<br>Policy Period: 01/01/2018 to 01/01/2019 | Employers Liability - FL | Coverage B – Employers' Liability<br>Bodily Injury By Accident<br>$1,000,000      Each Accident<br>Bodily Injury By Disease<br>$1,000,000      Each Employee<br>$1,000,000      Policy Limit |
| Co: New Hampshire Insurance Company<br>Policy #: WC 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<br>Policy Period: 01/01/2018 to 01/01/2019 | Employers Liability – AZ, CO, GA, IL, KS, LA, MN, MO, MT, NC, NH NJ, NV, NY, OK, SC, TX | Coverage B – Employers' Liability<br>Bodily Injury By Accident<br>$1,000,000      Each Accident<br>Bodily Injury By Disease<br>$1,000,000      Each Employee<br>$1,000,000      Policy Limit |
| Co: National Union Fire Insurance Company of Pittsburgh, PA<br>Policy #:CA 282-03-27<br>Policy Period: 01/01/2018 to 01/01/2019 | Commercial Automobile Liability- CA, GA, LA, MN, NY, TX, OK | Bodily Injury or Property Damage Liability<br>Combined Single Limit<br>$1,000,000 |
| Co: National Union Fire Insurance Company of Pittsburgh, PA<br>Policy #:  CA 282-03-26<br>Policy Period: 12/01/2017 to 01/01/2019 | Commercial Automobile Liability – MA | Bodily Injury or Property Damage Liability<br>Combined Single Limit<br>$1,000,000 |
| Co: Great Northern Insurance Company<br>Policy #: 3584-30-68 BOS<br>Policy Period: 01/01/2018 to 01/01/2019 | Commercial General Liability including Products-Completed Operations – Foreign<br><br>Employee Benefits Liability | Each Occurrence Limit<br>$1,000,000<br>Personal and Advertising Injury Limit<br>$1,000,000<br>General Aggregate Limit<br>$2,000,000<br>Products-Completed Operations Aggregate Limit<br>$2,000,000<br><br>Each Employee<br>$1,000,000<br>Aggregate<br>$1,000,0000<br>Retroactive Date 12/01/2011 |
| Co: Great Northern Insurance Company<br>Policy #: 3584-30-68-BOS<br>Policy Period: 01/01/2018 to 01/01/2019 | Commercial Automobile Liability - Foreign | Bodily Injury or Property Damage Liability<br>Combined Single Limit<br>$1,000,000 |
| Co: Great Northern Insurance Company<br>Policy #: 3584 – 30-68 BOS<br>Policy Period: 01/01/2018 to 01/01/2019 | Employers' Liability - Foreign | Coverage B – Employers' Liability<br>Bodily Injury By Accident<br>$1,000,000          Each Accident<br>Bodily Injury By Disease<br>$1,000,000          Each Employee<br>$1,000,000          Policy Limit |
| Co: Great Northern Insurance Company<br>Policy #: 3584-30-68 BOS<br>Policy Period: 01/01/2018 to 01/01/2019 | Employers' Liability - UK | GBP 10,000,000 Each Occurrence |

**AGR-CU 1501 (02-13)**                                                        **Page 2 of 2**

SILC000029



**Policy Number:** ULA 2011124
**Effective Date:** January 01, 2018

## SCHEDULE OF APPROVED CRISIS MANAGEMENT FIRMS

**THIS SCHEDULE FORMS A PART OF ENDORSEMENT AGRL-CU 2002 CRISIS MANAGEMENT RESPONSE COST AND CRISIS MANAGEMENT LOSS COVERAGE EXTENSION ENDORSEMENT ATTACHED TO THIS POLICY.**

**Approved Crisis Management Firm(s):**

**HILL & KNOWLTON STRATEGIES**

**24 Hour North America Crisis Help Line – 1 (212) 885 0306**

| | |
|---|---|
| **US LEAD \*\***<br>Kevin Elliott, SVP<br>60 Green Street<br>San Francisco, CA 94111<br>Direct:  415.281.7150<br>Mobile: 415.307.1252<br>Kevin.Elliott@hkstrategies.com | **WESTERN US**<br>Larry Krutchik, SVP<br>6300 Wilshire Boulevard, 10th Floor<br>Los Angeles, CA 90048<br>Direct:  310.633.9428<br>Mobile:  818.406.6068<br>Larry.Krutchik@hkstrategies.com |
| **EASTERN US**<br>Nancy Fitzsimmons, SVP<br>466 Lexington Avenue, 4th Floor<br>New York, New York 10017<br>Direct:  212.885.0356<br>Mobile: 908.433.6161<br>Nancy.Fitzsimons@hkstrategies.com | **CENTRAL US**<br>Michelle McKenna, VP<br>500 W. 5th Street, Suite 1000<br>Austin, Texas 78701<br>Direct: 202.427.6042<br>Mobile: 202.427.6042<br>Michelle.McKenna@hkstrategies.com |
| **CANADA LEAD \*\***<br>Jane Shapiro, SVP<br>160 Bloor Street East, Suite 800<br>Toronto, Ontario M4W 3P7, Canada<br>Direct: 416.413.4770<br>Mobile: 416.457.1429<br>Jane.Shapiro@hkstrategies.com | **CANADA**<br>Sarah Andrewes, VP<br>160 Bloor Street East, Suite 800<br>Toronto, Ontario M4W 3P7, Canada<br>Direct: 416.413.4605<br>Mobile: 416.209.1507<br>Sarah.Andrewes@hkstrategies.com |
| **CANADA**<br>Jason MacDonald, VP<br>55 Metcalfe Street, Suite 1100<br>Ottawa, Ontario K1P 6L5, Canada<br>Direct: 613.786.9943<br>Mobile: 613.786.9943<br>Jason.MacDonald@hkstrategies.com | **CANADA**<br>Joy Jennisson, Chief Client Officer (CCO)<br>1350-355 Burrard Street<br>Vancouver, British Columbia V6C 2G8, Canada<br>Direct: 604.692.4224<br>Mobile: 604.787.4144<br>Joy.Jennisson@hkstrategies.com |

***\*\* Kevin R. Elliott and Jane Shapiro should be the first contact in the United States and Canada, respectively.***

**Approved Crisis Management Firm(s)** shall also include a firm other than one shown above, provided you notify us of your intent to hire such firm and we approve. Approval shall be deemed granted if we do not notify you of our disapproval within 3 business days of receiving the notice of your intent.

SILC000030



## EXCLUSION - INTERCOMPANY PRODUCTS SUITS

This insurance does not apply to any claim for damages by any "named insured" against another "named insured" because of "bodily injury" or "property damage" arising out of "your products" and included within the "products-completed operations hazard".

All other terms and conditions remain unchanged.

SILC000031



# EXCLUSION - DIRECTORS AND OFFICERS LIABILITY

This insurance does not apply to any liability arising out of any actual or alleged matter, misstatement, misleading statement, neglect, act, error, omission or breach of duty claimed against any director(s) or officer(s) of any "insured" by reason of their being director(s) or officer(s) while acting within their individual or collective capacities.

All other terms and conditions remain unchanged.

SILC000032



**EXCLUSION - PROFESSIONAL LIABILITY**

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the rendering or failure to render any professional services.

All other terms and conditions remain unchanged.

**AGR-CU 5010 (01-04)**                                                                                    **Page 1 of 1**

SILC000033



## EXCLUSION - OCCUPATIONAL DISEASE

This insurance does not apply to:

1. "Bodily injury" by disease to an "employee" of the "insured" arising out of and in the course of:

    **a.** Employment by the "insured"; or

    **b.** Performing duties related to the conduct of the "insured's" business; or

2. "Bodily injury" to the spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph 1. above.

This exclusion applies:

1. Whether the "insured" may be liable as an employer or in any other capacity; and

2. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

All other terms and conditions remain unchanged.

**AGR-CU 5018 (01-04)**                                                                            **Page 1 of 1**

SILC000034



# EXCLUSION – FUNGI OR BACTERIA

This insurance does not apply to:

1.  "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage;

2.  "Personal injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury; or

3.  Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

Paragraph 1. of this exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

For the purposes of this exclusion, "fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

All other terms and conditions remain unchanged.

SILC000035



# EXCLUSION - LEAD

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" or any other loss, cost or expense arising out of the presence, ingestion, inhalation or absorption of or exposure to lead in any form or products containing lead.

All other terms and conditions remain unchanged.

SILC000036

**Allianz** (Ⅲ)

**Policy Number:** **ULA 2011124**
**Effective Date:** **January 01, 2018**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY POLICY**

**A.** The following exclusion is added to the **Exclusions** Section:

This insurance does not apply to:

**Silica or Silica-Related Dust**

a. "Bodily injury", "property damage", "personal injury", or "advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

b. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following definitions are added to the **Definitions** Section:

1. "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

2. "Silica-related dust" means a mixture or combination of silica and other dust or particles.

All other terms and conditions remain unchanged.

**AGR-CU 5038 (07-11)**                                                              **Page 1 of 1**



**Policy Number:**     **ULA 2011124**
**Effective Date:**     **January 01, 2018**

## EMPLOYEE BENEFITS LIABILITY FOLLOWING FORM ENDORSEMENT

### (CLAIMS MADE)

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY POLICY**

**THIS ENDORSEMENT PROVIDES CLAIMS MADE COVERAGE**

**PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY**

**A.**   The following exclusion is added to Section **V – EXCLUSIONS**:

**EMPLOYEE BENEFITS LIABILITY**

This insurance does not apply to any damages that the insured becomes legally obligated to pay by reason of any negligent act, error or omission of the "insured" or of any other person for whom the "insured" is legally liable that is committed in the "administration" of your "Employee Benefit Program".

This exclusion does not apply to the extent that valid "scheduled underlying insurance" for the employee benefits liability risks described above exists or would have existed but for the exhaustion of applicable limits of insurance.

However:

1.   Employee Benefits Liability coverage provided by this insurance will not be broader than coverage provided by the "scheduled underlying insurance"; and

2.   This insurance applies to damages only if:

    a.   The act, error or omission did not take place before the Retroactive Date, if any, shown for Employee Benefits Liability Coverage in the "scheduled underlying insurance" nor after the end of our "policy period"; and

    b.   A claim for damages, because of an act, error or omission, is first made against any "insured" during our "policy period" or an Extended Reporting Period, if any, provided by the Employee Benefits Liability Coverage of the "scheduled underlying insurance".

        A claim seeking damages will be deemed to have been made at the times specified in the Employee Benefits Liability Coverage of the "scheduled underlying insurance".

3.   Coverage under this policy for such liability will follow the terms, definitions, conditions and exclusions of the "scheduled underlying insurance", subject to the limits of insurance, premium and all other terms definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by the "Scheduled Underlying Insurance".

B.   For the purposes of this endorsement:

    1. "Administration" means the following to the extent authorized by you:

        a.   Providing information to employees, including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

        b.   Handling records in connection with the "employee benefit program"; or

        c.   Effecting, continuing or terminating any employee's participation in any benefit included in the "employee benefit program".

    However, "administration" does not include handling payroll deductions.

SILC000038

**Allianz ⑪**
Global Risks

2.  "Employee benefit program" means Group Life Insurance, Group Accident or Health Insurance, Pension Plans, Employee Stock Subscription Plans, Worker's Compensation, Unemployment Insurance, Social Security and Disability Benefits.

All other terms and conditions remain unchanged.

SILC000039



**Policy Number:**   ULA 2011124

**Effective Date:**   January 01, 2018

## NAMED PERIL AND TIME ELEMENT POLLUTION ENDORSEMENT

**1.  Amended Pollution Exclusion**

Exclusion **N. Pollution** is replaced by the following:

This insurance does not apply to:

**N.  Pollution**

1.  "Bodily injury", "property damage" or "personal injury" arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" anywhere in the world;

2.  Any loss, cost or expense arising out of any governmental direction or request that we, the "insured" or any other person or organization test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or assess the effects of "pollutants"; or

3.  Any loss, cost, or expense, including but not limited to costs of investigation or attorneys' fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize "pollutants".

As used in this exclusion, "pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

**2.  Exceptions to the Pollution Exclusion**

Exclusion **N. Pollution** does not apply to "bodily injury", "property damage" or "personal injury" arising out of:

a.  Any discharge, dispersal, seepage, migration, release or escape directly or indirectly caused by fire, explosion, lightning, windstorm, vandalism or malicious mischief, riot and civil commotion, flood, earthquake, automatic sprinkler leakage or the collision or upset of a motor vehicle, railcar, an aircraft, or mobile equipment;

b.  The "products-completed operations hazard"; or

c.  Any discharge, dispersal, seepage, migration, release or escape of "pollutants" that meets all of the following conditions:

(1)  It was accidental and neither expected nor intended by the "named insured". This condition would not serve to deny coverage for a specific incident where such discharge, dispersal, seepage, migration, release or escape of "pollutants" was a result of an attempt by the "insured" to mitigate or avoid a situation where substantial third party "bodily injury", "property damage" or "personal injury" could occur; and

(2)  It was demonstrable as having commenced on a specific date during the term of this policy; and

(3)  Its commencement became known to the "named insured" within  twenty (20) calendar days and was further reported to the Risk Management Department within a reasonable time frame; and

(4)  Its commencement was reported in writing to us within eighty (80) calendar days of becoming known to the Risk Management Department; and

SILC000040



(5) Reasonable effort was expended by the "named insured" to terminate the situation as soon as conditions permitted.

d.  However, nothing contained in this endorsement shall operate to provide any coverage with respect to:

(1) Any site or location principally used by the "insured", or by others on the "insured's" behalf, for the handling, storage, disposal, dumping, processing or treatment of waste material;

(2) Any fines or penalties;

(3) Any clean up costs ordered by the Superfund Program, or any federal, state or local governmental authority. However, this specific exclusion d.(3) shall not serve to deny coverage for third party clean up costs otherwise covered by this endorsement simply because of the involvement of a governmental authority;

(4) Acid rain;

(5) Clean up, removal, containment, treatment, detoxification or neutralization of "pollutants" situated on premises the "insured" owns, rents or occupies at the time of the actual discharge, dispersal, seepage, migration, release or escape of said "pollutants"; or

(6) Subparagraph 2.c. for any liability, damage, "loss" cost or expense arising from water pollution caused by oil or its derivatives.

## 3.  Amendment of Defense Obligation

For the purposes of the insurance provided by this endorsement:

a.  Paragraph **A.** 1. b. of Section **II – Defense** does not apply.

b.  We have no duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal injury" that are covered by this endorsement but are not covered by any "underlying insurance". However, we will have the right to participate in the defense of the "insured" against any "suit" seeking such damages.

## 4.  Amendment of Self-Insured Retention

For the purposes of the insurance provided by this endorsement, the Self Insured Retention shown in Item 3. D. of the Declarations is amended to $ 2,000,000.

All other terms and conditions remain unchanged.

SILC000041

**Allianz** ⑪

**Policy Number:**     **ULA 2011124**

**Effective Date:**     **January 01, 2018**

### CRISIS MANAGEMENT RESPONSE COST AND CRISIS MANAGEMENT LOSS

### COVERAGE EXTENSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

The following is added to **SECTION I – COVERAGE**:

**H. CRISIS MANAGEMENT RESPONSE COSTS AND CRISIS MANAGEMENT LOSS COVERAGE EXTENSION**

**SCHEDULE A - Crisis Management Limits of Insurance**

| | | |
|---|---|---|
| Coverage A – Crisis Management Response Costs Limit of Insurance | $250,000 Each Crisis Management Event | |
| | $250,000 | Aggregate |
| Coverage B – Crisis Management Loss Limit of Insurance | $50,000 Each Crisis Management Event | |
| | $50,000 | Aggregate |

**SCHEDULE B – Approved Crisis Management Firms**

| | |
|---|---|
| **Refer to AGRL-CU 1601 Schedule of Approved Crisis Management Firms attached.** | **Or contact** <br><br>**Allianz Global Risk Insurance Company** <br><br>**Liability Claims Dept.** <br><br>**225 W. Washington Street, Suite 1800** <br><br>**Chicago, IL 60605** <br><br>**Phone Number: 1.800.211.6647** <br><br>**Or fill out the on-line claims reporting form available at:** <br><br>**www.agcs.allianz.com/global-offices/united-states/** |

**SCHEDULE C – Additional Key Executives**

**None unless listed below:**

| |
|---|
| |

SILC000042

**Allianz ⑪**

1.  **INSURING AGREEMENT – CRISIS MANAGEMENT RESPONSE COSTS AND CRISIS MANAGEMENT LOSS**

    a.  **Crisis Management Response Costs**

    We will pay "Crisis Management Response Costs" on behalf of the "Named Insured", regardless of fault, arising from a "Crisis Management Event" which first commences during our "policy period", up to the amount of the "Crisis Management Response Costs Limit of Insurance".

    b.  **Crisis Management Loss**

    We will pay "Crisis Management Loss" on behalf of the "Named Insured" arising from a "Crisis Management Event" which first commences during our "policy period", up to the amount of the "Crisis Management Loss Limit of Insurance".

    c.  A "Crisis Management Event" will be deemed to commence at the time when a "Key Executive" first becomes aware of a "Crisis Management Event" and will end when we determine that a crisis no longer exists or when the "Crisis Management Response Costs Limit of Insurance " has been exhausted, whichever comes first.

    d.  There will be no "Retained Limit" applicable to "Crisis Management Response Costs" or "Crisis Management Loss".

    e.  Any payment of "Crisis Management Response Costs" or "Crisis Management Loss" that we make under the coverage provided by this endorsement will not be an acknowledgement of coverage under any other part of this policy, nor does it create any duty to defend any "suit" under any other part of this policy.

2.  **LIMITS OF INSURANCE**

    a.  The "Crisis Management Response Costs Limit of Insurance" is the most we will pay for all "Crisis Management Response Costs" under this policy, regardless of the number of "Crisis Management Events" first commencing during our "policy period". This "Crisis Management Response Costs Limit of Insurance" will be in addition to the applicable Limits of Insurance shown in the Declarations of this policy.

    b.  The "Crisis Management Loss Limit of Insurance" is the most we will pay for all "Crisis Management Loss" under this policy, regardless of the number of "Crisis Management Events" first commencing during our "policy period". This "Crisis Management Loss Limits of Insurance" will be in addition to the applicable Limits of Insurance shown in the Declarations of this policy.

    c.  We will have no obligation to pay "Crisis Management Response Costs" when we determine that a "Crisis Management Event" has ended or when the "Crisis Management Response Costs Limit of Insurance" has been exhausted, whichever occurs first.

    d.  The Crisis Management Limits of Insurance in Schedule A of this endorsement apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, beginning with the inception date of our "policy period" shown in the Declarations. If our "policy period" is extended after issuance for an additional period of less than 12 months the additional period will be deemed to part of the last preceding period for purposes of determining the Crisis Management Limits of Insurance of this endorsement.

3.  **DEFINITIONS**

    For the purpose of this endorsement only, **SECTION VI- DEFINITIONS** is amended to include the following definitions:

    a.  "Crisis Management Event" means an "occurrence" that triggers significant adverse regional or national media coverage that in the good faith opinion of a "Key Executive" of the "Named Insured" has or may result in damages covered by this policy that are in excess of the total applicable limits of "Scheduled Underlying Insurance".

    "Crisis Management Event" includes man-made disasters such as explosions, major crashes, multiple deaths, burns, dismemberment, traumatic brain injury, permanent paralysis, or contamination of food, drink or pharmaceuticals, provided that they result from an "occurrence".

**AGRL-CU 2002 (01-13)** **Page 2 of 3**

SILC000043



**b.** "Crisis Management Firm" means any firm approved by us and shown in Schedule B, Approved Crisis Management Firms, of this endorsement, which is hired by you to perform "Crisis Management Services" in connection with a "Crisis Management Event".

**c.** "Crisis Management Loss" means the following amounts incurred during a "Crisis Management Event""

    **(1)** Amounts for the reasonable and necessary fees and expenses incurred by a "Crisis Management Firm" in the performance of "Crisis Management Services" for the "Named Insured" solely arising from a covered "Crisis Management Event"; and

    **(2)** Amounts for reasonable and necessary printing, advertising or mailing of materials, or travel by directors, officers, employees or agents of the "Named Insured" or a "Crisis Management Firm incurred at the direction of a "Crisis Management Firm, solely arising from a covered "Crisis Management Event".

**d.** "Crisis Management Services" means those services performed by a "Crisis Management Firm" in assisting the "Named Insured" in minimizing the potential harm to the "Named Insured" from a covered "Crisis Management Event" by maintaining and restoring public confidence in the "Named Insured".

**e.** "Crisis Management Response Costs" mean the following reasonable and necessary expenses incurred during a "Crisis Management Event" directly caused by a "Crisis Management Event", provided that such expenses have been pre-approved by us and are associated with damages that would be covered by this policy:

    **(1)** Medical Expenses;

    **(2)** Funeral Expenses;

    **(3)** Psychological counseling;

    **(4)** Travel Expenses;

    **(5)** Temporary Living Expenses;

    **(6)** Expenses to secure the scene of a "Crisis Management Event"; and

    **(7)** Any other expenses pre-approved by us.

"Crisis Management Response Costs" does not include defense costs or "Crisis Management Loss".

**f.** "Crisis Management Response Costs Sub-limits of Insurance" means the Crisis Management Response Costs Limit of Insurance shown in Schedule A of this endorsement.

**g.** "Crisis Management Loss Limit of Insurance" means the Crisis Management Loss Limit of Insurance shown in Schedule A of this endorsement.

**h.** "Key Executive" means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner ( if the "Named Insured is a partnership) of the "Named Insured" or sole proprietor (if the "Named Insured" is a sole proprietorship). A "Key Executive" also means any other person holding a title designated by you and approved by us, which title is shown in Schedule C – Additional Key Executives of this endorsement.

All other terms and conditions remain unchanged.

SILC000044


Allianz (II)
Global Risks

**Policy Number:** **ULA 2011124**
**Effective Date:** **January 01, 2018**

## DEFENSE EXPENSES WITHIN LIMITS – FOLLOW FORM

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY POLICY**

This "policy" is amended as follows:

**SECTION III – LIMITS OF INSURANCE**, paragraph **F.** is deleted and replaced by the following:

**F.**   If the applicable limits of insurance of the "scheduled underlying insurance":

   **1.**   Are reduced or exhausted by the payment of damages for "occurrences" to which this insurance applies, we will:

   **a.**   In the event of reduction, pay in excess of the reduced underlying limits of insurance; or
   **b.**   In the event of exhaustion, continue in force as the applicable policy of "scheduled underlying insurance", subject to the terms and conditions of this policy;

   **2.**   Are reduced or exhausted by the payment of damages for "occurrences" to which this insurance applies and for the payment of defense expense, we will:

   **a.**   In the event of reduction, pay in excess of the reduced underlying limits of insurance; or
   **b.**   In the event of exhaustion, continue in force as the applicable policy of "scheduled underlying insurance" subject to the terms and conditions of this policy;

   However, our applicable Limits of Insurance will be reduced by any payment of defense expense we make in the same manner as the limits of insurance of the "scheduled underlying insurance" were reduced by payment of defense expense or any supplementary payments.

All other terms and conditions remain unchanged.

SILC000045



**Policy Number:** **ULA 2011124**
**Effective Date:** **January 01, 2018**

### JOINT VENTURE ENDORSEMENT

### NAMED INSURED'S INTEREST UNDER CONTRACT OR STATUTE

**This endorsement modifies insurance provided under the following:**

### COMMERCIAL UMBRELLA LIABILITY POLICY

The insurance afforded by this policy shall apply to the "Named Insured's" interest in any joint venture, co-venture, joint lease, joint operating agreement, partnership or limited liability company (hereinafter collectively, "joint venture") but only to the extent of the "Named Insured's" liability arising from such interest. However, in no event shall the insurance afforded by this endorsement provide limits of liability greater than, or coverage broader than, the limits of liability and coverage otherwise afforded by this policy.

The "Named Insured's" interest in a "joint venture" shall be determined as follows:

1. The percentage of liability for the "joint-venture" imposed upon the "Named Insured" by written contract or agreement to provide insurance for the "joint venture"; however, the insurance afforded by this paragraph shall not have coverage broader than required by said contract or agreement; or if no such contract exists,

2. The percentage interest of the "Named Insured" in the "joint venture" set forth in writing or the percentage interest of the "Named Insured" that would be imposed by law at the inception of the "joint venture" if the percentage interest of the "Named Insured" is not set forth in writing;

3. The percentage assigned to you under 1. or 2. shall not be increased by the insolvency of any other owner/members of the "joint venture" and shall not be subject to any rules of joint and/or several liability.

You further agree that a "joint venture" for which coverage is afforded under the provisions of this endorsement, shall also have such coverage afforded under any applicable "Scheduled Underlying Insurance" or Self Insured Retention. If you fail to comply with this requirement, coverage under this policy will apply as though coverage is afforded such "joint venture under any applicable policies or any applicable Self Insured Retention.

**SECTION III – LIMITS OF INSURANCE,** Paragraph F. is amended to add the following provision:

3. This policy does not recognize erosion or exhaustion of the limits of any applicable "Scheduled Underlying Insurance" due to any scaling of limits or similar provisions related to joint ventures, partnerships or limited liability companies.

**SECTION VI- CONDITIONS, K. Maintenance of Underlying Insurance,** paragraph 1. is amended to add the following provision:

d. This policy does not recognize erosion or exhaustion of the limits of any applicable "Scheduled Underlying Insurance" due to any scaling of limits or similar provisions related to joint ventures, partnerships or limited liability companies.

SILC000046



**SECTION V – EXCLUSIONS** is amended to add the following Exclusion:

**Joint Ventures, Partnerships or Limited Liability Companies Coverage Limitation**

This insurance does not apply to any liability for damages arising from the "Named Insured's" interest in a partnership, joint-venture or limited liability company for any "occurrence" or offense that first took place before the "Named Insured" acquired, joined or formed the joint venture, partnership or limited liability company.

All other terms and conditions remain unchanged.

SILC000047

**Allianz ⑪**

**Policy Number:**      **ULA 2011124**
**Effective Date:**       **January 01, 2018**

## AMENDMENT – OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY POLICY**

This "policy" is amended as follows:

**SECTION VI CONDITIONS, CONDITION L. Other Insurance** is deleted in its entirety and replaced with the following:

**L. Other Insurance**

If "other insurance" applies to damages that are also covered by this policy, this policy will apply excess of the "other insurance". However, this provision will not apply:

   **a.**   If the "other insurance" is written to be excess of this policy; or

   **b.**   if the "Named Insured" has agreed in a written contract to carry insurance to apply prior to and be non-contributory with that of another person or organization's insurance, but only as respects damages arising out of insured operations or work on behalf of the "Named Insured" performed under such written contract. In that case, "other insurance" of that person or organization will apply as excess and not contribute prior to the insurance afforded by this policy.

Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such "other insurance".

All other terms and conditions remain unchanged.

SILC000048



**Policy Number:**    **ULA 2011124**
**Effective Date:**    **January 01, 2018**


## FOREIGN LIABILITY LIMITATION ENDORSEMENT
### (with Terrorism Exclusion Applicable to Specified Countries)


This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY AGR-CU 2001 (01-04)


This "policy" is amended as follows:


**Section V.  EXCLUSIONS** is amended to include the following additional exclusion:

**Foreign Liability**

This insurance does not apply to "Bodily Injury", "Property Damage", or "Personal Injury and Advertising Injury" that occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada.

However, if insurance for such "Bodily Injury", "Property Damage", or "Personal Injury and Advertising Injury" is provided by a policy listed in the "Scheduled Underlying Insurance":

1. This exclusion shall not apply; and

2. Coverage under this policy for such "Bodily Injury", "Property Damage", or "Personal Injury and Advertising Injury" will follow the terms, definitions, conditions and exclusions of "Scheduled Underlying Insurance" applicable to such damages subject to the Policy Period, Limits of Insurance, premium and all exclusions of this policy; and

3. In no event shall coverage provided by this policy for "Bodily Injury", "Property Damage" or "Personal Injury and Advertising Injury" that occurs outside the United States of America, its territories and possessions, Puerto Rico and Canada be broader than coverage afforded by this policy for "Bodily Injury", "Property Damage", or "Personal Injury and Advertising Injury" that occurs within the United States of America, its territories and possessions, Puerto Rico and Canada.

Notwithstanding paragraphs 1., 2. and 3. above, this insurance does not apply to loss, injury, damage, claim or "suit", arising directly or indirectly as a result of or in connection with "Terrorism" that occurs in the following countries:


It is understood that to the extent any coverage may otherwise be provided for these above listed countries under this policy or any of its endorsements, the provisions of this exclusion will supersede.


**Section IV. DEFINITIONS** is amended to included the following additional definition:


**AGRL-CU 5003 (11-15)**                                                                                              **Page 1 of 2**

SILC000049



**Terrorism** means the use or threatened use of force or violence against a person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts and electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce, harm or disrupt:

1. A government;

2. The civilian population of a country, state or community; or

3. The economy of a country, state or community,

All other terms and conditions remain unchanged.

SILC000050

**Allianz ⑪**

**Policy Number:**     **ULA 2011124**
**Effective Date:**      **January 01, 2018**

### PUNITIVE DAMAGES – MOST FAVORABLE JURISDICTION
### LIMITATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY POLICY**

This "policy" is amended as follows:

**SECTION VI CONDITIONS** is amended to include the following additional **CONDITION**:

**Punitive Damages**

1. "Punitive damages" because of "bodily injury", "property damage", "personal injury" or "advertising injury" will be considered damages to which this insurance applies, but only if:

   a. The "punitive damages" are awarded by a court of law in a judgment against the "insured"; and

   b. The same judgment also awards compensatory damages against the "insured" that (1) arise out of the same "occurrence" and (2) are otherwise covered by this insurance; and

   c. Such award of "punitive damages" is permitted to be covered by insurance under the law of a U.S. jurisdiction that has a "substantial relationship" to the "insured", us, or this policy.

If all three of conditions a., b., and c. above are satisfied, we will follow the law of such jurisdiction that is most favorable to the "insured" in determining whether such "punitive damages" are insurable, and if they are insurable under the law of such jurisdiction, we will pay on behalf of the "insured" those sums in excess of the "retained limit" that the "insured" is liable to pay as a result of the award, subject to the limitations in sections 2. through 5. below, the limits of insurance and all other terms and conditions of the policy. No choice of law issue which may arise out of a claim or "suit", other than the insurability of "punitive damages", shall be affected by this endorsement.

2. "Punitive damages" will not be considered damages to which this insurance applies, and we will have no obligation with respect to such damages, if:

   a. The "insured" seeking coverage for an award of "punitive damages", brings a "suit" against us seeking a declaration of coverage under the policy in a jurisdiction that does not recognize or permit the insurability of the "punitive damages" award; or

   b. The court that enters the judgment awarding "punitive damages" against the "insured" also orders that the "insured" may not seek insurance coverage for "punitive damages".

3. "Punitive damages" will not be considered damages to which this insurance applies, and we will have no obligation with respect to such damages, if the damages are assessed against an "insured" and arise out of that "insured's" intentional, willful or wanton conduct. However, this limitation shall not apply if the award is assessed against an "insured" which arises out of the intentional, willful or wanton conduct of others, including an "employee" or agent of that "insured", if the "insured" had no knowledge of the intentional, willful or wanton conduct from which the damages arise.

**4.** This endorsement is subject to all exclusions in the policy, including but not limited to Exclusion **P**. **Expected or Intended Injury or Damage.**

**AGRL-CU 5008 (07-11)**                                                                                        **Page 1 of 2**

SILC000051



5. Any award of "punitive damages" and compensatory damages arising out of the same judgment will be added together and the sum shall be used to determine whether or not the "retained limit" has been exhausted.

**SECTION IV - DEFINITIONS** is amended to include the following additional **DEFINITIONS**:

"Punitive damages", which may also be called exemplary damages, means damages awarded by a court above and beyond the requirements for compensating a plaintiff for "bodily injury", "property damage", "personal injury" or "advertising injury" and intended to reform or deter the defendant and similar persons from pursuing a course of action such as that which damaged the plaintiff. "Punitive damages" does not include civil or criminal fines or penalties imposed by any federal, state or local governmental body or authority.

"Substantial relationship" means a relationship with one or more of the following indicia: the "named insureds" state of incorporation or principal place of business; the place where the claim is made or the court action seeking damages is brought; or where the "bodily injury", "property damage", "personal injury" or "advertising injury" occurred.

Solely with respect to coverage for damages afforded by the **Punitive Damages – Most Favorable Jurisdiction Endorsement** the definition of "Retained Limit" means the total applicable limits of "Scheduled Underlying Insurance" that would have applied to such damages if they were not deemed to be uninsurable under such "underlying insurance".

All other terms and conditions of the policy remain unchanged.

SILC000052



**Allianz** (II)
Global Risks

**Policy Number:**    **ULA 2011124**
**Effective Date:**    **January 01, 2018**

## Employers' Liability / Stop Gap Limitation Endorsement

This endorsement modifies insurance provided under the following:

     **COMMERCIAL UMBRELLA LIABILITY POLICY**

This "policy" is amended as follows:

**Section V. EXCLUSIONS** of the Commercial Umbrella Liability Policy is amended to add the following exclusion:

**Employers' Liability**

This insurance does not apply to "bodily injury" to any employee of the "Insured" arising out of or in course of the employee's employment by the "Insured".

However, if insurance for such "bodily injury" is provided by a policy listed in the "Scheduled Underlying Insurance":

1. The above exclusion shall not apply; and

2. Coverage under this policy for such "bodily injury" will follow the terms, definitions, conditions and exclusions of "Scheduled Underlying Insurance", subject to the "policy period", Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage afforded by "Scheduled Underlying Insurance".

All other terms and conditions remain unchanged.

SILC000053



**Policy Number:** **ULA 2011124**
**Effective Date:** **January 01, 2018**

## FOLLOWING FORM INCIDENTAL MEDICAL MALPRACTICE

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY POLICY**

This "policy" is amended as follows:

SECTION V – EXCLUSIONS is amended to include the following additional exclusion:

Incidental Medical Malpractice Liability

This insurance does not apply to any liability arising out of "Incidental Medical Malpractice" committed by the "Insured" or any persons for whom the "Insured" is legally responsible.

However, this exclusion does not apply to the extent that coverage for liability arising out of such "Incidental Medical Malpractice" is provided by "Scheduled Underlying Insurance".

Coverage under this policy for such liability will follow the terms, definitions, conditions and exclusions of "Scheduled Underlying Insurance", subject to the Policy Period, Limits of Insurance, premium and all other terms definitions, conditions and exclusion of this policy. However, the coverage provided by this policy will be no broader than the coverage provided by "Scheduled Underlying Insurance".

SECTION IV – DEFINITIONS is amended to include the following definition:

"Incidental Medical Malpractice" means injury arising out of the rendering or failure to render the following services:

1.  Medical, surgical, dental, x-ray or nursing service or treatment or the furnishing of food or beverages in connection therewith; or
2.  The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances;

so long as the "Named Insured" is not engaged in the business or occupation of providing any of the services, food or beverages, drugs or supplies described in 1 and 2 above.

All other terms and conditions remain unchanged.

SILC000054



**Policy Number**    **ULA 2011124**
**Effective Date**    **January 01, 2018**

## ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY (Self Insured Retention)

**This endorsement modifies insurance provided under the following:**
**COMMERCIAL UMBRELLA LIABILITY COVERAGE**

**This policy is amended as follows:**

A.     **SECTION V – EXCLUSIONS** is amended to include the following:

**Access or Disclosure of Confidential or Personal Information and Data-Related Liability**

   **1.**  This policy does not apply to any injury, damage, cost, "loss", liability, or legal obligation arising out of or in any way related to:
      a.   Any unauthorized access to, collection of or disclosure of or failure to protect any person's or organization's confidential or personal information in the form of "electronic data", including but not limited to, any patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or
      b.   Any unintentional violation of any statute, regulation, common-law, or any other law regulating or protecting access to, collection, use or disclosure or, or failure to protect any non-public confidential or personal information in the form of "electronic data"; or
      c.   Any intentional violation by the "insured" or "employee" of the "insured" of any statute, regulation, common-law, or any other law regulating or protecting access to, collection, use or disclosure or, or failure to protect any non-public confidential or personal information in the form of "electronic data" .
   **2.**  Paragraphs 1.a. and 1.b. above, do not apply do damages because of "bodily injury" or to physical injury or damage to tangible property. For the purposes of this insurance "electronic data" is not tangible property.
   **3.**  This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses, crisis management response costs or crisis management loss or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph 1 above.

**B.   Amendment of Self-Insured Retention**

   **1.**  For the purposes of any insurance provided by Paragraph A.2. above, the Self Insured Retention shown in Declarations is amended to $2,000,000.
   **2.**  The Self Insured Retention shown above will apply whether or not there is available "scheduled underlying insurance" or "other insurance" applicable to the insured damages. If "scheduled underlying insurance" or "other insurance" applies to an "occurrence" for which insurance is afforded by this endorsement, amounts received from the "scheduled underlying insurance" or "other insurance" for payment of damages may be applied to reduce or exhaust the Self Insured Retention.
   **3.**  In no event shall the Self Insured Retention be reduced or exhausted by any payment made with respect to any defense or investigative expense, including supplementary payments, incurred by the "insured" or by any insurer.

**C.  Amendment of Defense Obligation**

   **1.**  For the purposes of the insurance provided under the terms of this endorsement when the Self Insured Retention indicated in Section B above applies, **SECTION II – DEFENSE** paragraph **A. 1.** is deleted in its entirety and replaced by the following:

---

**AGRL-CU 5026 (09-15)**                                                                 **Page 1 of 2**

SILC000055



**2.** We will have the right and duty to defend the "insured" against any "suit" seeking damages covered by this endorsement even if the "suit" is groundless, false or fraudulent subject to the Self Insured Retention indicated in B. Amendment of once that Self Insured Retention has been exhausted by payment of damages to which this endorsement applies.

All other terms and conditions remain unchanged.

SILC000056



**Policy Number:** **ULA 2011124**
**Effective Date:** **January 01, 2018**

## Amended Condition – Duties in the Event of Occurrence, Claim or Suit

This endorsement modifies insurance provided under the following:

   **COMMERCIAL UMBRELLA LIABILITY POLICY**

This "policy" is amended as follows:

Under **SECTION VI-CONDITIONS, E**. – Duties in the Event of Occurrence, Claim or Suit, Paragraph 1. is deleted and replaced by the following:

1.  You must see to it that we are notified as soon as practicable of an "occurrence", offense, claim or "suit" after your Director of Risk Management (or one with similar or equivalent title) or his/her designee becomes aware of such "occurrence", offense, claim or "suit".

    The failure in good faith to recognize that such "occurrence", offense, claim or "suit" may involve this insurance shall not operate to prejudice your rights under this policy.

    To the extent possible, notice should include:

      a.  How, when and where the "occurrence" or offense took place;

      b.  The names and addresses of any injured persons and witnesses: and

      c.  The nature and locations of any injury or damage arising out of the "occurrence" or offense.


All other terms and conditions remain unchanged.

**AGRL-CU 8001 (07-11)**                                                                                          **Page 1 of 1**

**Allianz** ⑪

Policy Number:     **ULA 2011124**
Effective Date:       **January 01, 2018**

## DEFINTION OF SCHEDULED UNDERLYING INSURANCE AMENDMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY POLICY**

This policy is amended as follows:

**SECTION IV – DEFINTIONS, U.** "Scheduled Underlying Insurance" is deleted and replaced by the following:

**U.** "Scheduled underlying insurance" means an insurance policy listed in the Schedule of Underlying Insurance forming a part of this policy, including any renewals or replacements thereof.

Any Self Insured Retention which applies to a "scheduled underlying insurance" policy, or would have applied except for the exhaustion of the applicable limits of such policy, shall continue in force subject to the terms and conditions of the scheduled underlying policy to which it applied.

"Scheduled underlying insurance" does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

SILC000058



**Policy Number**       ULA 2011124
**Effective Date**      January 01, 2018

### BUSINESS CONTINUITY ENDORSEMENT

This endorsement modifies insurance provided under the following:
COMMERCIAL UMBRELLA LIABILITY COVERAGE

Notwithstanding anything contained in the Policy, if within thirty (30) calendar days of the expiration date of the policy period, internal communications within the Named Insured's organization, or external communications between the Broker and the Named Insured, between the Insurer and the Named Insured or between the Broker and the Insurer are materially disrupted or prevented by a natural disaster causing damage to or preventing access to locations in which the Named Insured's insurance negotiations are normally transacted or  data essential to those negotiations is located, or to locations of the Broker or Insurer in which renewal negotiations for this policy are normally transacted or data essential to those negotiation is located, the company agrees to extend this policy for a period of thirty (30) calendar days from the expiration date.

Should the company extend this policy in accordance with the preceding, in consideration for such extension, a pro-rata additional premium shall be paid to the Insurer.

If a notice of non-renewal has been delivered to the Named Insured in this accordance with the provisions of this policy, nothing in the endorsement shall rescind or change any of the provisions of such notice other than the revision of the expiration date of the policy period.

The Named Insured and the Insurer may, by mutual written agreement, retroactively void the extension of this policy.

As used in this endorsement Named Insured shall mean any person or organization shown first in the Named Insured section of the policy Declarations.

All other terms and conditions remain unchanged.

SILC000059



**Policy Number:**   **ULA 2011124**
**Effective Date:**   **January 01, 2018**

## Amendatory Endorsement - Newly Acquired Organizations

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE**

This "policy" is amended as follows:

Definition M. of this policy is deleted and replaced by the following:

M. "Named Insured" means:

1. The first person or organization listed in Item **1.** of the Declarations (the "first named insured");

2. Any other person or organization listed in Item **1.** of the Declarations; and

3. Each of the following with respect to any person or organization listed in Item **1.** of the Declarations:

    a. Any organization that is a subsidiary as of the effective date of this policy;

    b. Any organization over which ownership or majority interest is maintained as of the effective date of this policy; and

    c. Any organization that is newly acquired or formed during the policy period, other than a partnership, joint venture or limited liability company, and over which ownership or majority interest is maintained.

    However:

    (1) Coverage for such organization is afforded under provision c. only if:

        (a) Such organization is a named insured under "scheduled underlying insurance; and

        (b) There is no other similar insurance available to that organization;

    (2) This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" that occurred before the organization was acquired or formed; and

    (3) The "first named insured" agrees to give us notice that the organization has been acquired or formed.

    d. With respect to acquisitions within the same industry groups of the "Named Insured" on the effective date of this policy;

    (1) There will be no additional premium charged for newly acquired or formed organizations when the revenue of the newly acquired organization made during the term of this policy does not exceed $75,000,000 in sales for the prior 12 months.

    (2) If the revenue of the newly acquired or formed organization exceeds $75,000,000 in sales for the prior 12 months, coverage under this provision applies only until the 90th day after you acquire or form the organization or the end of the "policy period", whichever is earlier, unless within that time frame.

        a. You request us to include such organization as a "Named Insured"; and

        b. We agree to do so;

    We reserve the right to charge an additional premium if such organization qualifies as an insured.

**AGR-IL M001 (11-03)**                                                                                    **Page 1 of 2**

SILC000060



e.   With respect to acquisitions that are not within the same industry groups of the "Named Insured", on the effective date of this policy, we may charge an additional premium for insuring the operation based on the annual revenues of the acquisition; but only if the industry group of such acquisitions are considered to be a higher risk industry group than the industry groups of the "Named Insured" on the effective date of this policy. Any such additional annual premium will be subject to a pro-rata adjustment based on the actual term for which we provide coverage.

All other terms and conditions remain unchanged.

SILC000061



**Policy Number:  ULA 2011124**
**Effective Date:  January 1, 2018**

# HAZARDOUS MATERIALS EXCLUSION

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA LIABILITY POLICY

**The following is added to Section V-Exclusions:**

**Hazardous Materials**
(1) "Bodily Injury," "property damage" or "personal and advertising injury" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, ingestion, inhalation, dispersal, seepage, migration, release or escape of "hazardous materials" at any time.
(2) Any loss, cost or expense arising out of any:
a. Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "hazardous materials"; or
b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "hazardous materials."
(3) Any obligations to share damages with or indemnify another party whom must pay damages because of injury or damage relating to "hazardous materials."
(4) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with paragraphs (1), (2), or (3) above.
This exclusion applies whether or not such "hazardous material(s)" has any function in your business, operations, premises, site or location.
B. **SECTION IV– DEFINTITONS** is amended to include the following:
"Hazardous materials" means "pollutants," and materials that are radioactive, corrosive, oxidizers, asphyxiants, biohazardous, toxic, pathogen or allergen substances and organisms. "Hazardous materials" include but are not limited to sulfates, arsenic, formaldehyde, and any material(s) containing those materials. It also includes any "hazardous materials" as shown on the OSHA List of Highly Hazardous Chemicals, Toxics and Reactives.
C. This endorsement shall supplement any other exclusion contained within the Policy, including but not limited to any "Pollution" exclusion. Nothing contained within this endorsement shall be deemed to be a waiver of the coverage limitations imposed by any other applicable exclusion.

All other terms and conditions remain unchanged.

SILC000062



**Policy Number:  ULA 2011124**
**Effective Date:   January 1, 2018**

## REAL ESTATE MANAGERS EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY**

Section IV-Definitions-Section J - Insured Means, Subsection 3 C Real Estate Managers is deleted.

All other terms and conditions remain unchanged.

SILC000063



# GEORGIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. SECTION VI – CONDITIONS,** Paragraph **C.1.** of the **Cancellation** condition is replaced by the following:

  **1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

    **a.** If only the interest of the " first Named Insured" is affected, the effective date of cancellation will be either the date we receive notice from the " first Named Insured" or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the "first Named Insured", we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the "first Named Insured".

    **b.** If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days' notice to the " first Named Insured" and the third party as soon as practicable after receiving the "first Named Insured's" request for cancellation.

    Our notice will state the effective date of cancellation, which will be the later of the following:

      **(1)** 10 days from the date of mailing or delivering our notice; or

      **(2)** The effective date of cancellation stated in the "first Named Insured's" notice to us.

**B. SECTION VI – CONDITIONS,** Paragraph **C.5.** of the **Cancellation** condition is replaced by the following:

  **5.** If this policy is cancelled:

    **a.** We will send the " first Named Insured" any premium refund due;

    **b.** If we cancel, the refund will be pro rata, except as provided in **c.** below;

    **c.** If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium;

    **d.** If the first Named Insured cancels, the refund may be less than pro rata;

    **e.** The cancellation will be effective even if we have not made or offered a refund.

**C. SECTION VI – CONDITIONS,** Paragraph **C.3.** of the **Cancellation** condition is replaced by the following:

  **1.** We will mail or deliver our notice to the "first Named Insured's" mailing address shown in Item 1 of the Declarations.

  **2.** If notice is mailed, a receipt provided by, or such other evidence of mailing as prescribed or accepted by, the U.S. Postal Service shall be sufficient proof of notice.

**D. SECTION VI – CONDITIONS,** is amended to add the following condition: **Notification of Cancellation, Nonrenewal or Change in Premium or Policy Provisions** and supersedes any other provisions to the contrary:

  If we decide to:

  **1.** Cancel or nonrenew this policy; or

**2.** Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or change any policy provision which would limit or restrict coverage; then we will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the "first Named Insured" and lienholder, if any, at the last mailing address known to us. Except as applicable as described in Paragraph E **.** below, we will mail or deliver notice at least:

    **a.** 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for non-payment of premium; or

    **b.** 60 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

    **c.** 60 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

**E.** With respect to a policy that is written to permit an audit, the following is added to **SECTION VI – CONDITIONS,** Paragraph **C. Cancellation**:

If you fail to submit to or allow an audit for the current or most recently expired term, we may cancel this policy subject to the following:

    **1.** We will make two documented efforts to send you and your agent notification of potential cancellation. After the second notice has been sent, we have the right to cancel this policy by mailing or delivering a written notice of cancellation to the "first Named Insured" at least 10 days before the effective date of the cancellation, but not within 20 days of the first documented effort.

    **2.** If we cancel this policy based on your failure to submit to or allow an audit, we will send the written notice of cancellation to the "first Named Insured" at the last known mailing address by certified mail or statutory overnight delivery with return receipt requested.

SILC000065