# Exhibit F

**BARNES & THORNBURG** LLP

Prominence in Buckhead
3475 Piedmont Road, N.E., Suite 1700
Atlanta, GA 30305-3327 U.S.A.
(404) 846-1693
Fax (404) 264-4033

www.btlaw.com

Austin Bersinger
Partner
(404) 264-4082
austin.bersinger@btlaw.com
Admitted to Practice Only In: Georgia, Florida

January 12, 2021

Brian R. Masterson
Excess Casualty Claims Manager
Starr Adjustment Services, Inc.
399 Park Avenue, 2nd Floor
New York, New York 10022
Brian.Masterson@starrcompanies.com

> RE: *Chart Industries, Inc.- Pacific Facility Center Litigation*
> Named Insured: Chart Industries, Inc. ("Chart")
> Insurer: Starr Indemnity & Liability Company ("Starr")
> Policy No.: 100040617181
> Claim No.: GLSIL0467913

Dear Mr. Masterson:

We have reviewed your December 10, 2021 Letter on behalf of Starr Indemnity & Liability Company ("Starr"). In the Letter, Starr indicates its belief that it "has no present coverage obligation" to, our client, Chart Industries, Inc. ("Chart") and refuses to tender its policy limits towards the Plaintiffs' November 2021 global settlement demand. As discussed below, Starr is wrong regarding its present obligation to Chart. Starr has an absolute duty to act in good faith with regards to the global settlement demand regardless of Starr's status as an excess carrier.

By blocking the global settlement, Starr exposes itself to the full amount of excess liability for which Chart could be liable, above its proportional share of any bad faith judgment. In other words, if Chart obtains a bad faith judgment against the carriers, the other carriers will have a claim against Starr for its refusal to cooperate with the global settlement. Given Starr's present obligation to its Insured and the risk of excess exposure, we urge Starr to reevaluate its position regarding the settlement. We trust that the following will assist Starr with that process.

### I. Chart's Exposure in the PFC Litigation Exceeds the Global Settlement Demand

Chart's exposure in the PFC Litigation greatly exceeds the $305,000,000 global settlement demand. As you know, the PFC litigation arises from an incident at PFC in which one of the tanks used for storing human eggs and embryos for PFC's fertility clients allegedly rose above the acceptable temperature range for the continued viability of the stored embryos and tissue. As a result of this event, over 300 PFC fertility clients (the "Plaintiffs") filed cases against several

Brian R. Masterson
Excess Casualty Claims Manager
Starr Adjustment Services, Inc.
January 12, 2022
Page 2

defendants, including Chart and PFC. Currently, over 200 cases are pending against Chart in state and federal court in California.

As indicated in Chart's November 24, 2021 Demand Letter, the federal court held a trial for the first five Plaintiffs in June. At the first trial, insurer-appointed defense counsel for Chart, John J. Duffy of Swanson Martin & Bell, LLP ("SMP"), attempted to defend Chart by shifting blame to the "empty chair" defendants.[1] The jury returned a $14,975,000 verdict and determined that Chart was 90% responsible for the alleged injuries. Thus, the total verdict against Chart from the first trial is $13,477,500. In short, the first trial demonstrated that an "empty chair" strategy is not viable and that the PFC Litigation trials are not winnable.

***<u>Chart has no reason to believe that it will fare better in any future trial than it did in the first trial.</u>*** Indeed, just the opposite is true. First, SMP anticipates that Chart's liability in future trials may be higher than the June 2021 trial based on the plaintiffs' relative damages. More importantly, res judicata and collateral estoppel may prevent Chart from contesting liability in *all* future trials. Based on the number of individuals involved in the consolidated class action and the results of the first trial, conservative estimates of Chart's potential exposure in the federal court action are over $300,000,000. These numbers do not include the cases pending in state court.

On December 7, 2021, the Judge Corley ordered a stay in the federal consolidated class action pending Chart's appeal of the judgment from the first trial. The parties are to notify Judge Corley within seven days of the Ninth Circuit's disposition of Chart's appeal, at which point Judge Corley will hold a status conference. Judge Corley also noted that the Plaintiffs may file a renewed motion for summary judgment on the issue of preclusion before the status conference.

The stay presents a crucial window of opportunity for Chart. Once the Ninth Circuit rules on Chart's appeal and Judge Corley lifts the stay in the federal consolidated class action, Chart's bargaining power may plummet. In particular, if the Ninth Circuit affirms the judgment from the first trial and Judge Corley grants the Plaintiffs' motion for summary judgment regarding preclusion, Chart will have no bargaining power from which to negotiate a reasonable settlement. And the Plaintiffs, who will easily plow through damages trials against Chart, will have no reason to accept any settlement offer.

Thus, this global settlement demand comes at a critical moment in the PFC Litigation. And the reasonableness of the amount is evidenced by the five excess carriers who have agreed to tender their policy limits to facilitate the settlement. Additionally, Chart's willingness to partially self-fund the global settlement demonstrates its potential exposure. In particular, Chart is willing and able to cover any amount of the $305,000,000 global settlement above the $252,000,000 in liability coverage. If Chart did not think that the PFC litigation exposes it to far more liability than $305,000,000, Chart would not agree to take money from its own pockets to fund the global settlement.

---

[1] Due to a mandatory arbitration provision and personal jurisdiction issues, Chart was the only defendant at the first trial and will be the only defendant at all future trials.

**BARNES & THORNBURG** LLP

Brian R. Masterson
Excess Casualty Claims Manager
Starr Adjustment Services, Inc.
January 12, 2022
Page 3

## II. Starr Has a Present Obligation to Act Reasonably and in Good Faith with Regards to the Global Settlement Demand

In its December 10, 2021 Letter, Starr repeatedly claims that it has no present obligation to its insured because the policies underlying the Starr excess policy are not exhausted. Starr is wrong. Starr has a present and absolute obligation to act reasonably and in good faith with regards to the global settlement demand, regardless of its status as an excess carrier.

"Where there is a great risk of recovery beyond the policy limits and the most reasonable manner of disposing of the claim is a settlement within those limits, a good faith consideration of the insured's interests requires the insurer to settle the claim." *Kelley v. Brit. Com. Ins. Co.*, 221 Cal. App. 2d 554, 562, 34 Cal. Rptr. 564, 568 (Ct. App. 1963). This duty to settle extends to excess carriers when the potential settlement invades the excess carrier's limits of liability, even though the underlying insurance is not yet exhausted. *See id*. at 563, 34 Cal. Rptr. 564, 569 (rejecting the excess carrier's argument that it had no duty to settle as "untenable" and faulting the excess carrier for refusing to take an active part in the underlying litigation despite evidence that the insured's exposure likely implicated the excess policy); *see also Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 141 (2d Cir. 2008) (applying California law and recognizing that an insurer's duty of good faith and fair dealing towards its insured is "absolute"); *Fuller-Austin Insulation Co. v. Fireman's Fund Ins. Co.*, No. BC 116835, 2002 WL 31005090, at *14 (Cal. Super. Ct. Aug. 6, 2002), *aff'd in part, rev'd in part sub nom. Fuller-Austin Insulation Co. v. Highlands Ins. Co.*, 135 Cal. App. 4th 958, 38 Cal. Rptr. 3d 716 (2006), *as modified on denial of reh'g* (Feb. 17, 2006) (recognizing that "an umbrella or excess insurance company has an obligation to participate in settlements when the potential settlement may invade that insurance company's limits of liability, even though the insurance underlying the excess insurance policy is not yet exhausted").

Here, the global settlement demand implicates Starr's layer of excess coverage. Thus, Starr has a duty to Chart to act reasonably and in good faith with regards to the settlement demand regardless of whether the underlying policies have been exhausted.

## III. The Global Settlement Demand Reasonably Implicates the Full Limits of the Starr Policy

The global settlement demand reasonably implicates the full limits of the Starr policy. The jury verdict from the first PFC Litigation trial, as well as insurer-appointed defense counsel's assessment of future cases in light of that verdict, indicate that the global settlement demand is reasonable. Specifically, in his December 17, 2021 Supplemental Report, defense counsel indicates that Chart faces a total estimated verdict value between $438,750,000 and $465,750,000. Thus, Chart's likely liability if the PFC Litigation proceeds to trial is over $100,000,000 more than the global settlement demand. As such, defense counsel indicates that it is in Chart's best interest to settle the PFC Litigation.

**BARNES & THORNBURG** LLP

Brian R. Masterson
Excess Casualty Claims Manager
Starr Adjustment Services, Inc.
January 12, 2022
Page 4

Defense counsel bases this conclusion on a thorough analysis of all relevant factors, including the following:

(1) The first bellwether jury rejected Chart's defenses, awarded nearly $15,000,000 in damages among four sets of plaintiffs, and concluded that Chart was 90% at fault for these damages.

(2) Defense counsel has no reason to believe that future trial verdicts will be lower than the first trial. Defense counsel has developed and implemented a detailed categorization system for estimating future case values. Based on this system, defense counsel opines that future trials will likely result in higher jury verdicts than the first trial. In particular, defense counsel indicates that the plaintiffs in the first trial were in lower categories of damages severity than those in many future trials. Additionally, trials for the plaintiffs in the most severe category of damages—category 1—are forthcoming.

(3) There are currently 179 pending cases, as well as twenty-three (23) newly pending cases for which defense counsel does not yet have medical records.

(4) Chart's chances of overturning the first trial verdict on appeal are slim to none. Appellate counsel indicates that Chart has less than a 15% chance of successfully overturning the first jury verdict. In other words, appellate counsel is 85% sure that Chart is going to lose the appeal.

(5) If Chart loses its appeal, which it likely will, defense counsel is "very confident" that Judge Corley will grant issue preclusion on Chart's liability for the remaining 148 federal cases. Thus, following the Ninth Circuit's ruling on Chart's appeal, the plaintiffs in all 148 remaining federal cases will be able to proceed against Chart purely on the issue of damages.

(6) Judge Corley stayed the federal PFC Litigation pending Chart's appeal. Once the Ninth Circuit rules on Chart's appeal, Chart will almost certainly be in a materially worse position to negotiate a settlement. The stay provides a narrow window of opportunity for Chart.

Given all of these factors, the global settlement demand is reasonable and Starr, as well as the other CGL Tower carriers, have a duty to settle. Starr's failure to tender its policy limits towards the settlement exposes Zurich to liability for bad faith.

**IV.    Starr's Bad Faith Liability**

"Under California law, every liability insurance policy carries an implied covenant obligating the insurer to act in good faith in considering settlement offers." *Cain v. State Farm Mut. Auto. Ins. Co.,* 47 Cal. App. 3d 783, 791, 121 Cal. Rptr. 200, 205 (Ct. App. 1975). In particular, the insurer must "give equal consideration to the interests of its insured" when

**BARNES & THORNBURG** LLP

Brian R. Masterson
Excess Casualty Claims Manager
Starr Adjustment Services, Inc.
January 12, 2022
Page 5

evaluating any settlement demand. *Id.*; *see also First Acceptance Ins. Co. of Georgia, Inc. v. Hughes*, 305 Ga. 489, 492, 826 S.E.2d 71, 74 (2019) ("An insurance company's 'bad faith in refusing to settle depends on whether the insurance company acted reasonably in responding to a settlement offer, bearing in mind that, in deciding whether to settle, the insurer must give the insured's interests the same consideration that it gives its own.'" (quoting *Fortner v. Grange Mut. Ins. Co.*, 286 Ga. 189, 190, 686 S.E.2d 93 (2009))). "Where there is a great risk of recovery beyond the policy limits and the most reasonable manner of disposing of the claim is a settlement within those limits, a good faith consideration of the insured's interests requires the insurer to settle the claim." *Kelley v. Brit. Com. Ins. Co.*, 221 Cal. App. 2d 554, 562, 34 Cal. Rptr. 564, 568 (Ct. App. 1963). If an insurer fails to give its insured equal consideration and thus refuses to settle, the insurer is liable for the entire amount of a judgment against its insured, including any portion in excess of policy limits. *Cain*, 47 Cal. App. 3d at 791, 121 Cal. Rptr. at 205.

Here, if the PFC Litigation cases are not settled promptly, there is a great risk of recovery beyond the policy limits. As noted above, defense counsel estimates that Chart will be liable for a total verdict value between $438,750,000 and $465,750,000. This recovery against Chart is approximately $150,000,000 above the total policy limits and nearly $150,000,000 above the global settlement demand. Thus, the global settlement demand is the most reasonable manner of resolving the PFC Litigation. As such, a good faith consideration of Chart's interests obligates Starr to tender to its policy limits towards the settlement. Starr's failure to do so exposes Starr to liability up to the amount of any excess judgment against Chart—likely $438,750,000 to $465,750,000.

Notably, if Starr refuses to tender its policy limits toward the global settlement demand, it will be on the hook for not only its proportional share of the extra excess liability, but the entire amount. As noted below, most of the other CGL carriers have agreed to tender their policy limits towards the settlement. If Starr blocks the settlement, Chart will have a bad faith failure to settle claim against the carriers. In turn, the excess carriers who agreed to tender their policy limits toward the global settlement will have a claim against Starr for its unreasonable refusal to do so.

**V.     The CGL Tower Carrier *Above* Starr Has Agreed to Tender Its Policy Limits**

Starr's glaring miscalculation regarding the global demand is demonstrated by the other CGL carriers' agreements to tender their policy limits. Most notably, XL Insurance America, Inc. ("AXA XL"), Navigators, and the American Insurance Company, which all provide layers of coverage *above* the Starr policy, have agreed to tender its limits towards the global settlement demand. (Tender letters from AXA XL, Navigators, and the American Insurance Company are attached.) Three separate insurance carriers sitting above Starr have reviewed the same facts as Starr to determine its response to the global demand. Based on those facts, including those listed above, AXA XL, Navigators, and the American Insurance Company determined that the global settlement demand is reasonable and in the best interest of its insured. The three excess carriers sitting above Starr therefore concluded that each had a duty to tender its full policy limits, *above* Starr's limits, towards the settlement. This letter is Exhibit A in a future bad faith lawsuit against Starr.

**BARNES & THORNBURG** LLP

Brian R. Masterson
Excess Casualty Claims Manager
Starr Adjustment Services, Inc.
January 12, 2022
Page 6

### VI. Starr Must Evaluate the Reasonableness of the Global Settlement Demand Without Regard to Potential Coverage Defenses

Starr's refusal to tender its policy limits towards the global settlement is also based on Starr's belief that the policy may not provide coverage for all of the damages resulting from the PFC Litigation. However, as stated in Chart's November 24, 2021 Demand Letter, Starr must evaluate the reasonableness of the global settlement demand *without regard to any coverage defenses*:

> [I]n deciding whether or not to compromise the claim, the insurer must conduct itself as though it alone were liable for the entire amount of the judgment. Thus, the only permissible consideration in evaluating the reasonableness of the settlement offer becomes whether, in light of the victim's injuries and the probable liability of the insured, and ultimate judgment is likely to exceed the amount of the settlement offer. ***Such factors as the limits imposed by the policy, a desire to reduce the amount of future settlements, or a belief that the policy does not provide coverage, should not affect a decision as to whether the settlement offer in question is a reasonable one.***

*Johansen v. California State Auto. Assn. Inter-Ins. Bureau*, 15 Cal. 3d 9, 16, 538 P.2d 744, 748–49 (1975) (emphasis added). Thus, Starr's belief that its policy may not cover all of the damages resulting from the PFC Litigation does not excuse it failure to tender its policy limits towards the reasonable global settlement demand.

Moreover, with regards to Starr's coverage defense arguments, it is worth noting that five other carriers have tendered and/or agreed to tender their policy limits towards to the global settlement demand. These carriers follow form to the same underlying policy as Starr. As such, Starr's belief that its policy does not provide coverage and/or belief that the limits of its policy are not implicated by the PFC Litigation is a minority view. And as discussed below, Starr's lone refusal to tender its policy limits exposes it to liability above its proportional share of any bad faith judgment.

### VII. Starr's Failure to Reasonably Tender Its Policy Limits Exposes Starr to Liability for All Excess Liability Against Chart

As discussed in Chart's November 24, 2021 Demand Letter, the excess carriers' failure to reasonably settle the PFC Litigation exposes the carriers to liability for bad faith above the total CGL tower policy limits. And as noted above, Starr is the first excess carrier in line to refuse to tender its policy limits towards the global settlement demand. By doing so, Starr volunteers to shoulder the full risk of excess liability for all other carriers.

**BARNES & THORNBURG** LLP

Brian R. Masterson
Excess Casualty Claims Manager
Starr Adjustment Services, Inc.
January 12, 2022
Page 7

As discussed above, this is the best global settlement demand that Chart will receive from the Plaintiffs. Chart's relative bargaining power and the Plaintiffs' incentive to settle are likely to dramatically decrease following Chart's appeal of the first trial judgment and the lifting of the stay in the federal court litigation. Thus, if Starr blocks this global settlement, any future disposition of this litigation will result in more excess liability against Chart than the current global settlement demand. And all the carriers will be on the hook for bad faith failure to settle in the amount of that extra excess liability.

In turn, the excess carriers who agreed to tender their policy limits toward the global settlement will have a claim against Starr for its unreasonable refusal to do so. Therefore, Starr will be on the hook for, not only its proportional share of the extra excess liability, but the entire amount. We hope that this increased exposure motivates Starr to revise its response to the global settlement demand.

**VIII.     Conclusion**

By refusing to tender its policy limits, Starr exposes all carriers to liability above the total CGL Tower policy limits for bad faith failure to settle. The excess carriers who have agreed to tender their policy limits towards the settlement will undoubtedly look to Starr for reimbursement of their portion of any excess liability. Thus, by blocking the global settlement, Starr exposes itself to liability for the total amount of any extra excess liability against Chart.

Given the reasonableness of the settlement demand, the other carriers' agreement to tender their policy limits towards the settlement, Chart's willingness and ability to cover any amount in excess of the CGL Tower policy limits, and the extra exposure to Starr from blocking the settlement, we urge Starr to reconsider its position. In particular, we demand that Starr agree in writing to tender its policy limits towards the global settlement which expires today at noon Pacific Time.

Please feel free to contact me with any questions. We appreciate your prompt attention to this matter.

Sincerely,

D. Austin Bersinger

Attachments

**BARNES & THORNBURG** LLP