# Exhibit L

2019 WL 9633376
Only the Westlaw citation is currently available.
United States District Court, N.D. Georgia, Atlanta Division.

LM GENERAL INS. CO., Plaintiff,

v.

Monique T. CORLEY, Antonio Walton, and Rita Roeback, Defendants.

CIVIL ACTION NO. 1:19-CV-02903-TCB
|
Signed 12/30/2019

**Attorneys and Law Firms**

Elizabeth G. Howard, William Allred, Barrickman Allred & Young, LLC, Atlanta, GA, for Plaintiff.

## ORDER ON MOTION FOR DEFAULT JUDGMENT

Timothy C. Batten, Sr., United States District Judge

*1 This matter is before the Court on the Motion of Plaintiff LM General Insurance Co. ("Plaintiff" or "LM General") for an Order of Default Judgment against Defendants as to a coverage question raised in this Declaratory Judgment Action. Because the Defendants were properly served and never made an appearance as set out below, Plaintiff is entitled to a default judgment as set out below.

## FINDINGS OF FACT

The material facts in this action have been admitted because of the default by the Defendants. *Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1270 (11th Cir. 2005) ("After entering a default, the district court adopted as true the well-pleaded factual allegations contained in the amended complaint.")

1.

Plaintiff served Defendant Roeback on August 20, 2019, as evidenced by the Proof of Service, Doc. 6.

2.

Plaintiff served Defendants Corley and Walton on October 7, 2019, as evidenced by the Proofs of Service filed as Docs. 21 and 22.

3.

Case 4:22-cv-03484-HSG   Document 32-13   Filed 08/17/22   Page 3 of 9

Defendants did not answer, file or otherwise respond to Plaintiff's Complaint and this Court made its entry of default on November 27, 2019.

4.

Defendants Roeback, Corley and Walton are all subject to the jurisdiction and venue of this Court. (Second Amended Complaint ("Complaint")[Doc. 16] at ¶¶ 2, 3 and 4)

5.

This action is within the Court's original jurisdiction under [28 U.S.C. § 1332](#) in that it is a civil action between citizens of different states (Illinois/Massachusetts v. Georgia and Ohio) and the amount in controversy is in excess of $75,000, exclusive of interest and costs. (Complaint at ¶ 6)

6.

Venue is proper in this forum and is predicated on [28 U.S.C. § 1391(b)(2)](#), because this is the judicial district in which the underlying accident occurred and in which a "substantial part of the events or omissions giving rise to the claim occurred." (Complaint at ¶ 7)

7.

Roeback filed an action in the State Court of Georgia to seek compensation, contending that she suffered injuries because of an auto accident on November 12, 2018, when Walton drove a Cadillac automobile into her car. (*Id.* at ¶ 4; at ¶ 8) *See Roeback v. Corley and Walton*, Civil Action 2019CV-00399 (Clayton County)("Underlying Action"). [1]

8.

In the Underlying Action, Roeback alleges that Walton was negligent, and that Corley is vicariously liable to her for having negligently entrusted the Cadillac to Walton. (*Id.* at ¶ 10)

9.

Walton had no auto insurance at the time of the accident. (*Id.* at ¶ 13)

10.

Corley was the named insured under a policy of automobile liability insurance issued by Plaintiff, Policy No. AOS-251-203628-70 (the "Policy"). (*Id.*) A certified copy of the Policy is in the Court's record, as Doc. 1-2-Ex. 2, and its authenticity and terms have been admitted by the parties as well. (*Id.* at ¶ 14)

11.

Roeback also served Progressive, her own underinsured motorist ("UM") carrier, in the Underlying Action, seeking UM benefits under that policy. (*Id.* at ¶ 5)

12.

***2** At the time of the accident, Corley was renting the Cadillac automobile from Enterprise Rent-A-Car while her own motor vehicle was in the shop for repairs. (*Id.* at ¶ 17) She was the only person authorized by Enterprise to drive the Cadillac. (*Id.*)

13.

On the date of the collision, Corley had not given Walton permission to drive the Cadillac, either directly or in any implied manner. (*Id.* at ¶ 18)

14.

Walton admits that he did not have Corley's permission (or anyone else's) to drive the Cadillac. (*Id.*)

15.

Walton and Corley have never been married, and neither is related to the other by blood or adoption. (*Id.* at ¶ 15) Walton is not a resident of Corley's household (*Id.* at ¶ 16.)

16.

Plaintiff issued the Policy to Corley effective November 4, 2018, and the Policy was in effect at the time of the auto accident. (*Id.* at ¶ 20)

17.

The insuring agreement for the Policy's liability coverage (Part A) reads, in pertinent part:

> We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident.... We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" *not* covered under this policy.

Policy, PART A – LIABILITY COVERAGE, Insuring Agreement, ¶ A, at p. 2 (emphasis added) (Complaint at ¶ 23)

18.

In the Policy's Part A liability coverage, the term "insured", <u>as amended by the Georgia Amendatory Endorsement</u> (the "Amendatory Endorsement"), means:

1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer";

2. Any person using "your covered auto" with your express or implied permission. The actual use must be within the scope of that permission....

3. For "your covered auto," any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part;

4. For any auto or "trailer," other than "your covered auto," any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This provision (B.4) applies only if the person or organization does not own or hire the auto or "trailer."

Policy, PART A – LIABILITY COVERAGE, Insuring Agreement, ¶ B, at p. 2. (Complaint at ¶ 24)

19.

The term "Family Member" is defined to mean "a person related to you by blood, marriage or adoption who is a resident of your household...." Policy, Definitions, ¶ F, at p. 1 of 12. (Complaint at ¶ 20)

20.

The term "Your Covered Auto" is defined for coverage purposes by the Policy to mean, in pertinent part:

1. Any vehicle shown in the Declarations....

4. Any auto ... you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

a. Breakdown;

b. Repair;

c. Servicing;

d. Loss, or

e. Destruction....

Policy, Definitions, ¶ J, at p. 1 of 12. (Complaint at ¶ 22) The Policy also contains the following exclusion:

"We do not provide Liability Coverage for any 'insured':

8. Using a vehicle without a reasonable belief that that "insured" is entitled to do so."

Policy, PART A – LIABILITY COVERAGE, Exclusions, ¶ A.8, at p. 3. (Complaint at ¶ 25)

21.

LM General is providing a separate defense for the two Defendants in the Underlying Action and could be required to indemnify the Defendants for the amount of the judgment in the Underlying Action.

22.

**\*3** Progressive has raised defenses to coverage in the Underlying Action.

### LEGAL ARGUMENT

#### Jurisdiction

This is an action for declaratory judgment under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202. Plaintiff is an insurance company that seeks to determine its coverage obligations with regard to the Underlying Action. Defendant Corley is the named insured on a policy issued by Plaintiff and she and defendant Walton (the at-fault driver) are being defended by Plaintiff in the underlying action under a Reservation of Rights letter. Plaintiff contends that there is no coverage because Walton is not an "insured" under the policy and he did not have permission to drive the "covered auto."

The U.S. Constitution limits the jurisdiction of all Article III Courts to "cases" and "controversies." U.S. Const. Art. III, § 2 U.S. Const. Art. III, § 2. The Declaratory Judgment Act, 28 U.S.C. § 2201, allows a federal court to declare the rights of parties only in cases involving an "actual controversy." *Hendrix v. Poonai*, 662 F.2d 719, 721 (11th Cir. 1981). This requirement is met under both the Constitution and Declaratory Judgment Act when the facts alleged demonstrate that "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." 882 F.2d at 721.

**Standard for Default Judgment**

"The entry of a default judgment is committed to the discretion of the district court...." *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1576 (11th Cir. 1985), *cert denied*, 475 U.S. 1096 (1986) (*citing* 10A Charles Alan Wright, et al., Federal Practice & Procedure § 2685 (1983)). "In considering a motion for entry of default judgment, a court must investigate the legal sufficiency of the allegations of the plaintiff's complaint." *Bruce v. Wal-Mart Stores, Inc.*, 699 F. Supp. 905, 906 (N.D. Ga. 1988).

If the "well pleaded allegations" as admitted by the default establish liability, judgment should be entered. *Annon Consulting, Inc. v. Bionitrogen Holdings Corp.* (11th Cir. 2016) (unpublished)(*citing Nashimatsu Constr. Co. v Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)) (entry of default judgment is warranted when there exists "a sufficient basis in the pleadings for the judgment entered")

Whether a complaint supports "a sufficient basis" for a default judgment has been interpreted as the same standard that is applied on a motion to dismiss for failure to state a claim. *Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1245 (11th Cir.

2015) (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n. 41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim.")).

Thus, the Court must look to see if the Complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Surtain*, 789 F.3d at 1245 (citations omitted). This plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

### Insurance Law

**\*4** A federal court hearing a suit brought under diversity jurisdiction applies the substantive law of the forum state. *Erie R.R. Co. v. Thompkins*, 304 U.S. 64, 78 (1938); *Giddens v. Equitable Life Assurance Society*, 445 F.3d 1286, 1297 (11th Cir. 2006). Therefore, Georgia law applies to substantive issues in this matter.

Under Georgia law, insurance is a matter of contract and the rules governing construction of contracts are applicable to insurance contracts. *Wilson v. S. Gen. Ins. Co.*, 180 Ga. App. 589, 590, 349 S.E.2d 544, 545 (1986). "[T]erms in an insurance policy are given their ordinary and customary meaning." *Stagl v. Assurance Co. of AM.*, 245 Ga. App. 8, 10, 539 S.E.2d 173, 175 (2000). The construction of a contract, including the issue of ambiguity, is a question of law for the court. *Infinity Gen. Ins. Co. v Litton*, 308 Ga. App. 497, 498, 707 S.E.2d 885, 888 (2011). "The hallmark of contract construction" is to determine the intent of the parties. *Id.*

A court must construe an insurance contract as it is written. *Id.* When the words in the contract "are clear and express, the courts cannot extend or enlarge the contract by implication or construction so as to embrace an object or limitation distinct from the originally contemplated and not included in the express provisions." *Crouch v. Federated Mut. Ins. Co.*, 257 Ga. App. 604, 605-06, 571 S.E.2d 574, 576 (2002). When the language of an insurance policy is "unambiguous and capable of but one reasonable construction, the courts must expound the contract as made by the parties." *Roberson v. Leone*, 315 Ga. App. 459, 461, 726 S.E.2d 565, 568 (2012) (quotations and citations omitted).

### APPLICATION OF LAW TO FACTS

Plaintiff has proved jurisdiction and venue over Defendants, as well as its entitlement to a declaratory judgment based on a case or controversy as required. Plaintiff believes it owes no coverage for the acts or omissions of Walton, while the tort claimant in the Underlying Action, Roeback, contends that Plaintiff does owe coverage under the Policy for those same acts and/or omissions. Plaintiff is providing a separate defense for the two Defendants in the Underlying Action and could be required to indemnify the Defendants for the amount of the judgment in the Underlying Action. Moreover, Progressive has raised defenses to coverage in the Underlying Action. Without a decision by this Court, Plaintiff could expend money defending the parties to an action in which there are no coverage obligations. This satisfies the case or controversy requirement.

The Court also finds that Plaintiff owes no coverage obligations based on facts that have been admitted as a result of the default and the legal interpretation of the the insuring provisions. The plain meaning of these coverage provisions controls— an "insured" is defined in the Policy and LM General is only obligated to provide coverage to an "insured." Because the plain meanings of the words are not ambiguous, this Court must enforce them as written. *Taylor v. State Farm Fire & Cas. Co.*, 347 Ga. App. 318, 322, 819 S.E.2d 482, 485 (2018).

The Policy provides liability coverage only to those individuals listed as an "insured" in Paragraph B of the Amendatory Endorsement's "Who is an insured" provision within Part A – Liability Coverage. If the driver of the car, Walton, does not fall into one of the four enumerated categories of insureds in that provision, LM General owes him no coverage, neither indemnity nor a defense for those claims asserted against him in the Underlying Action.

**\*5** Walton is not an "insured" under the plain meaning of the Policy because, as a matter of admitted facts, he does not belong to any of the four following categories:

1) Walton is not the named insured under the Policy and he is not a "family member" of the named insured. Corley is the named insured as set out in the Declarations. According to the undisputed facts, Walton is not related to Corley by blood, marriage or adoption and he does not reside in her household;

2) Walton did not have Corley's express or implied permission to drive the Cadillac, which was a "covered auto;" [2]

3) Walton is not a person for whom coverage is provided under the Policy (this provision would include as an "insured" any person or organization that could be vicariously liable for Corley's acts or omissions – no such person or entity exists in this matter), and

4) Walton is not an insured under the fourth definition because it applies only to those vehicles or trailers that are NOT "your covered auto". Since the Cadillac was a "your covered auto", this provision cannot apply.

In addition, even if Walton was an "insured" under the Policy, coverage is excluded by the non-permissive use exclusion quoted above—"Using a vehicle without a reasonable belief that that 'insured' is entitled to do so." (Complaint at ¶ 29)

Because Walton is not an "insured" under the plain meaning of the Policy language, LM General is entitled to a judgment that it does not owe coverage obligations for the Underlying Action.

This Court has determined that there is no coverage under the LM policy, therefore the UM insurer's policy would be next in line to pay the claim. Progressive has agreed to be bound to this Court's decision regarding LM's coverage. [Doc. 24]

Georgia's UM Act provides for five ways by which a UM insurer becomes obligated as an auto insurer:

(a) There is no liability policy;

(b) There is no bond, cash or securities deposited in lieu of having a liability policy;

(c) There is liability coverage and it has been exhausted (i.e., depending on UM status – add-on or reduced-by, it's time for UM to pay);

(d) There is liability coverage, but that insurer has "legally denied coverage" under its policy; or

(e) There is a liability policy, but the liability insurer is insolvent.

O.C.G.A. § 33-7-11(b)(1)(D).

Here the Court finds that there is liability coverage, but that LM General can legally deny coverage under the Policy as set out above. Therefore, based on Georgia law, Progressive will owe UM coverage to its insured under the UM statute.

## CONCLUSION

The Court hereby grants the motion by Plaintiff LM General Insurance Company for a default judgment and further finds that LM General owes no coverage obligations in the Underlying Action and that LM may legally deny coverage under the Policy.

It is so ordered this 30th day of December, 2019.

**All Citations**

Slip Copy, 2019 WL 9633376

---

**Footnotes**

1   The Underlying Action has been stayed during the pendency of this matter. (Order dated August 6, 2019)

2   The Cadillac is not one of the vehicles listed in the Policy's Declarations. (Complaint at ¶ 21) However, since Corley was renting the Cadillac as a temporary substitute vehicle for one of those listed in the Policy's declarations, it qualifies as a "Your Covered Auto" as that term is defined by the Policy.

---

**End of Document**                                              © 2022 Thomson Reuters. No claim to original U.S. Government Works.