FORREST BOOTH (SBN 74166)
Forrest.Booth@kennedyslaw.com
TRAVIS WALL (SBN 191662)
Travis.Wall@kennedyslaw.com
SHAIN WASSER (SBN 293706)
Shain.Wasser@kennedyslaw.com
KENNEDYS CMK LLP
101 California Street, Suite 1225
San Francisco, CA 94111
Tel.:    (415) 323-4461
Fax:    (415) 323-4445

CHRISTOPHER CARROLL (*pro hac vice*)
Christopher.Carroll@kennedyslaw.com
TARA E. MCCORMACK (*pro hac vice*)
Tara.McCormack@kennedyslaw.com
KENNEDYS CMK LLP
120 Mountain View Boulevard
P.O. Box 650
Basking Ridge, NJ 07920
Tel.:    (908) 848-6300
Fax:    (908) 647-8390

Attorneys for Plaintiff
STARR INDEMNITY & LIABILITY COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| STARR INDEMNITY & LIABILITY COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> CHART INDUSTRIES, INC., <br><br> Defendant. | Case No. 4:22-cv-03484-HSG <br><br> **JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER** <br><br> Date: October 6, 2022 <br> Time: 2:00 p.m. <br><br> Complaint Filed:  June 13, 2022 <br> Trial Date:  N/A |

Plaintiff STARR INDEMNITY & LIABILITY COMPANY ("Starr" or "Plaintiff") and Defendant CHART INDUSTRIES, INC. ("Chart" or "Defendant"), the parties to the above-entitled case, jointly submit this JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER pursuant to the *Standing Order for All Judges of the Northern District of California* and Civil Local Rule 16-9.

On August 25, 2022, the parties, by and through their respective counsel, met and conferred by video conference as required by Rule 26(f) and the local rules. The parties continued to meet and confer by email. The following are the results of the discussions between counsel for the parties.

## 1. JURISDICTION & SERVICE

### a. Plaintiff's Position

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between Starr and Chart and the amount in controversy exceeds $75,000, exclusive of interests and costs. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim took place within this district and dozens of underlying actions giving rise to this coverage dispute are venued in the District Court for the Northern District of California and the Superior Court of California, County of San Francisco.

### b. Defendant's Position

As it has set forth in its briefing in support of its Motion to Dismiss, Stay, or, Alternatively, Transfer This Action to the Northern District of Georgia (Dck. No. 20), Chart disputes that Starr's complaint pleads the necessary elements of standing and ripeness to confer this Court with subject matter jurisdiction. And, although it does not dispute that the Northern District of California satisfies the technical requisites for venue under 28 U.S.C. § 1391, Chart further asserts in that motion that "the convenience of parties and witnesses" and the "interest[s] of justice" militate in favor of the transfer of this action to the United States District Court for the Northern District of Georgia. 28 U.S.C. § 1404(a).

### 2. FACTS

#### a. Plaintiff's Position

##### 1. The Underlying Actions

Chart has been named as a defendant in approximately 200 lawsuits arising out of an incident that took place on March 4, 2018 at the Pacific Fertility Center ("PFC") in San Francisco, California. The state court proceedings are currently being coordinated in *Pacific Fertility Cases*, pending in the Superior Court of California, County of San Francisco, Docket No. CJC-19-005021.  The federal court cases are being coordinated in *In re Pacific Fertility Center Litigation*, pending in the United States District Court for the Northern District of California, Case No. 3:18-cv-01586 (the state and federal court cases are referred to, collectively, as the "Underlying Actions").

The Underlying Actions allege that the plaintiffs stored their reproductive eggs and embryos in a cryogenic preservation tank at PFC.  It is alleged that on March 4, 2018, the liquid nitrogen levels in Tank 4, which was allegedly manufactured by Chart, dropped to an unsafe level, thereby destroying or jeopardizing the plaintiffs' eggs and embryos.  The plaintiffs assert causes of action against Chart for Negligence, Gross Negligence, and Strict Products Liability and seek to recover economic damages (to compensate for the alleged loss of their eggs and embryos) and non-economic damages (to compensate for emotional distress allegedly caused by the destruction of their eggs and embryos).

Five of the underlying plaintiffs brought a case to trial, which resulted in a jury verdict on June 10, 2021.  The jury awarded a total of $475,000 in economic damages, and $14,500,000 in non-economic (emotional harm) damages to these underlying plaintiffs.  The jury allocated 90% fault to Chart and 10% fault to PFC.  Chart has appealed the entry of the jury verdict to the United States Court of Appeals for the Ninth Circuit (Case No. 21-17016).

On November 24, 2021, Chart placed Starr, and its other carriers, on notice of a potential global settlement with the underlying plaintiffs and demanded that Starr make its full policy limits available to resolve the Underlying Actions.  On February 18, 2022, Starr agreed to make its full limits of $50,000,000 available to Chart to settle the Underlying Actions, and reserved all rights to seek recoupment of any settlement amounts paid that are not covered by the Starr Policy.

### 2. The Starr Policy

Starr issued a Commercial Excess Liability Policy, No. 100004067181, to Chart for the period from January 1, 2018 to January 1, 2019, with limits of $50,000,000 each occurrence and in the aggregate, which is excess of $102,000,000 in underlying insurance (the "Starr Policy"). The Starr Policy follows form to an underlying Allianz policy. The Allianz policy provides coverage for sums that Chart "becomes legally obligated to pay as damages by reason of liability imposed by law . . . because of 'bodily injury', 'property damage', 'personal injury' or 'advertising injury' to which this insurance applies." The Allianz policy further provides that it applies only to "bodily injury" and "property damage" caused by an "occurrence" during the policy period. It defines "bodily injury" as "bodily injury, sickness, disability or disease sustained by a person, including death resulting from any of these at any time," which includes "humiliation, shock, mental anguish or other mental injury resulting from 'bodily injury.'" "Property damage" is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured."

### 3. The Declaratory Judgment Action

Starr filed this action on June 13, 2022 seeking a determination that it has no obligation to indemnify Chart in connection with the Underlying Actions. Specifically, Starr contends that non-economic damages do not constitute damages "because of" "property damage" under the Starr Policy.

### b. Defendant's Position

#### 1. Starr's Discussion of "the Underlying Actions"

Starr's recitation of the allegations and procedural history of the underlying actions is generally accurate, except that those actions are proceeding against Chart's *subsidiary*, Chart Inc., which also is insured under the applicable Starr insurance policy and is the entity alleged to have manufactured the cryopreservation tank that is at issue in those proceedings.[1] At this point, no final judgment has been entered against Chart or Chart Inc. Nor has any underlying action been settled.

Starr's discussion of efforts to settle the underlying actions is both extraneous to its complaint

---

[1] The judgment referenced by Starr that has been appealed to the Ninth Circuit was entered against Chart Inc.

3

and incomplete.  In November 2021, Chart did request that its insurers, including Starr, commit their policy limits to fund any possible settlement of the underlying actions.  On February 18, 2022 Starr "agree[d] to make the full $50 million limits of the Starr Policy available to partially fund" a global settlement subject to a reservation of rights "under applicable law and the Starr Policy" to recoup the amounts it contributed to settlement "from Chart or any third party."  Before any settlement of the underlying actions could be reached, Starr prematurely filed this action purporting to seek "a determination of what obligation, if any," it has "to indemnify Chart" for liabilities arising from the underlying actions.  Dck. No. 1 at ¶ 1.  In light of the Starr Policy being governed by Georgia law[2] and the inconvenience of California as a forum, Chart perceived little choice but to file its competing action in the Northern District of Georgia to protect its choice of forum.  Starr has since refused to make its policy limits available to fund any settlement unless Chart agrees to "confirm in writing that Starr has the right to seek recoupment of any settlement amount paid by Starr, as permitted by Georgia law" or that otherwise "California law applies" to the issue.  Chart is not willing to alter the Starr Policy's terms or waive governing Georgia law as it applies to that policy.

### 2.  Starr's Discussion of the Starr Policy

Chart agrees that the Starr Policy provides $50,000,000 in applicable limits in excess of $102,000,000 in underlying coverage.  Starr makes no mention that, as noted, the policy provides that it is "governed by the laws of [Georgia]."

Starr is also correct that its policy follows form to, and is generally animated by, an underlying umbrella policy issued by Allianz, portions of which Starr has quoted accurately.

### 3.  Starr's Description of this Action

Chart agrees with Starr's characterization of its own complaint as "seeking a determination that it has no obligation to indemnify Chart in connection with the Underlying Actions."  The complaint does not purport to identify any issue or seek relief pertaining to Starr's right to recoup amounts it contributes to settlement of the underlying action or any conflict of law pertaining to that

---

[2] The policy provides that it "is governed by the laws of the state where it was delivered" and "bec[a]me effective . . . at the address of the Named Insured," which each party acknowledges is Georgia.  Dkt. No. 1-1 at 2, 4.

issue.

### 3.  LEGAL ISSUES

#### a.  Plaintiff's Position

Starr seeks declaratory judgment.  The primary legal issues are: (1) which state's substantive law governs claim handling issues, such as Starr's ability to seek recoupment for any settlement amounts not covered by the Starr Policy; (2) whether the non-economic damages sought by the underlying plaintiffs constitute damages "because of" "bodily injury" or "property damage" under the Starr Policy; (3) whether the economic damages sought by the underlying plaintiffs are damages "because of" "property damage"; (4) whether the Underlying Actions seek damages "because of" "bodily injury" or "property damage" caused by an "occurrence"; (5) whether the underlying damages were either expected or intended by Chart; and (6) whether all underlying insurance has been properly exhausted through the payment of covered claims.

#### b.  Defendant's Position

##### 1.  "Starr's Ability to Seek Recoupment"

As noted, Starr's complaint seeks "a determination of what obligation, if any," it has "to indemnify Chart" in connection with the Underlying Actions.  Dck. No. 1 ¶ 1.  The *only* reference to Starr's ability to "seek recoupment" of settlement amounts is in paragraph 35 of its complaint which provides:  "*In the event that* STARR contributes toward any resolution or settlement of the Underlying Actions on behalf of Chart, *STARR will be doing so under a reservation of rights to seek reimbursement from Chart, and will request such relief from this Court*."  *Id* at ¶ 35.  But Starr *has not* "contribute[d] toward any resolution or settlement of the Underlying Actions" and, accordingly it has not asked the Court to declare whether it may seek reimbursement from Chart for any such contribution it makes to a settlement of the underlying actions.  This "legal issue" is not before the Court and would not be ripe for adjudication in any event.[3]

---

[3] As Chart observed in its reply brief in support of its Motion to Dismiss, Stay or Transfer, "*If* Starr actually funded a settlement of the PFC Litigation subject to its reservations of rights, *then* all of its declaratory relief claims would be ripe for adjudication: it would be entitled to a determination of whether it is entitled to seek recoupment and, if so, whether or not the settled claims are covered under the Starr policy." Dck. No. 34.

### 2. Coverage for Consequential Damages[4]

Starr's first and second claims for declaratory relief apparently ask the Court to interpret the Allianz policy's agreement to indemnify Chart for sums it is "legally obligated to pay as damages *because of 'bodily injury' [or] 'property damage'*" that is caused by an "occurrence."   Dkt. No. 1 at ¶ 41 (emphasis added).  Evidently, Starr would exclude from the scope of that language certain classes of damages claimed by the plaintiffs in the Underlying Actions arising from the damage or destruction their eggs or embryos.  Such a restricted reading of the coverage grant is untenable and incompatible with the basic interpretative principle that grants of coverage are read broadly with doubts resolved in favor of coverage.  *See, e.g., Lemieux v. Blue Cross & Blue Shield of Georgia, Inc.,* 216 Ga. App. 230, 231, 453 S.E.2d 749, 751 (1994) ("An insurance policy is construed liberally to provide coverage and avoid forfeitures (*id.*), so when a provision is susceptible to two constructions a court must adopt the one most favorable to the insured."); *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648, 73 P.3d 1205, 1213 (2003), as modified on denial of reh'g (Sept. 17, 2003) ("insurance coverage is 'interpreted broadly so as to afford the greatest possible protection to the insured, [whereas] ... exclusionary clauses are interpreted narrowly against the insurer.'") (cleaned up).

This "because of" language emphasized by Starr "renders coverage highly elastic" to conform to the insured's liability in tort:  if the insured is held liable for either bodily injury or property damage, coverage extends to "'any and all damages flowing therefrom and not expressly excluded from the policy. . . .'"  *DeWitt Constr. Inc. v. Charter Oak Fire Ins. Co*., 307 F.3d 1127, 1136 (9th Cir. 2002) (quoting Gen. Ins. Co. of Am. v. Gauger, 538 P.2d 563, 566 (Wash. Ct. App. 1975)); see also 3 Allan D. Windt, INSURANCE CLAIMS AND DISPUTES, § 11:1 at 11–19 (6th ed. 2013) ("Liability policies cover not only damages for property damage, but damages because of, on account of, or by reason of property damage.  Accordingly, once covered property damage exists, all consequential damages are covered.") (emphasis in original).

---

[4] Although Chart discusses the other "legal issues" framed by Starr's complaint, it does not believe these issues are appropriately determined at this time for the reasons set forth in its Motion to Dismiss, Stay or Transfer.

### 3.   What Constitutes an "Occurrence"

The Starr Policy provides coverage for Chart's liability arising from an "occurrence," defined as an "accident, including continuous or repeated exposure to substantially the same harmful conditions."  Under Georgia law, the unexpected or unintended consequences of a deliberate act is considered an "accident" and, accordingly, an "occurrence" within the meaning of liability insurance coverage.  *Am. Empire Surplus Lines Ins. Co. v. Hathaway Dev. Co.*, 288 Ga. 749, 752, 707 S.E.2d 69, 372 (2011) ("we reject out of hand the assertion that the acts of [the insured] could not be deemed an occurrence or accident under the CGL policy because they were performed intentionally. '[A] deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly.'") (quoting *Lamar Homes v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 16 (Tex. 2007)).

### 4.   "Expected or Intended" Injury

Starr maintains that the Allianz policy contains a single "potentially relevant exclusion," for "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the 'insured.'" Dkt. No. 1 at ¶ 43.  This policy language "contemplates a subjective test as to the insured's intention," and unless Starr can establish a "specific intent to injure, there will be coverage." *Bates v. Guar. Nat'l Ins. Co.*, 476 S.E.2d 797, 799 (Ga. Ct. App. 1996).

### 5.   Exhaustion of Underlying Coverage

This is not a genuine "legal issue" because Chart does not contend that underlying insurance has been exhausted such that Starr owes a "present obligation to indemnify Chart."

### 4.   MOTIONS

In response to Starr's Declaratory Judgment Complaint, on August 3, 2022, Chart filed a Motion to Dismiss, Stay, or Alternatively, Transfer this Action ("Motion to Dismiss"). Starr filed opposition to the Motion to Dismiss on August 17, 2022 and, on August 4, 2022, Chart filed a reply. The Motion to Dismiss is currently scheduled to be heard by the Court on October 6, 2022.

Starr filed an Administrative Motion Seeking Leave to File a Motion for Determination of Applicable Law and Scheduling of Motion Hearing ("Administrative Motion") on August 15, 2022. Chart filed opposition to the Administrative Motion on August 29, 2022 and, on September 6, 2022,

7

Starr filed a reply. The Administrative Motion is scheduled to be heard by the Court on October 6, 2022.

The parties anticipate that dispositive motions pursuant to Fed. R. Civ. P. 56 may be appropriate. The parties propose a deadline of June 30, 2023, to file dispositive motions.

## 5.   AMENDMENT OF PLEADINGS

Starr does not currently anticipate amending its complaint.  In the event an amendment to its complaint is necessary, the parties agree to a deadline of November 15, 2022 for Starr to file an amended complaint without leave of court.  Amendments after that date would require a stipulation of the parties or leave to amend.

Because Chart has filed a motion to dismiss, it has not yet answered Starr's complaint. Accordingly, at this point there is no "pleading" for it to amend.

## 6.   EVIDENCE PRESERVATION

By signature to this Joint Case Management Statement, the parties certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps necessary to preserve evidence relevant to the issues reasonably evident in this action.

## 7.   DISCLOSURES

The parties have fully and timely complied with the initial disclosure requirements of Fed. R. Civ. P. 26.  These disclosures include the identification of individuals likely to have discoverable information and the identification of documents that the parties may use to support their claims or defenses should this action proceed.

## 8.   DISCOVERY

The parties have not exchanged any discovery to date.  The parties anticipate written discovery, party depositions, and some non-party depositions may be necessary if, and when, this proceeding moves forward.  The parties also anticipate the need for expert discovery.  The parties have not had any discovery disputes to date.

The parties may seek a Discovery Confidentiality Order if the need arises. If such a Confidentiality Order is sought, the terms of such Order will comply with Fed. R. Civ. P. 26(c).

The parties have considered entering into a stipulated e-discovery Order and will agree to such a stipulated Order if the volume of e-discovery warrants.

If Chart's Motion to Dismiss, Stay or Transfer is denied, the parties propose the following discovery plan pursuant to Fed. R. Civ. P. 26(f):

1) Initial disclosures were made on September 9, 2022.

2) Fact discovery is to remain open through March 31, 2023.  No fact discovery is to be issued or engaged in beyond that date, except upon application and for good cause shown.

3) The parties may propound written discovery requests on or before February 15, 2023, to be responded to within thirty (30) days of receipt.

4) Deposition of fact witnesses and individuals who will give lay opinion testimony are to be completed by March 31, 2023.  No objection to questions posed at depositions shall be for reasons other than lack of foundation, form, or privilege.  Each party shall be limited to ten (10) fact depositions.

5) Subject to the Court's availability, the parties shall appear for a status conference on April 18, 2023 or on such other date the Court shall order.  The parties shall file concise status letters to the Court no later than one week prior to the conference.

6) All affirmative expert reports shall be delivered by a date to be assigned.

7) All responding expert reports shall be delivered by a date to be assigned.

8) Expert discovery, including the deposition of any expert witnesses, shall be completed on or before a date to be assigned.

9) Counsel shall confer in a good faith attempt to informally resolve any and all discovery or case management disputes before seeking the Court's intervention.  Any dispute not resolved by way of meet and confer shall be brought to the Court's attention by letter after counsel's good faith attempts to resolve the dispute have failed.  Counsel shall advise the Court of the specific efforts that were made to resolve the dispute before contacting the Court.  No discovery motion shall be made without prior leave of Court.

**9.  CLASS ACTIONS**

This is not a class action.

9

**10. RELATED CASES**

Chart has filed a similar lawsuit in the United States District Court for the Northern District of Georgia, which is pending under the caption, *Chart Industries, Inc. v. Starr Indemnity & Liability Company*, Case No. 1:22-cv-02395 ("Georgia Action").  In Starr's view, the Georgia Action should be transferred to this Court, if not dismissed, based on the first-filed doctrine.  Chart submits that the "first-filed" doctrine "is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration."  *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982).  Here, those dictates militate in favor of transferring this action to the Northern District of Georgia because "the balance of convenience weighs in favor of the later-filed action," a standard that "is analogous to 'the convenience of the parties and witnesses' under a transfer of venue motion."  *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994); *Sony Computer Ent. Am. Inc. v. Am. Med. Response, Inc.*, No. C06 06603 CW, 2007 WL 781969, at *3 (N.D. Cal. Mar. 13, 2007).

This case does have some relation to the Underlying Actions, which are coordinated in *Pacific Fertility Cases*, pending in the Superior Court of California, County of San Francisco, Docket No. CJC-19-005021 and in *In re Pacific Fertility Center Litigation*, pending in the United States District Court for the Northern District of California, Case No. 3:18-cv-01586.  However, the *In re Pacific Fertility Center Litigation* court has held that the Federal Court Actions are not related to Starr's Declaratory Judgment Action within the meaning of Local Rule 3-12.

**11. RELIEF**

**a.  Plaintiff's Position**

Starr seeks a determination that:

1)  California law governs claim handling issues, such as Starr's ability to seek recoupment for any settlement amounts not covered by the Starr Policy.

2)  The economic damages sought by the underlying plaintiffs are damages "because of" "property damage" under the Starr Policy.

3)  The non-economic damages sought by the underlying plaintiffs do not constitute damages "because of" "bodily injury" or "property damage" under the Starr Policy.

10

4)  The Underlying Actions do not seek damages "because of" "bodily injury"  or "property damage" caused by an "occurrence" under the Starr Policy.

5)  The underlying damages were expected or intended by Chart.

6)  All underlying insurance has not been properly exhausted through the payment of covered claims.

**b.  Defendant's Position**

As it has stressed in its Motion to Dismiss, Stay or Transfer, Chart does not believe this case can proceed at this time either because the Court lacks, or otherwise should not exercise, subject matter jurisdiction.  If Chart's motion is denied and the case is to proceed forward at this time, Chart denies that Starr is entitled to any of the relief it seeks.

**12. SETTLEMENT AND ADR**

Pursuant to ADR Local Rule 3-5, the parties have met and conferred regarding the ADR process and intend to discuss the ADR selection with the Court at the Case Management Conference on October 6, 2022.

Notably, in the federal underlying action, *In re Pacific Fertility Center Litigation*, Judge Corley ordered the parties to that action to participate in a mandatory settlement conference before Magistrate Judge Spero that is scheduled to take place on October 4, 2022.  Judge Spero has ordered Starr to attend that mandatory settlement conference.  To the extent permissible, the parties will report on that mandatory settlement conference at the October 6, 2022 Case Management Conference.

**13. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

On June 27, 2022, Starr consented to a Magistrate Judge for all proceedings in this case.  On June 29, 2022, Chart declined to have a Magistrate Judge conduct further proceedings in this case.

**14. OTHER REFERENCES**

The case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15. NARROWING OF ISSUES**

The parties agree that the case is not amenable to bifurcation. The parties agree that once they have completed sufficient discovery, they will confer about the possibility of expediting the

11

presentation of evidence through stipulated facts.

**16. EXPEDITED TRIAL PROCEDURE**

The parties agree that this is not the type of case that can be handled under the Expedited Trial Procedure of General Order 64.

**17. SCHEDULING**

If Chart's Motion to Dismiss, Stay or Transfer is denied, the parties propose the following schedule:

1.    A fact discovery end date of March 31, 2023.

2.    A Status Conference with the Court on April 18, 2023.

3.    An Initial ADR session by March 31, 2023.

4.    Expert discovery deadlines to be set at the April 18, 2023 Status Conference.

5.    A Dispositive Motion cut-off by June 30, 2023.

6.    A Pretrial Conference on September  11, 2023; and Trial on September 25, 2023.

**18. TRIAL**

The parties are discussing whether this case can be tried by way of bench trial. A trial is expected to take approximately 5-7 days.

**19. DISCLOSURE OF NON-PARTY INTEREST ENTITIES OR PERSONS**

Each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15. Plaintiff knows of no persons, firms, partnerships, corporations (including parent corporations) or other entities other than the parties having either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

**20. PROFESSIONAL CONDUCT**

All the attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21. OTHER**

Not applicable.

DATED:  September 9, 2022

KENNEDYS CMK LLP

By: _____
Forrest Booth
Travis Wall
Shain A. Wasser
Christopher Carroll (*pro hac vice*)
Tara E. McCormack (*pro hac vice*)
Attorneys for Plaintiff
STARR INDEMNITY & LIABILITY
COMPANY

MORGAN, LEWIS & BOCKIUS LLP

By: /s/ *David S. Cox*_____
David S. Cox
Attorneys for Defendant
CHART INDUSTRIES, INC.

## CASE MANAGEMENT ORDER

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions. [In addition, the Court makes the further orders stated below:]

IT IS SO ORDERED.

DATED: _____

_____
HONORABLE HAYWOOD S. GILLIAM, JR.
UNITED STATES DISTRICT JUDGE